# EXHIBIT 8

Oct. 3, 2024 Notice of Violation of National Voter Registration Act and Demand for Remediation and Documents



 

October 3, 2024

The Honorable Susan Beals
Commissioner of Elections
Washington Building
1100 Bank Street, First Floor
Richmond, VA 23219

Virginia Department of Elections
Washington Building
1100 Bank Street, First Floor
Richmond, VA 23219


Cc:

Attorney General Jason Miyares
Office of the Attorney General

**Re:   Notice of Violation of National Voter Registration Act and Demand for Remediation and Documents**


*VIA E-MAIL AND CERTIFIED MAIL*

1

Dear Commissioner Beals and Virginia Department of Elections:

The undersigned write pursuant to 52 U.S.C. § 20510(b)(2) to inform you that Virginia's voter purge program mandated by Executive Order 35, relying on Virginia Code § 24.2-427, ("the Program") violates the National Voter Registration Act ("NVRA").

This NVRA notice letter follows a request from the Virginia Coalition for Immigrant Rights ("VACIR") to your office and to the Department of Motor Vehicles, the Office of the Attorney General, and the Office of the Governor, for copies of all records relating to the removal from the voter registration rolls of Virginia registered voters on the basis that they have been identified as a potential "non-citizen." The records were requested on August 20, 2024, pursuant to the Virginia Freedom of Information Act ("VFOIA"), Va. Code § 2.2-3700 *et seq.*, and the Public Disclosure of Voter Registration Activities provision of the NVRA, 52 U.S.C. § 20507(i). As of today, your office has made only a limited initial production of responsive records, despite a September 9 meeting with your staff and numerous emails discussing the specific records responsive to the request. At the September 9 meeting, your staff further informed VACIR that your office is refusing to provide the list of voters who have been removed on the basis that they were identified as a potential "non-citizen" until 90 days after submission of the request for records, or November 18, despite your office having these records in its possession and having no legal basis to withhold these records.

On August 7, 2024, Governor Youngkin signed Executive Order 35 ("E.O. 35"), providing instructions for a voter purge program of alleged noncitizens, relying on Va. Code § 24.2-427.[1] E.O. 35 requires the Commissioner of the Department of Elections to certify to the governor that it has procedures in place to make daily updates to the statewide voter registration list to "[r]emove individuals who are unable to verify that they are [U.S.] citizens to the Department of Motor Vehicles[.]" E.O. 35 at 3-4; *see also* Va. Code § 24.2-427(B)-(C). The Department of Elections ("ELECT") is further required to make those daily updates to the voter rolls by comparing "the list of individuals who have been identified as noncitizens to the list of existing registered voters[.]" E.O. 35 at 3-4. Once ELECT has identified these individuals, "registrars notify any matches of their pending cancellation unless they affirm their citizenship within 14 days[,]" and cancel the voter's registration if the registrar's office does not receive this affirmation with 14 days of sending the notice. *Id.*; *see also* Va. Code § 24-2.427(B)-(C). Accordingly, E.O. 35 affirmatively directs state agencies to identify and purge voters on a systematic and ongoing basis—including during the immediate lead up to the 2024 General Election—in direct violation of the 90-day quiet period mandated by the NVRA. *See id*; 52 U.S.C. § 20507(c)(2)(A).

E.O. 35 further demands the expedition of interagency data sharing between the Department of Motor Vehicles (DMV) and ELECT via a daily file of all alleged "non-citizens

---

[1] E.O. 35 claims to order the implementation of Va. Code § 24.2-429, *see* E.O. 35 at 4; however, the process described in E.O. 35 more closely aligns with Va. Code § 24.2-427, which we presume E.O. 35 intended to cite. Either way, the Program violates the NVRA for the reasons stated herein.

2

transactions, including addresses and document numbers." E.O. 35 at 4. Lastly, E.O. 35 directs the registrars to "immediately notify the Commonwealth's Attorney for their jurisdiction of this alleged unlawful conduct." *Id.*

E.O. 35 has resulted and will continue to result in naturalized citizens who are eligible voters being removed from Virginia's voter rolls. The DMV data E.O. 35 directs ELECT to rely on is often faulty and outdated, risking eligible voters who are U.S. citizens being identified as non-citizens and be improperly and erroneously removed from Virginia's voter rolls. Indeed, Virginia drivers' licenses are available to residents who are not U.S. citizens and can remain valid for up to eight years, meaning that an individual could obtain a driver's license as a non-U.S. citizen and subsequently become a U.S. citizen and lawfully register to vote—for example by using a paper voter registration form at their naturalization ceremony—without updating their driver's license. *See* Va. Code §§ 46.2-328.1(A), 330(A). Under these circumstances, the DMV's records would still indicate that an eligible voter was not a U.S. citizen at the time they obtained their driver's license, thereby improperly and erroneously triggering the removal process. Notably, the DMV does not require people to show additional proof of citizenship or lawful residence when they renew their driver's licenses (so long as they showed such proof since 2004).[2] Additionally, it is our understanding that eligible voters often mistakenly check the wrong box during electronic transactions with the DMV in a way that indicates they are not a citizen despite having already confirmed their citizenship while registering to vote, thereby improperly and erroneously triggering the removal process.

The voter purges mandated by E.O. 35 and Va. Code § 24.2-427 violate the NVRA because: (1) they constitute systematic voter list maintenance within 90 days preceding a federal election; (2) they disproportionately and discriminatorily target naturalized citizens for removal and are not being carried out uniformly across local jurisdictions; and (3) they require voters to provide additional proof of U.S. citizenship not required by the National Mail Voter Registration Application or voter registration applications at the DMV and public assistance agencies in order to remain registered. *See* 52 U.S.C. §§ 20504(c), 20505(a), 20506(a), 20507(b).

As detailed below, we demand that your office and all other implementing state and local entities in Virginia immediately cease purging voters on the basis of citizenship data provided by the DMV. We further demand, pursuant to the NVRA, that ELECT immediately produce documents related to E.O. 35 and any voters purged on the basis of alleged non-U.S. citizenship. If these violations are not remedied by October 6, 2024, you could be subject to federal civil liability. *See* 52 U.S.C. § 20510(b).[3]

---

[2] Virginia's Legal Presence Law, Virginia Department of Motor Vehicles, available at https://www.dmv.virginia.gov/licenses-ids/id-cards/legal-presence (last accessed Oct. 3, 2024)

[3] Violations of the NVRA that occur within 30 days before a federal election may be subject to immediate civil actions by private parties. 52 U.S.C. § 20510(b).

I.  **Virginia's Voter Purge Program Violates the NVRA.**

   a.  **Virginia May Not Systematically Remove Voters from the Rolls Within 90 Days of an Election**

Section 8(c)(2)(A) of the NVRA (the "90-Day Provision") prohibits states from carrying out "any program . . . to systematically remove the names of ineligible voters from the official lists of eligible voters" within 90 days preceding an election for federal office. 52 U.S.C. § 20507(c)(2)(A). Virginia may not take any steps to implement any program to systematically remove voters within this 90-day "quiet period."

The systematic purges E.O. 35 set into action undoubtedly fall within the "quiet period."[4] Governor Youngkin announced the Program on August 7, 2024—exactly 90 days before the 2024 General Election on November 5, and 45 days before the start of early in-person voting. E.O. 35 directs daily updates to purge individuals identified as potential non-U.S. citizens based on faulty and outdated data from another state agency without a meaningful and individualized inquiry into its accuracy. *See* E.O. 35 at 3-4. A single notice that must be answered within 14 days to avoid removal, sent to voters identified from DMV lists on the basis that they at some point had a "noncitizens transaction" with the DMV—without any further attempt either by ELECT or local officials to investigate or confirm the current accuracy of this information—does not constitute the type of "individual correspondence or rigorous individualized inquiry" necessary to permit lawful removal during the 90-Day period. *See Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014).

Although the NVRA provides a narrow set of exceptions under which a state may use a systematic program to remove a voter from the rolls during the quiet period, potential citizenship status and the fact that an individual has been identified at some point in time as a potential noncitizen in a DMV database are not among the enumerated exceptions. *See* 52 U.S.C. § 20507(c)(2)(B); *Arcia*, 772 F.3d at 1345 ("Congress expressly allowed for a number of exceptions to the 90 Day Provision, and an exception for removals of non-citizens is not one of them."). Indeed, the Eleventh Circuit ruled that a nearly identical effort by Florida to remove purported noncitizens from its voter rolls during the quiet period violated the NVRA. *See Arcia*, 772 F.3d at 1348. In *Arcia*, Florida had initiated programs to systematically identify and remove purported noncitizens from the voter rolls. *Id.* at 1339. These programs were systematic because they "did not rely upon individualized information or investigation to determine which names from the voter registry to remove." *Id.* at 1344; *see also N.C. State Conf. of NAACP v. Bipartisan Bd. of Elections & Ethics Enf't*, No. 1:16-CV-1274, 2018 WL 3748172, at *9 (M.D.N.C. Aug. 7, 2018) (where

---

[4] Ex. A, Certification of Election Security Procedures Letter from Commissioner Beals to Governor Youngkin, (Sept. 19, 2024); Ex. B, Arlington County Electoral Board Minutes (Sept. 10, 2024); Ex. C, Fairfax County Policy for Referral of Individuals Removed from Voter Rolls (Sept. 16, 2024); Ex. D, Fairfax County Electoral Board Minutes (Aug. 15, 2024); Ex. E, Loudoun County Electoral Board Agenda Packet (Sept. 12, 2024); Ex. F, Memorandum of Understanding between VADMV and ELECT (Sept. 3, 2024).

cancellation of "374 voters' registrations" based on a single source of information "lacked the individualized inquiry necessary to survive the NVRA's prohibition on systematic removals within 90 days of a federal general election."). Consequently, these programs violated the NVRA's clear statutory language that bars a state from using "any program" to "systematically remove the names of ineligible voters." 52 U.S.C. § 20507(c)(2)(A).

This Program by your office systematically identifies and removes voters from Virginia's voter rolls within the 90-day quiet period and is therefore a clear violation of the NVRA.

### b. E.O. 35's List Maintenance Procedures Are Discriminatory and Their Application Is Not Uniform Across Jurisdictions.

The Program also violates NVRA Section 8(b)'s requirement that list maintenance programs be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." 52 U.S.C. § 20507(b)(1). The NVRA reflects the view of Congress that the right to vote "is a fundamental right," that government has a duty to "promote the exercise of that right," and that discriminatory and unfair registration laws can have a "direct and damaging effect on voter participation" and "disproportionately harm voter participation by various groups, including racial minorities." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334 (4th Cir. 2012); 52 U.S.C. § 20501(a).

Virginia's voter purge program threatens to improperly remove eligible voters who are disproportionally naturalized U.S. citizens from the voter rolls because the stale data it relies upon is significantly more likely to erroneously identify naturalized U.S. citizens as non-U.S. citizens than individuals who were born U.S. citizens. As explained above, the DMV's citizenship data on driver's license holders is not necessarily updated when an individual's citizenship status changes, meaning that it might improperly identify a naturalized U.S. citizen as a non-U.S. citizen for up to eight years, or more, after naturalization. *See* Va. Code §§ 46.2-328.1(A), 330(A). This is not the case for individuals born U.S. citizens, who, absent their own error in checking the wrong box on a form, are never identified as a non-U.S. citizen in their DMV file, unless they are identified in error. Consequently, E.O. 35 will disproportionately remove naturalized U.S. citizens from Virginia's voter rolls compared to their counterparts who were born U.S. citizens.

Federal courts have looked unfavorably on similar programs which target and disproportionately burden naturalized citizens. For example, in *United States v. Florida*, 870 F. Supp. 2d 1346 (N.D. Fla. 2012), a district court explained that a similar program likely violated Section 8(b). *Id.* at 1350. There, Florida's Secretary of State compiled a list that included all registered voters who had disclosed that they were noncitizens at the time they applied for a driver's license, had subsequently naturalized and registered to vote, and had not updated their citizenship status with the state agency responsible for driver's licenses. *Id.* at 1347-48. The Florida Secretary of State ultimately abandoned this program—perhaps recognizing its fundamental unlawfulness—before the court issued a ruling. *Id.* at 1351. Nevertheless, the court explained that the program had likely violated Section 8(b) because its approach to identifying suspected

noncitizens swept in a large number of naturalized citizens. *Id.* at 1350. As the court explained, this "methodology made it likely that the properly registered citizens who would be required to respond and provide documentation [of their citizenship] would be primarily newly naturalized citizens." *Id.* Accordingly, the "burdensome" program "was likely to have a discriminatory impact" on this group of eligible voters in violation of Section 8(b).[5] Virginia's Program is nearly identical to the unlawful program at issue in *United States v. Florida*.

Employing similar logic, the District of Arizona recently held that a state statutory provision that "requires county recorders to search" the SAVE database "only for naturalized voters who county recorders suspect are not U.S. citizens" was unlawful because it "subject[ed] *only* naturalized citizens to database checks." *Mi Familia Vota v. Fontes*, No. CV-22-00509-PHX-SRB, 2024 WL 862406, at *38 (D. Ariz. Feb. 29, 2024), judgment entered, No. CV-22-00509-PHX-SRB, 2024 WL 2244338 (D. Ariz. 2024) (emphasis in original). As the court explained, using the SAVE database means that only "[n]aturalized citizens will always be at risk" of removal from this process, in violation of the requirement that state officials refrain from applying discriminatory practices in determining who is qualified to vote. *Id.*; *see also* 52 U.S.C. § 10101(a)(2)(A).

Thus, "[a] state cannot properly impose burdensome demands in a discriminatory manner" regarding voter registration, *Florida*, 870 F. Supp. 2d at 1350, including by imposing those demands disproportionately on naturalized voters. The same is true here.

E.O. 35 and its directives targeting noncitizens will disproportionately harm naturalized U.S. citizens who are eligible to vote in Virginia. *Cf. Mi Familia Vota*, 2024 WL 862406 at *22 (because state motor vehicle division "does not issue foreign-type credentials to native born citizens, only naturalized citizens will ever be misidentified as non-citizens"). As such, this list maintenance program is not "uniform" and "nondiscriminatory," as required by the NVRA. 52 U.S.C. § 20507(b)(1). The Program implemented by Virginia (with a history of mistakes in its voter removals), which disproportionately affects naturalized citizens through the use of data containing known errors, that knowingly places burdens exclusively on those citizens to find a way to prove their citizenship within two weeks, and that subsequently purges them en masse, is discriminatory and violates Section 8(b).[6]

---

[5] The district court's framing of its analysis as "probably" in violation of Section 8(b) was consistent with the procedural posture of this case, at the preliminary injunction stage, as well as the mootness of the issue due to voluntary cessation by the Florida Secretary of State. *See Florida*, 870 F. Supp. 2d at 1347, 1351. The *Florida* district court rejected a challenge to Florida's program under the 90-Day Provision, on the basis that removing purported noncitizens is not the kind of removal contemplated by the 90-Day Provision. *Id.* at 1349-50. The Eleventh Circuit implicitly overruled this holding two years later in *Arcia*, which held that systematic removals targeting purported noncitizens are barred by the 90-Day Provision. 772 F.3d at 1346-48; *see also id.* at 1348-49 (Suhrheinrich, J., dissenting) (basing dissent in part on the reasoning of the district court in *Florida* regarding the 90-Day Provision).

[6] *See* Suzanne Gamboa, *Virginia removes 6,303 'noncitizens' from voter rolls, fueling fraud allegations*, NBC News (Aug. 23, 2024), https://www.nbcnews.com/news/latino/virginia-governor-youngkin-voter-purge-noncitizens-errors-election-rcna167925.

The Program likewise violates the NVRA's requirement that the State "ensure that any eligible applicant is registered to vote in an election." 52 U.S.C. § 20507(a)(1). Virginia may not rely upon information that is demonstrably outdated and has not been individually confirmed to be accurate to remove voters whom federal law requires the State to "ensure" remain registered to vote.

### c. E.O. 35 Adds a Citizenship Requirement That Is Not Permitted for Voters Using the Federal Form or Registering at the DMV or a Voter Registration Agency.

E.O. 35's requirement that targeted voters reaffirm their U.S. citizenship also violates the NVRA's limitation on proof of citizenship to an attestation under penalty of perjury that the registrant is a U.S. citizen. *See Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1 (2013) [hereinafter "*ITCA*"]; *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016); 52 U.S.C. §§ 20508(b)(2)(A)-(B), 20505(a)(1)-(2). The NVRA provides that a state voter registration form "may require only such identifying information (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. §§ 20508(b)(1), 20505(a)(1)-(2). Under the NVRA, a state voter registration form "shall include a statement that (A) specifies each eligibility requirement (including citizenship); (B) contains an attestation that the applicant meets each such requirement; and (C) requires the signature of the applicant, under penalty of perjury." *Id.* §§ 20508(b)(2), 20505(a)(1)-(2); *see also id.* § 20504(c) (imposing similar requirements on voter registration forms included as part of a driver's license application).

Further, Virginia must "accept and use" the National Mail Voter Registration Form ("Federal Form") provided by the U.S. Election Assistance Commission, which does not require documentary proof of citizenship. *See ITCA*, 570 U.S. at 4; *see also League of Women Voters of United States v. Harrington*, 560 F. Supp. 3d 177, 180, 185-86 (D.D.C. 2021) (vacating U.S. Election Assistance Commission approval of Alabama's request to include a documentary proof of citizenship requirement on its state-specific instructions for the federal voter registration form, because the Commission did not assess whether such changes were necessary for Alabama to assess voter eligibility and so failed to comply with the Administrative Procedure Act in its administration of the NVRA's requirement). Similarly, once a voter has completed a voter registration form at the DMV or at a public assistance agency, the NVRA prohibits a state from requiring additional documentation for them to successfully become registered. *Fish v. Kobach*, 309 F. Supp. 3d 1048, 1106 (D. Kan. 2018) (striking down Kansas law requiring registrants to present additional citizenship paperwork to successfully register to vote, on both NVRA and equal protection grounds).

By requiring certain voters to reaffirm their U.S. citizenship to remain registered, Virginia undermines the NVRA's command that voters need only complete a voter registration form to be

a registered voter in federal elections. *See ITCA*, 570 U.S. at 4; *Fish v. Kobach*, 840 F.3d at 723. E.O. 35's attempt to insert an additional requirement that certain voters provide additional citizenship information about themselves as part of the State's DMV data checks and motor voter forms violates the long-established principle that states cannot add unnecessary voter registration requirements at any stage of the registration process. *Fish v. Kobach*, 840 F.3d at 747; *Fish v. Schwab*, 957 F.3d 1105, 1142 (10th Cir. 2020). Simply put, if a state cannot "overcome the presumption that attestation [of citizenship on the voter registration form] constitutes the minimum amount of information necessary for a state to carry out its eligibility-assessment and registration duties[,]" it cannot add an additional proof of citizenship requirement to the voter registration process. *Fish v. Kobach*, 840 F.3d at 739.

Virginia's attempt to add an additional citizenship verification requirement to its voter registration process through the back door creates a "substantial risk that citizens will be disenfranchised." *See League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (holding that permitting Alabama to enforce this type of requirement for voting posed such a risk). Such a requirement undermines the very purpose of the NVRA, which is "increas[ing] the number of eligible citizens who register to vote in elections for Federal office." 52 U.S.C. § 20501(b).

## II.     Demand to Cease Unlawful Action and for Production of Documents.

For these reasons, we make the following demands on your office and any other state or local governmental entities acting to implement the Program:

1. Immediately cease the removal of voters from Virginia's voter rolls on the basis of alleged non-U.S. citizenship pursuant to E.O. 35 and Va. Code § 24.2-427(B)-(C);

2. Re-register any individual removed from the voter rolls pursuant to the same program;

3. Issue a public statement that no person shall be removed from Virginia's voter rolls pursuant to the same program;

4. Provide notice to any and all individuals contacted or noticed pursuant to the same program that they remain registered to vote in Virginia elections, including the November 2024 election, and that no further action on their part is needed.

Further, the NVRA requires that Virginia, upon request, produce "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). We therefore request that the following documents be produced promptly:

1. Individualized voter information[7] for each of the following voters and voter registration applicants:

    (a) All 6,303 registered voters your office identified as potential noncitizens prior to the issuance of E.O. 35;

    (b) All voters canceled, purged, or otherwise removed from the list of eligible voters pursuant on the basis of alleged non-U.S. citizenship from January 2022 to the present; and

    (c) All voter registration applicants denied registration on the basis of alleged non-U.S. citizenship;

    (d) All data supplied by the DMV to ELECT identifying potential noncitizens;

2. Any and all instructions provided to Boards of Registrars regarding implementation of E.O. 35, Va. Code § 24.2-427 or any other program intended to remove non-U.S. citizens from the voter rolls;

3. Any and all communications with the Virginia Attorney General and Commonwealth Attorneys regarding notifications or referrals of the removal of registered voters your office identified as potential noncitizens;

4. All documents relating to any notice provided to the registered voters your office identified as potential noncitizens;

5. All records supporting your contention that noncitizens "purposefully" or "accidentally" registered to vote;

6. All documents supporting your contention that the 6,303 registered voters or voters referred to in E.O. 35 were potentially noncitizens, including the source(s) of information for determining these registered voters purportedly had noncitizen transactions, including addresses and document numbers;

7. All documents regarding any steps taken by ELECT or other state or local agencies to determine prior to removal whether any of the registered voters identified as potential noncitizens since January 15, 2022 are, in fact, naturalized citizens;

8. All advisory or guidance documents, whether formal or informal, provided to ELECT, DMV, county Boards of Registrars, Probate Judges, and/or other county election administrators regarding the implementation of E.O. 35, Va. Code § 24.2-427 or any other program intended to remove non-U.S. citizens from the voter rolls;

9. All documents relating to the removal of any of registered voter identified as a potential non-U.S. citizen since January 15, 2022;

---

[7] "Individualized voter information" as used in this request includes: first name; last name; middle name; suffix; address, including street number, apartment number, city, state, zip code, and county; mailing address, if different; phone number; precinct number; voter ID number assigned by an election official; date of birth; place of birth; date of voter registration; race; gender; reason purged from voter roll or denied registration; and date purged from voter roll or denied registration.

9

10. All communications regarding the development, implementation, or announcement of the Program, including but not limited to:

   a) internal communications of the Secretary of Commonwealth's office;

   b) internal communications of ELECT;

   c) communications between ELECT and other State agencies, including but not limited to the office of the Governor, the office of the Attorney General, and the office of the Secretary of Commonwealth;

   d) communications between the office of the Governor and any legislative branch officials or employees;

   e) communications between ELECT and any federal officeholder or agency;

   f) communications between ELECT or the Secretary of Commonwealth's office and any county officials, including but not limited to Boards of Registrars, Probate Judges, and other county election administrators;

   g) communications between ELECT or the Secretary of Commonwealth's office and any outside organizations, consultants, experts, or advisers;

   h) communications between the Secretary of Commonwealth's office and the media;

   i) communications between the Secretary of Commonwealth's office and members of the public; and

   j) any other communications related to E.O. 35.

We expect that any charge for these records will be a "reasonable cost," as required under the NVRA's Public Disclosure Provision. 52 U.S.C. § 20507(i)(1). Please inform us of the expected cost prior to delivery if it exceeds $100.

We would prefer to receive all records in electronic format via email or other electronic method, if possible, to the email addresses provided in the signatures. If this is not possible, we are happy to confer about other ways we can meaningfully access these records. If any responsive documents or communications are in your possession or the possession of any employees of ELECT, the Secretary of Commonwealth on non-governmental computers, on electronic devices, or in paper copy, please include such documents and communications in your production.

*  *  *

  The program you announced on August 7, 2024, plainly violates the NVRA. As you know, the next election for federal offices will occur on November 5, 2024, which is less than 120 days away and will be less than 30 days away on October 6, 2024. If the violations identified above are not corrected by October 6, 2024, the undersigned may seek declaratory or injunctive relief to remedy these violations. *See* 52 U.S.C.A. § 20510 ("If the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State . . . before bringing a civil action[.]").

Sincerely,

/s/ Brent Ferguson
Brent Ferguson, Senior Legal Counsel
Danielle Lang, Senior Director, Voting Rights
Kevin Hancock, Director, Strategic Litigation
Simone Leeper, Legal Counsel
Lucas Della Ventura, Legal Fellow
CAMPAIGN LEGAL CENTER
1101 14th St NW, Suite 400
Washington, D.C. 20005
(202) 736-2200
bferguson@campaignlegalcenter.org
dlang@campaignlegalcenter.org
khancock@campaignlegalcenter.org
sleeper@campaignlegalcenter.org
ldellaventura@campaignlegalcenter.org

Ezra D. Rosenberg,
 Co-Director, Voting Rights Project
Ryan Snow, Counsel
Javon Davis, Associate Counsel
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW, Ste. 900
Washington, DC 20005
Tel: (202) 662-8600
erosenberg@lawyerscommittee.org
rsnow@lawyerscommittee.org
jdavis@lawyerscommittee.org

Benjamin L. Berwick, Counsel
THE PROTECT DEMOCRACY PROJECT, INC.
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
ben.berwick@protectdemocracy.org

Anna Dorman, Counsel
THE PROTECT DEMOCRACY PROJECT, INC.
200 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
anna.dorman@protectdemocracy.org

Orion Danjuma, Counsel
THE PROTECT DEMOCRACY PROJECT, INC.
82 Nassau Street, # 601
New York, NY 10038
Telephone: (202) 579-4582
orion.danjuma@protectdemocracy.org

Joan Porte, President
LEAGUE OF WOMEN VOTERS OF VIRGINIA
1011 East Main Street
Suite 214 A
Richmond, VA 23219
(804) 214-6312
president@lwv-va.org

Monica Sarmiento
Executive Director
Virginia Coalition for Immigrant Rights
3801 Mt. Vernon Ave.
Alexandria, VA 22305
(202) 509-1497
monica@vacir.org