**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| VIRGINIA COALITION FOR IMMIGRANT RIGHTS; LEAGUE OF WOMEN VOTERS OF VIRGINIA; LEAGUE OF WOMEN VOTERS OF VIRGINIA EDUCATION FUND,<br><br>   *Plaintiffs*,<br><br>    v.<br><br>SUSAN BEALS, in her official capacity as Virginia Commissioner of Elections; JOHN O'BANNON, in his official capacity as Chairman of the State Board of Elections; ROSALYN R. DANCE, in her official capacity as Vice-Chairman of the State Board of Elections; GEORGIA ALVIS-LONG, in her official capacity as Secretary of the State Board of Elections; DONALD W. MERRICKS and MATTHEW WEINSTEIN, in their official capacities as members of the State Board of Elections; and JASON MIYARES, in his official capacity as Virginia Attorney General,<br><br>   *Defendants*. | Case No. 1:24-cv-01778 |

## PLAINTIFFS' EMERGENCY MOTION FOR EXPEDITED DISCOVERY

Plaintiffs Virginia Coalition for Immigrant Rights ("VACIR"), League of Women Voters of Virginia and League of Women Voters of Virginia Education Fund (together "LWVVA" or "the League") request expedited discovery that will support the efficient development of the evidentiary record and aid the Court's adjudication of a forthcoming motion for preliminary injunction on Plaintiffs' claims under the National Voter Registration Act ("NVRA"). *See* ECF No. 1. Plaintiffs

intend to file a motion for preliminary injunction imminently and seek relief as soon as possible given the severe ongoing voter confusion and risk of further disenfranchisement caused by Defendants' program to systematically purge Virginians identified as potential noncitizens from the voter rolls, including within the 90-day NVRA quiet period (the "Purge Program").

Accordingly, Plaintiffs request that this Court grant limited expedited discovery necessary for rigorous evaluation of the likelihood of success on the merits and the public interest in enjoining the Purge Program (described below). Specifically, Plaintiffs seek individualized voter information[1] for each of the following voters and voter registration applicants ("Purge List"):

(1) The list of 6,303 registered voters referred to in Executive Order 35 ("E.O. 35") that the Virginia Department of Elections ("ELECT") identified and subjected to the Purge Program between January 2022 and July 2024;

(2) The registered voters ELECT has identified and subjected to the Purge Program since the announcement of E.O. 35;

(3) Voter registration applicants denied registration on the basis of alleged noncitizenship since instituting the Purge Program;

For each person identified as specified in (1), (2), and (3), each person's data file shall include:

(A) the name of the agency that possessed information leading to the individual's inclusion on the Purge List (the originating agency);

(B) the means by which the originating agency received information that led to the individual's inclusion on the Purge List (*e.g.*, the individual at one time

---

[1]    The identifying information for the people on the Purge List should include all information kept within the Virginia voter file but, at minimum, full name, residential address, mailing address (if different), date of birth, phone number (if available), voter ID number, any associated state-issued ID numbers (such as driver's license number), all registration dates including earliest and most recent registration date, and race (if available).

provided documentation to the originating agency indicating they were not a citizen; the individual indicated they were not a citizen by checking a box on an electronic form; *etc.*);

(C)    the date that the originating agency received information that led to the individual's inclusion on the Purge List;

(D)    the individual's registration and voting history before and after being placed on the Purge List, including but not limited to date of initial registration, reason(s) for and date(s) of removal from the registration list, any subsequent date(s) of registration, and voting history; and

(E)    the individual's current voter registration status, including whether (i) currently inactive but not canceled, (ii) re-registered, (iii) canceled at the individual's request, or (iv) canceled by Defendants.

Plaintiffs respectfully request the Court order immediate production of the above records, which upon information and belief are already in Defendants' possession and can be readily produced, and which would enable Plaintiffs to attempt to mitigate the imminent disenfranchisement of additional eligible voters who have been erroneously flagged for removal.

Additionally, Plaintiffs seek:

(4)    the Virginia voter file snapshot for August 7, 2024, and a current Virginia voter file snapshot and the date on which that snapshot was taken;

(5)    any and all memoranda, policies, reports, data, summaries, correspondence, or similar documents relating to the development of the Purge Program;

(6)    any and all memoranda, policies, reports, data, summaries, correspondence, or similar documents relating to the development of the Purge List, including any and

3

all data files provided by the Department of Motor Vehicles ("DMV"), the Office of the Attorney General of Virginia, the Offices of Commonwealth Attorneys, and any other federal, state, or local governmental agency that provided data for the development of the Purge List;

(7)     any and all instructions, guidance, memoranda, policies, reports, data, summaries, training, correspondence, or similar documents developed by ELECT and sent to Boards of Registrars in implementation of the Purge Program;

(8)     any and all memoranda, policies, reports, data, summaries, correspondence, or similar documents relating to the development of notice letters and enclosures sent by Defendants to registered voters on the Purge List;

(9)     any and all records relating to the referral to law enforcement officials and/or the investigation by Defendant Miyares of any voter identified through the Purge Program; and

(10)    three-hour depositions pursuant to Fed. R. Civ. P. 30(b)(6) of ELECT; Commissioner Beals; and the Office of the Attorney General.[2]

This narrowly tailored request will facilitate this Court's evaluation of the Purge Program on the expedited timeline necessitated by the ongoing election, which concludes on November 5.

---

[2]     These shorter, targeted depositions would be only for the limited purpose of expedited discovery. By requesting these targeted depositions for expedited discovery, Plaintiffs do not waive further, lengthier depositions as the litigation progresses.

**BACKGROUND**

On August 7, 2024, Governor Youngkin signed E.O. 35, providing instructions for a voter purge program of alleged noncitizens, relying on Va. Code § 24.2-427.1 E.O. 35 requires the Commissioner of ELECT to certify to the governor that it has procedures in place to make daily updates to the statewide voter registration list to "[r]emove individuals who are unable to verify that they are [U.S.] citizens to the Department of Motor Vehicles[.]" E.O. 35 at 3-4; *see also* Va. Code § 24.2-427(B)-(C). ELECT is further required to make those daily updates to the voter rolls by comparing "the list of individuals who have been identified as noncitizens to the list of existing registered voters[.]" E.O. 35 at 3-4. Once ELECT has identified these individuals, "registrars notify any matches of their pending cancellation unless they affirm their citizenship within 14 days[,]" and cancel the voter's registration if the registrar's office does not receive this affirmation with 14 days of sending the notice. *Id.*; *see also* Va. Code § 24-2.427(B)-(C). Accordingly, E.O. 35 affirmatively directs state agencies to identify and purge voters on a systematic and ongoing basis—including within one month of the 2024 General Election—in direct violation of the 90-day quiet period mandated by the NVRA. *See id.*; 52 U.S.C. § 20507(c)(2)(A). E.O. 35 further demands the expedition of interagency data sharing between the DMV and ELECT via a daily file of all alleged "non-citizens. transactions, including addresses and document numbers." E.O. 35 at 4.

As the existing evidence, including the directives in E.O. 35, make clear, the Purge Program relies on erroneous data—from the DMV and perhaps other sources—that includes both naturalized and U.S.-born citizens and is ongoing during the 90-day quiet period. To prevent further harm from reaching active voters during an election, Plaintiffs request limited expedited discovery.

## ARGUMENT

This Court has broad discretion to supervise and manage the timing of discovery, especially where a request for a preliminary injunction provides good cause not to wait until the Rule 26(f) conference to serve discovery requests. *See Mey v. Phillips*, 71 F.4th 203, 217 (4th Cir. 2023) (citing *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014) (internal citation omitted)); Fed. R. Civ. P. 26(d)(1) (permitting deviation from ordinary discovery schedule when "authorized . . . by court order"); Advisory Committee Notes ("Discovery can begin earlier if authorized . . . by . . . order . . . . This will be appropriate in some cases, such as those involving requests for a preliminary injunction . . . ."); Fed. R. Civ. P. 30(a)(2), 33(a), 33(b)(2), and 34(b).

Courts in this District "have applied differing standards when considering motions to expedite discovery for a preliminary injunction." *Kia Motors Am., Inc v. Greenbrier GMC, Inc.*, No. 2:20CV428 (RCY), 2020 WL 8970813, at *2 (E.D. Va. Dec. 11, 2020). Many courts "apply a more flexible 'reasonableness' or 'good cause' test," which "tak[es] into account the totality of the circumstances." *Id.* (internal quotation marks omitted) (applying the good cause standard); *see also, e.g.*, *Lapp v. United States*, No. 1:23-CV-248 (MSN/LRV), 2023 WL 6193009, at *1 (E.D. Va. Mar. 10, 2023) (finding "that there is good cause to allow Plaintiffs" to serve expedited tailored subpoenas prior to a Rule 26(f) conference); *RelaDyne Reliability Servs. Inc. v. Bronder*, No. 2:20CV377, 2020 WL 5745801, at *1 (E.D. Va. Aug. 4, 2020) (applying the good cause standard and allowing expedited discovery in advance of hearing on a preliminary injunction motion). Courts applying the reasonableness or good cause test consider the following factors, among others:

> (1) the procedural posture of the case; (2) whether the discovery at issue is narrowly tailored to obtain information that is probative to the preliminary injunction analysis; (3) whether the requesting party would be irreparably harmed by waiting until after the parties conduct their Rule 26(f) conference; and (4)

whether the documents or information sought through discovery will be unavailable in the future or are subject to destruction.

*Kia Motors Am., Inc.*, 2020 WL 8970813, at *2.

Alternatively, some courts follow "a minority approach" and apply a modified preliminary injunction test to motions for expedited discovery that require the plaintiff to make "a strong showing of [likelihood of success on the] merits and irreparable harm to Plaintiff." *ForceX, Inc. v. Tech. Fusion, LLC*, No. 4:11-cv-88, 2011 WL 2560110, at *4-5 (E.D. Va. June 27, 2011); *see also Kia Motors Am., Inc.*, 2020 WL 8970813, at *2 (same); *Willis Towers Watson Se., Inc. v. Alliant Ins. Servs., Inc.*, No. 3:23-CV-659-HEH, 2023 WL 9197745 (E.D. Va. Nov. 21, 2023) (granting expedited discovery under the modified PI test); *Malon v. Franklin Fin. Corp.*, No. 3:14CV671 HEH-RCY, 2014 WL 5795730, at *3 (E.D. Va. Nov. 6, 2014) (same). This standard requires the plaintiff to show only that it "has made a sufficiently colorable claim" under its cause of action "to justify limited expedited discovery." *Malon*, 2014 WL 5795730, at *3

As explained below, Plaintiffs' request for expedited discovery satisfies either test.

## I.      Plaintiffs' Request for Expedited Discovery Is Reasonable and Supported by Good Cause

Plaintiffs' request for expedited discovery is reasonable and supported by good cause for at least five independent reasons.

### A.      Plaintiffs' Request Is Reasonable Given the Procedural Posture of the Case and the Impending General Election

First, Plaintiffs intend to seek a preliminary injunction in short order, and the discovery they seek on an expedited basis is necessary to obtain additional facts directly relevant to that preliminary injunction motion as quickly as practicable, so that the Court may consider them in deciding the motion. *Cf., e.g.*, *Lapp*, 2023 WL 6193009, at *1 (granting expedited discovery given

Plaintiff's need to identify unknown individuals who should be named as defendants before the statute of limitations expired).

The need for expedited discovery and associated preliminary injunctive relief is urgent because of the brief time remaining until the 2024 general election on November 5. Courts that grant expedited discovery in cases involving voting and electoral issues recognize the need in this particular context for fact-finding on an expedited time frame. *See, e.g.*, *Common Cause Ga. v. Kemp*, 347 F. Supp. 3d 1270, 1301 (N.D. Ga. 2018); *People First of Ala. v. Merrill*, 491 F. Supp. 3d 1076, 1143-44 (N.D. Ala. 2020).

**B.      Plaintiffs' Request Is Reasonable Given Defendants' Refusal to Produce the Information Sought in Response to Plaintiffs' NVRA Records Requests**

Second, expedited discovery is also reasonable due to the secrecy of Defendants' Purge Program and Plaintiffs' inability to obtain the information they seek elsewhere. Defendants have not provided, either publicly or to Plaintiffs, the Purge List, critical information on the Purge Program's development, or critical information on the Purge Program's implementation. This evidence is important for evaluation of Plaintiffs' preliminary injunction motion, both as to likelihood of success on the merits and as to irreparable harm. Only Defendants, not Plaintiffs or the Court, possess information as to the full contours of the Purge Program, such as (for example) the full Purge List.

In fact, Defendants have refused to provide Plaintiffs the information they now seek through discovery despite Plaintiffs' records requests under the NVRA and despite Defendants having those records in their possession. The NVRA requires Defendants to maintain and make available the documents Plaintiffs seek. The Public Disclosure of Voter Registration Activities provision of the NVRA provides that states:

8

> shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1). The Public Disclosure Provision covers individualized records for registered voters subject to removal programs. *See PILF v. N.C. State Board of Elections*, 996 F.3d 257 (4th Cir. 2021); *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012); *see also* 52 U.S.C. § 20507(i)(2).

Since August 2024, Plaintiffs have submitted two NVRA records requests to Defendants. First, on August 20, Plaintiff VACIR sent a letter to Defendant Beals, Defendant Miyares, the DMV, and the Office of the Governor requesting copies of all records relating to the removal from the voter registration rolls of Virginia registered voters on the basis that they have been identified as a potential "non-citizen." *See* ECF No. 2-6, Ex. 7. The request was made pursuant to the Public Disclosure of Voter Registration Activities provision of the NVRA, 52 U.S.C. § 20507(i). In response, Defendant Beals made only a limited initial production of responsive records, despite a September 9 meeting between VACIR and Defendant Beals's staff and numerous emails discussing the specific records responsive to the request.

Second, on October 3, 2024, all Plaintiffs sent a letter entitled "Notice of Violation of National Voter Registration Act and Demand for Remediation and Documents" to Defendants Beals and Miyares. *See* ECF No. 2-7, Ex. 8. That letter, which was sent pursuant to the NVRA (52 U.S.C. § 20510(b)(2)), informed Defendants Beals and Miyares that the Purge Program violates three provisions of the NVRA. ELECT responded to that letter on October 7, 2024, asserting that its "established voter list maintenance processes comply with all applicable state and federal laws" and that it would wait on releasing the list of individuals cancelled due to being declared a non-

citizen until after the election, despite having those records readily available as required by the NVRA. *See* ECF No. 2-8, Ex. 9.

In light of the context in which the Defendants have continued to refuse to provide relevant and beneficial factual information despite the minimal burden associated with providing such transparency, expedited discovery is appropriate. Plaintiffs have attempted to avail themselves of this alternate route to obtain information on the Purge Program and Purge List, unsuccessfully, and have no other means to obtain information about the Purge Program and Purge List directly relevant to Plaintiffs' claims.

### C.       Plaintiffs' Request Is Reasonable Because It Is Narrowly Tailored to Obtain Information that Is Probative to the Preliminary Injunction Analysis

Third, Plaintiffs' request for expedited discovery is reasonable because it is narrowly tailored in scope. On the one hand, the discovery sought is directly related to Plaintiffs' NVRA claims. On the other hand, the discovery Plaintiffs seek is not burdensome. Plaintiffs seek documents relating to creation and implementation of the Purge Program. These documents are already in Defendants' possession and should not require an extensive search. The limited expedited Rule 30(b)(6) depositions that Plaintiffs seek are minimally intrusive. The requested discovery is also directly related to evidence Plaintiffs hope to present at an evidentiary hearing on their anticipated motion for preliminary injunction. Both the requested documents and the requested limited depositions will shed important light on the development and implementation of the Purge Program that is important for this litigation—particularly given that early in-person voting has already commenced and the general election will occur in just 28 days on November 5.

**D.      Plaintiffs' Request Is Reasonable Because the Balance of Equities Favors Plaintiffs and Their Request Is Aligned with the Public Interest**

Fourth, Plaintiffs request is also reasonable because it is aligned with the public interest in voter list maintenance that is in accordance with law and in the protection of the fundamental right to vote. The NVRA reflects the view of Congress that the right to vote "is a fundamental right," that government has a duty to "promote the exercise of that right," and that discriminatory and unfair registration laws can have a "direct and damaging effect on voter participation" and "disproportionately harm voter participation by various groups, including racial minorities." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334 (4th Cir. 2012); 52 U.S.C. § 20501(a). In respect of the fundamental interests at stake, the clear legal standards provided by the NVRA, and the Defendants' conduct in contravention of those standards, the public interest weighs in favor of expedited discovery.

**E.      Plaintiffs' Request Is Reasonable Because They Would Be Irreparably Harmed by Waiting Until After a Rule 26(f) Conference**

Fifth and finally, as explained in detail *infra*, Part II.B., Plaintiffs' request is reasonable for the additional reason that they would suffer irreparable harm by waiting until after the parties conduct their Rule 26(f) conference for the discovery they seek.

\*      \*      \*

In sum, Plaintiffs' motion for expedited discovery should be granted because Plaintiffs' discovery requests are reasonable and supported by good cause.

## II.     Plaintiffs' Request for Expedited Discovery Also Satisfies the Minority Approach of Applying a Modified Preliminary Injunction Test

Because Plaintiffs' requests are reasonable and supported by good cause, the motion should be granted. *See, e.g.*, *Lapp*, 2023 WL 6193009, at *1; *RelaDyne Reliability Servs. Inc.*, 2020 WL 5745801, at *1. But in the alternative, Plaintiffs' motion also satisfies the minority approach applied by some courts that looks to the first two preliminary injunction factors. *See ForceX*, *Inc.*, 2011 WL 2560110, at *4-5. As discussed above, under this approach, Plaintiffs need only show that they "ha[ve] made a sufficiently colorable claim . . . to justify limited expedited discovery," *Malon*, 2014 WL 5795730, at *3, and not that they will ultimately prevail on their upcoming preliminary injunction motion, since this discovery motion seeks evidence that will aid the Court's consideration of whether a preliminary injunction is warranted.

### A.     Likelihood of Success on the Merits

Even pre-discovery, Plaintiffs' complaint and its attached exhibits have made "a strong showing" that Plaintiffs will likely succeed on the merits. *ForceX*, *Inc.*, 2011 WL 2560110, at *4-5; *see* ECF Nos, 1, 2, Exs. 2-8. As the Complaint details, the Purge Program violates the NVRA because it (1) constitutes systematic voter list maintenance within 90 days preceding a federal election; (2) discriminatorily identifies naturalized citizens for removal and is not being carried out uniformly across local jurisdictions; and (3) requires voters to provide additional proof of U.S. citizenship not required by the National Mail Voter Registration Application or voter registration applications at the DMV and public assistance agencies in order to remain registered. *See* 52 U.S.C. §§ 20504(c), 20505(a), 20506(a), 20507(b); *see also* ECF No. 1 ¶¶ 67-80. Defendant Beals has further violated the Public Disclosure of Voter Registration Activities provision of the NVRA, 52 U.S.C. § 20507(i), by refusing to provide Plaintiffs with the list of voters identified as potential

noncitizens within a reasonable amount of time despite having those records in her office's possession. *See* ECF No. 1 ¶¶ 81-84.

**B.      Irreparable Harm**

As the complaint also demonstrates, the irreparable harm that Plaintiffs suffer is not only likely, but current and ongoing. *See* ECF No. 1 ¶¶ 19-30. The Purge Program harms organizational Plaintiffs VACIR and LWVVA directly by continuing to divert their resources away from their core activities and directly harming their members. Instead of registering additional new voters and providing programs for Virginia's immigrant community, they have and will continue to spend time and money (1) identifying new citizens, including those who have been targeted for removal or purged; (2) educating the public, in particular new citizens, on how to respond to being targeted for removal and ensuring that they remain registered or, if they were purged, how to reregister; (3) assisting new citizens who have been targeted for removal with defending their registrations and right to vote; (4) ensuring that any voters who are affected by the Purge Program who are required to vote using a provisional ballot have their votes counted. It further harms Organizational Plaintiffs because they have members who are naturalized citizens that are affected by the Purge Program.

Each day that Plaintiffs are denied relief is another election day in which their resources are drained and their members are harmed by the illegal conduct of Defendants. As the election window dwindles, Plaintiffs will never be able to fully reclaim the resources originally devoted towards accomplishing their core missions. This irreparable damage will increase exponentially over time as the most important days for Plaintiffs' core activities, which are closest to the election, are occupied by the Purge Program and its effects. Plaintiffs' members continue to suffer burdens on their fundamental right to vote during the election window under the threat of criminal

prosecution and are encumbered from being able to vote early like any other citizen. To stop further irreparable injury to Plaintiffs during this election, swift discovery is necessary to provide immediate clarity to voters' registration statuses and their ability to participate in the 2024 election.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion for expedited discovery.

Date:   October 8, 2024

Ezra D. Rosenberg*
Ryan Snow*
Javon Davis*
Lawyers' Committee for Civil Rights Under Law
1500 K Street, NW, Ste. 900
Washington, DC 20005
(202) 662-8600
erosenberg@lawyerscommittee.org
rsnow@lawyerscommittee.org
jdavis@lawyerscommittee.org

Orion Danjuma*
John Paredes*
The Protect Democracy Project, Inc.
82 Nassau Street, # 601
New York, NY 10038
Telephone: (202) 579-4582
orion.danjuma@protectdemocracy.org
john.paredes@protectdemocracy.org

Benjamin L. Berwick*
The Protect Democracy Project, Inc.
15 Main Street, Suite 312
Watertown, MA 02472
(202) 579-4582
ben.berwick@protectdemocracy.org

Anna Dorman*
The Protect Democracy Project, Inc.
200 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006

Respectfully submitted,

/s/ Shanna Ports
Shanna Ports* (VSB No. 86094)
Danielle Lang*
Kevin Hancock*
Brent Ferguson*
Simone Leeper*
Attorneys for Plaintiffs
Campaign Legal Center
1101 14th Street NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
sports@campaignlegalcenter.org
dlang@campaignlegalcenter.org
khancock@campaignlegalcenter.org
bferguson@campaignlegalcenter.org
sleeper@campaignlegalcenter.org

John Powers*
Hani Mirza*
Advancement Project
1220 L Street Northwest, Suite 850
Washington, D.C. 20005
(202) 728-9557
jpowers@advancementproject.org
hmirza@advancementproject.org

14

Telephone: (202) 579-4582
anna.dorman@protectdemocracy.org

*Attorneys for Plaintiffs Virginia Coalition for
Immigrant Rights, the League of Women Voters
of Virginia, and the League of Women Voters of
Virginia Education Fund*

*\*Motions for admission or pro hac vice
participation forthcoming.*