**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| VIRGINIA COALITION FOR IMMIGRANT RIGHTS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> SUSAN BEALS, in her official capacity as Virginia Commissioner of Elections, *et al.*, <br><br> *Defendants*. | Case No. 1:24-cv-1778 |
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br> v. <br><br> COMMONWEALTH OF VIRGINIA, *et al.*, <br><br> *Defendants*. | Case No. 1:24-cv-1807 |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY**
**MOTION FOR EXPEDITED DISCOVERY**

Defendants Susan Beals, in her official capacity as Virginia Commissioner of Elections;

John O'Bannon, in his official capacity as Chairman of the State Board of Elections; Rosalyn R.

Dance, in her official capacity as Vice-Chairman of the State Board of Elections; Georgia Alvis-

Long, in her official capacity as Secretary of the State Board of Elections; Donald W. Merricks

and Matthew Weinstein, in their official capacities as members of the State Board of Elections;

and Jason Miyares, in his official capacity as Virginia Attorney General, by counsel, submit this

Opposition to Plaintiffs' Emergency Motion for Expedited Discovery (ECF No. 4) ("Discovery Motion").[1]

Plaintiffs' emergency motion for expedited discovery should be denied. The only purported "emergency" Plaintiffs raise is their contention that they need discovery to support their motion for a preliminary injunction. Yet Plaintiffs have already filed their brief in support of that motion, and set the motion for a hearing in less than a week, on October 24. Defendants' opposition to the preliminary injunction motion is due at 3 p.m. on Tuesday, October 22. That schedule leaves an unworkably short amount of time within which to conduct Plaintiffs' broad requested discovery, including numerous document requests and multiple depositions. There would also be no time for Plaintiffs to raise any additional arguments based on the requested discovery, much less any opportunity for Defendants to respond to such new arguments.

Plaintiffs' own dilatory litigation tactics gave rise to this situation. Plaintiffs contend Governor Glenn Youngkin's Executive Order 35 ("E.O. 35") directed Defendants to violate a provision of the National Voter Registration Act ("NVRA") that restricts certain changes to the voter rolls within 90 days of a federal election ("90 Day Period"). E.O. 35 was issued in early August. Plaintiffs delayed for more than 60 days—mere weeks away from the election—before filing this suit and seeking "emergency" discovery. Any "emergency" is thus of Plaintiffs' own making, and does not warrant a departure from this Court's normal rules. The requested emergency discovery is also unwarranted because it would be extraordinarily burdensome for Virginia's election officials, at the most critical time for their duties. The Court should not burden Defendants with intrusive and time-consuming discovery during this period, when Defendants must devote

---

[1] Defendants maintain that Defendants Dance and Merricks were not properly served with a summons directed to them in this matter, but they join this Opposition because the Court's order required "Defendants" to respond to the Discovery Motion by this date. ECF No. 49.

their energies to the task of ensuring a safe, secure, and fair election for all Virginians. The motion should be denied.

## **BACKGROUND**

Plaintiffs filed this suit on October 7, 2024, contending that E.O. 35 directed Virginia election officials to violate the NVRA by continuing their procedures to identify and remove noncitizens from Virginia's voter rolls within 90 days of the upcoming November 5 presidential election. E.O. 35 was issued on August 7, 2024. Plaintiffs also allege that a Virginia statute, Va. Code § 24.2-427, enacted in 2006 under the administration of Governor Tim Kaine, violates the NVRA by creating a "discriminatory" process for identifying and removing non-citizens from the voter rolls. See 2006 Va. Acts chs. 926, 940 (ch. 926 *available* https://tinyurl.com/ynhv8ap6; ch. 940 *available* https://tinyurl.com/y2usebk2).

On October 7, Plaintiffs also filed an emergency motion seeking broad discovery that they asserted was necessary to support their forthcoming preliminary injunction motion. Pl.'s Mot. 2. The motion seeks ten different categories of discovery, many with multiple subparts. The expedited discovery Plaintiffs seek includes: a list of non-citizen registrations removed from the voter rolls in the two and half years prior to the issuance of E.O. 35; a parallel list of non-citizen registrations that the Virginia Department of Elections (ELECT) has identified since the issuance of E.O. 35; and voter registration applicants denied registration on the basis of non-citizenship. With respect to each of these lists, Plaintiffs seek "individualized voter information" in the form of a "data file" containing specific details concerning each individual, including both current and historical registration information and voting history and status. Pl.'s Mot. at 2–3. Additionally, Plaintiffs want these lists to include full name, residential address, mailing address, date of birth, phone number, voter ID number, any associated state-issued ID numbers, all registration dates, race,

which agency identified the individual as a non-citizen, what led the agency to that determination, and the date on which the agency received relevant information concerning the individual's non-citizen status. *Id*.

Plaintiffs also seek six additional broad categories of documentation, including "any and all" documentation relating to the development and implementation of Virginia's process for identifying and removing noncitizens from the voter rolls. *Id.* at 3–4. And Plaintiffs seek multiple "three-hour depositions pursuant to Fed. R. Civ. P. 30(b)(6) of ELECT; Commissioner Beals; and the Office of the Attorney General." Pl.'s Mot. 4.

On October 15, 2024, Plaintiffs filed a motion for a preliminary injunction, accompanied by approximately two dozen exhibits totaling 317 pages. It includes a declaration from Plaintiffs' retained expert. ECF No. 26-2. It also includes numerous ELECT documents regarding the noncitizen registrant investigation process. *See* ECF Nos. 26-3 (memoranda of understanding between DMV and ELECT and memorandum of agreement between the Department of Homeland Security, U.S. Citizenship and Immigration Services, and ELECT); 26-4 (E.O. 35); 26-5 (ELECT Hopper Processing and Information); 26-7 (Virginia affirmation of citizenship); 26-8 (voter registration cancellation); 26-17 (September 19, 2024 letter from Susan Beals to Governor Youngkin); 26-18 (ELECT Annual List Maintenance Report); 26-19 (ELECT correspondence with Fairfax County Board of Elections). And it cites Commissioner Beals's public testimony to the Privileges and Elections Committee of the House of Delegates on September 4, 2024, in which the Commissioner explained the noncitizen registrant investigation process and answered multiple questions. ECF 26-1 at p. 23–24. Plaintiffs' preliminary injunction motion and brief in support do not identify any issues that the Court cannot properly evaluate without discovery.

Plaintiffs noticed the preliminary injunction motion for a hearing on Thursday, October 24. The Court issued a scheduling order, directing Defendants to file an opposition to the preliminary injunction motion no later than 3 p.m. on Tuesday, October 22.

## LEGAL STANDARD

As Plaintiffs point out, courts in this District have applied two different standards when considering motions to expedite discovery prior to the parties' Rule 26(f) conference, including in connection with a motion for a preliminary injunction or temporary restraining order. Courts applying the "reasonableness" or "good cause" test consider a non-exhaustive list of

> factors such as (1) the procedural posture of the case; (2) whether the discovery at issue is narrowly tailored to obtain information that is probative to the preliminary injunction analysis; (3) whether the requesting party would be irreparably harmed by waiting until after the parties conduct their Rule 26(f) conference; and (4) whether the documents or information sought through discovery will be unavailable in the future or are subject to destruction.

*Kia Motors Am., Inc. v. Greenbrier GMC, Inc.*, No. 2:20-CV-428, 2020 U.S. Dist. LEXIS 252505, at *12 (E.D. Va. Dec. 11, 2020) (cleaned up). "A party seeking expedited discovery bears the burden of establishing good cause." *Mullane v. Almon*, 339 F.R.D. 659, 663 (N.D. Fla. 2021) ("Expedited discovery is not the norm.") (citations omitted).

Courts applying a modified preliminary injunction test look to whether the "Plaintiff has made 'a strong showing of [likelihood of success on the] merits and irreparable harm to Plaintiff in the absence of expedited discovery.'" *Kia Motors*, 2020 U.S. Dist. LEXIS 252505, at *12 (quoting *ForceX, Inc. v. Tech. Fusion, LLC*, No. 4:11-cv-88, 2011 U.S. Dist. LEXIS 69454, at *16 (E.D. Va. June 27, 2011)) (cleaned up). Additionally, "granting court relief outside of the federal rules should be limited to unusual circumstances." *ForceX*, 2011 U.S. Dist. LEXIS 69454, at *15.

## ARGUMENT

Under either test for expedited discovery, Plaintiffs' Discovery Motion fails.

I.   **Plaintiffs' Request for Expedited Discovery Fails Under the "Good Cause" Test.**

Plaintiffs fail to justify expedited discovery under the "good cause" test.  First, the purported need for "emergency" discovery was caused by Plaintiffs' own delay in bringing suit, and there is not sufficient time for the discovery to be considered in resolving the preliminary injunction motion.  Second, the discovery sought is anything but narrowly tailored; nor is it necessary to decide the preliminary injunction motion.  Third, the balance of the equities disfavors expedited discovery—Plaintiffs will not be irreparably harmed by pursuing discovery in the normal course, including because there is no risk of relevant information becoming unavailable, whereas Defendants—and the Commonwealth—will be irreparably harmed if the state officials charged with managing an ongoing election are forced to divert their time and attention during this critical period.

   A.   **Factor One: the posture of this action and the motion foreclose expedited discovery.**

Under the "good cause" test, courts first consider the procedural posture of the action.  *Kia Motors*, 2020 U.S. Dist. LEXIS 252505, at *12.  That posture cuts against expedited discovery. Plaintiffs' own delay both created the purported need for expedition and made it impracticable for any such discovery to be used in deciding the preliminary injunction motion. The motion also violates this Court's local rules.

      1.   **Plaintiffs' delay in bringing suit both created the purported "emergency" and would make it impracticable to consider any such discovery in deciding the preliminary injunction motion.**

The procedural posture here weighs against the requested expedited discovery for multiple reasons. First, the crux of Plaintiffs' argument is that discovery is "urgent" because of the "brief time remaining until the 2024 general election."  Pl.'s Mot. at 8. Yet, any such urgency is of Plaintiffs' own making due to their decision to wait to file this action until October 7, 2024.  The

core of the First Amended Complaint is a claim that Defendants' actions pursuant to E.O. 35 violated the NVRA's 90 Day Period. But that executive order was issued on August 7, 2024; Plaintiffs inexplicably waited two months before bringing suit.  By the time Plaintiffs filed their initial complaint on October 7, more than two-thirds of the 90 Day Period had already passed, and less than 30 days remained until Election Day.  And Plaintiffs could have brought their broader claim that Va. Code § 24.2-427 violates the NVRA *years* ago; that section, which establishes the noncitizen registrant investigation process that Plaintiffs now challenge, has been in place since 2006.  See Background, *supra*.  In short, Plaintiffs' own delay created the purported need for "emergency" discovery.[2]  Such a posture does not warrant a departure from the norm.

At the same time, the delay also undercuts Plaintiffs' purported basis for needing "emergency" discovery, because it would be impracticable to conduct such discovery in time to consider it in resolving the preliminary injunction motion.  The preliminary injunction hearing is scheduled less than a week from today, on October 24.  Plaintiffs contend that a preliminary injunction is necessary prior to the upcoming election, which will occur in less than three weeks, on November 5.  Plaintiffs offer no explanation of how the voluminous discovery they request— including multiple depositions—could possibly be completed before that time. See Background, *supra*.  Moreover, there is insufficient time for Plaintiffs to raise supplemental arguments based on any such discovery, or for Defendants to respond to any such arguments.  Due to Plaintiffs' delay, conducting discovery to use in resolving the preliminary injunction motion would be unworkable.

---

[2] Even after filing, Plaintiffs continued their dilatory tactics. Plaintiffs waited three days from filing to serve a single Defendant—Commissioner Beals—and failed to serve a copy of their previously filed emergency motion. See ECF No. 16.  Not until October 17—10 days after filing— did Plaintiffs serve any other Defendant.

In addition, it is plain that the requested discovery is not needed for the Court to evaluate Plaintiffs' arguments for a preliminary injunction. In their brief supporting that motion, Plaintiffs do not identify a single piece of discovery that is necessary before the Court can evaluate it. Thus, that motion cannot serve as the basis for expedited discovery. And Plaintiffs identify no other basis for it. Expedited discovery should therefore be denied.

Second, emergency discovery is particularly inappropriate due to Defendants' sovereign immunity. Defendants have not yet had an opportunity to move to dismiss, but intend to do so, among other grounds, based on their sovereign immunity. The NVRA does not abrogate state sovereign immunity. *Krieger v. Loudon Cnty.*, 2014 U.S. Dist. LEXIS 138293, at *3 (W.D. Va. Sept. 30, 2014), aff'd sub nom. *Krieger v. Virginia*, 599 F. App'x 112 (4th Cir. 2015) ("[T]he National Voter Registration Act [does not] contain the requisite language abrogating the state's 11th Amendment sovereign immunity."); *Judicial Watch, Inc. v. Griswold*, 554 F. Supp. 3d 1091, 1099–100 (D. Colo. 2021) (collecting cases) (holding "[t]he NVRA's general authorization to bring suit in federal court, 52 U.S.C. § 20510(b)(2), is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment."). While Plaintiffs invoke *Ex parte Young*, they fail to meet the requirements of that doctrine. For instance, Plaintiffs named as a Defendant the Attorney General, and seek to conduct depositions of his Office. Yet Plaintiffs fail to show the required "special relation" between the Attorney General "and the challenged statute." *McBurney v. Cuccinelli*, 616 F.3d 393, 399, 402 (4th Cir. 2010). The Attorney General does not maintain Virginia's voter rolls; Plaintiffs point only to his "general authority to enforce the laws of the state" that the Fourth Circuit has repeatedly admonished "is an insufficient ground for abrogating Eleventh Amendment immunity." *McBurney*, 616 F.3d at 400 (citing *S.C. Wildlife*

*Fed'n v. Limehouse*, 549 F.3d 324, 332–33 (4th Cir. 2008)); *see also Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001).

Sovereign immunity "'confer[s] immunity from suit' and is not 'merely a defense to liability.'" *Glob. Innovative Concepts, LLC v. Div. of Emergency Mgmt.*, 105 F.4th 139, 144 (4th Cir. 2024) (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993)). Thus, "[t]o subject a defendant that is immune from suit to discovery would be unwarranted." *Rhea v. Virginia Dep't of Corr.*, No. 1:02-CV-147, 2002 U.S. Dist. LEXIS 20199, at *5 (W.D. Va. Oct. 23, 2002). Indeed, it would violate the "very object and purpose of" state sovereign immunity, which is "to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 146. As a result, courts "rule on . . . sovereign [] immunity issues *prior to allowing any discovery*." *Lescs v. Martinsburg Police Dep't*, 138 F. Appx. 562, 564 (4th Cir. 2005) (emphasis added); *see also Brillhart v. Donaldson*, No. 5:07-CT-3142-D, 2008 U.S. Dist. LEXIS 124128, at *9 (E.D.N.C. Aug. 21, 2008) (holding that where a sovereign "raise[d] the defense of sovereign immunity" it was "entitled to resolution of the issue before being subject to the burdens of litigation, including discovery"). This factor weighs strongly against Plaintiffs' requested emergency expedited discovery, before Defendants have an opportunity to litigate the sovereign immunity issues in their forthcoming motion to dismiss.

Third, Plaintiffs' discovery motion should be rejected because Plaintiffs did not comply with this Court's Local Rules. Pursuant to Local Rule 37(E), "[n]o motion concerning discovery matters *may be filed until* counsel shall have conferred in person or by telephone to explore with opposing counsel the possibility of resolving the discovery matters in controversy." (emphasis added). Plaintiffs did not confer with opposing counsel prior to filing the present motion. The

motion can be denied for that reason alone: "The Court *will not consider* any motion concerning discovery matters *unless the motion is accompanied* by a statement of counsel that a good faith effort has been made between counsel to resolve the discovery matters at issue." Local Rule 37(E) (emphasis added); see also *Attkisson v. Holder*, 113 F. Supp. 3d 156, 161 n.3 (D.D.C. 2015) (denying motion for expedited discovery and holding that "failure to comply with [an analogous local rule] provide[d] an independent basis for denial of the motion").

The present posture of the case thus warrants denying the discovery motion.

### B. Factor Two: Far from being narrowly tailored, the discovery sought by Plaintiffs is overbroad, burdensome, irrelevant, and improper.

Plaintiffs also do not satisfy the second factor of the good cause test. "[C]ourts are unlikely to find good cause for expedited discovery when the movant seeks broad or unlimited discovery." *Mullane*, 339 F.R.D. at 664. Rather, as Plaintiffs concede, the requested discovery must be "narrowly tailored" and "probative to the preliminary injunction analysis." *Kia Motors*, 2020 U.S. Dist. LEXIS 252505, at *12; Pl.'s Mot. 10. The requested discovery here does not meet that standard.

Far from seeking narrowly tailored discovery, Plaintiffs' requested "emergency" discovery is extraordinarily broad and wide-ranging, akin to requests that a party "might anticipate under whole case discovery." *Clean Juice Franchising, LLC v. Charleston Juicing, LLC*, No. 3:23-CV-00894, 2024 U.S. Dist. LEXIS 58711, at *5 (W.D.N.C. Mar. 29, 2024); see Background, *supra*. This breadth weighs heavily against a finding that expedited discovery is warranted. See *Clean Juice Franchising*, 2024 U.S. Dist. LEXIS 58711, at *5; *Avaya, Inc. v. Acumen Telecom Corp.*, No. 10-cv-03075, 2011 U.S. Dist. LEXIS 1635, at *5-6 (D. Colo. Jan. 3, 2011) (denying expedited discovery where "the requested discovery is not limited or narrowly tailored, but is sweeping in its scope. It seeks essentially all discovery which may be allowed during ordinary discovery on

the merits of the plaintiff's claims."); *Mullane*, 339 F.R.D. at 664 (denying expedited discovery because "Plaintiff has placed no limitation on the discovery he seeks and has not proposed a set of narrowly tailored discovery requests. Thus, it appears Plaintiff seeks broad expedited discovery from Defendants completely unlimited in scope.").

Among other things, Plaintiffs request multiple three-hour Rule 30(b)(6) depositions of ELECT and the Office of the Attorney General on unspecified topics. Plaintiffs do not appear to appreciate the burden of selecting and preparing proper designees for a Rule 30(b)(6) deposition— particularly within an extraordinarily tight timeframe and when Defendants and the Department of Elections can ill afford to divert their attention from running an ongoing election and preparing for Election Day. The request for multiple highly expedited depositions would necessarily leave Defendants' counsel and the deponents with an inadequate amount of time to prepare. *Socal Dab Tools, Ltd. v. Venture Techs., Ltd.*, No. 2:22-cv-128, 2022 U.S. Dist. LEXIS 242686, at *8 (M.D. Ala. Apr. 25, 2022) ("Defendant would have minimal time to collect and review the information and prepare a representative on the expansive topics requested by Plaintiffs. . . . this factor weighs against expediting discovery."); *Chryso*, 2015 U.S. Dist. LEXIS 182856, at *15 ("Although Chryso assures the court that [t]he scope of the depositions will be narrowly tailored to obtain information relevant to the preliminary injunction hearing[,] the overbroad nature of its discovery requests undermines the court's confidence in Chryso's ability to deliver on this promise.") (internal quotation marks omitted).

In addition, the proposed individual deposition of Commissioner Beals that Plaintiffs seek is particularly inappropriate because "[n]early all courts require that a party demonstrate exceptional circumstances justifying the deposition of a high-ranking government official." *In re Office of the Utah AG*, 56 F.4th 1254, 1263 (10th Cir. 2022). That requires the proponent of such

a deposition to establish that "the deposition is essential to the party's case" and that "the information cannot be obtained from an alternative source or via less burdensome means." *Id*. at 1264; *Blankenship v. Fox News Network, LLC*, No. 2:19-cv-00236, 2020 U.S. Dist. LEXIS 229650, at *19–20 (S.D. W. Va. Dec. 8, 2020) (same & collecting cases). Moreover, "[i]t is well established that high-ranking government officials may not be deposed or called to testify about their reasons for taking official actions absent 'extraordinary circumstances.'" *In re McCarthy*, 636 F. App'x 142, 143 (4th Cir. 2015) (citations omitted). Commissioner Beals is a "high-ranking" official as the "head [of] the Department of Elections" appointed by the Governor and confirmed by the General Assembly. Va. Code § 24.2-102(B). And Plaintiffs have not even attempted to demonstrate exceptional circumstances warranting her deposition. The request is especially burdensome and unwarranted given that Commissioner Beals, along with other ELECT officials, are at the most critical period for their duties of ensuring that the upcoming presidential election is safe, secure, and fair for all Virginians.

The document discovery Plaintiffs seek is also extremely broad and burdensome. The requested documents span nine different categories, and include requests for "individualized voter information" in a detailed "data file" for each individual identified in their first three document requests. Pl.'s Mot. 2 & n.1; *id.* at 2–3. For the first document request alone, that means thousands of "data files" corresponding to the relevant individuals. Contrary to Plaintiffs' unfounded assumptions, the detailed information in the "data files" they request is not maintained in ELECT's ordinary course of business and would require specialized technical staff to potentially retrieve any responsive information. In addition, because Virginia's Constitution requires registrants to provide their full Social Security Number in their voter registration application, see Va. Const. Art.

II, § 2, Defendants would also face a burdensome process of carefully reviewing every document and applying redactions to ensure all individuals' confidential personal information is protected.

Several of Plaintiffs' other document requests (five through nine) are drafted in the broadest possible terms, requesting "*any and all* memoranda, policies, reports, data, summaries, correspondence, or similar documents" (or a functionally equivalent formulation) relating to the subject matter of the particular request. Pl.'s Mot. at 3–4 (emphasis added). Courts have rejected such requests as overbroad in the expedited discovery context. *Chryso*, 2015 U.S. Dist. LEXIS 182856, at *13-15 (rejecting expedited discovery requests seeking "all documents and information" and "all communications" regarding the subject matter and collecting cases); *Kia Motors*, 2020 U.S. Dist. LEXIS 252505, at *14 (critiquing movant's characterization of requests seeking "all communications" as narrow). This Court should similarly reject Plaintiffs' requests as overbroad and unduly burdensome.

Plaintiffs' document requests are also not necessary to the preliminary injunction analysis, Plaintiffs' purported basis for requiring expedition. Again, Plaintiffs have already briefed the preliminary injunction motion, attaching voluminous exhibits. Though Plaintiffs assert, without explaining why, that the expedited discovery they request is "necessary for rigorous evaluation of the likelihood of success on the merits and public interest in enjoining,'" defendants, Pl.'s Mot. 2, Plaintiffs' preliminary injunction papers do not identify any areas that they contend the Court requires further discovery to evaluate. Rather, Plaintiffs' motion suggests that they are seeking highly detailed and personally identifiable information not to litigate the preliminary injunction, but to aid in Plaintiffs' alleged outreach efforts. *Id.* at 3. Expedited discovery is not a tool for obtaining a mailing list. And based on their own declarations, Plaintiffs apparently already have much of the information sought. See Porte Decl., ECF No. 26-24 ¶ 32 (claiming the League of

Women Voters has mailed "6,440 postcards to registered voters purged from the voter list prior to May 2024.").

The discovery Plaintiffs seek is far from narrowly tailored. To the contrary, it is broad and burdensome, and clearly unrealistic in the incredibly compressed timeframe that Plaintiffs have created. This factor weighs heavily against granting expedited discovery.

### C. Factors Three and Four: The balance of the equities favors Defendants.

Factors three and four under the "good cause" test are "(3) whether the requesting party would be irreparably harmed by waiting [to conduct discovery] until after the parties conduct their Rule 26(f) conference and (4) whether the documents or information sought through discovery will be unavailable in the future or are subject to destruction." *Kia Motors*, 2020 U.S. Dist. LEXIS 252505, at *12 (punctuation omitted). These factors, which balance the equities between the parties, again strongly favor Defendants.

Plaintiffs' claims concerning irreparable harm are specious. Their argument is untethered to the issue in this Motion: the question is whether Plaintiffs would suffer irreparable harm *if they had to wait to conduct discovery in the normal course*. *Id.*; *Chryso*, 2015 U.S. Dist. LEXIS 182856, at *8 (describing factor as "whether the requesting party would be irreparably harmed by waiting until after the parties conduct their Rule 26(f) conference"); Pl.'s Mot. at 11, 13 (alleging Plaintiffs are harmed by the challenged conduct, not the absence of expedited discovery). They cannot make that showing, especially because their preliminary injunction motion does not identify a single piece of discovery they believe is necessary for the Court to evaluate that motion.

Plaintiffs rely on conclusory statements that the "expedited discovery . . . will support the efficient development of the evidentiary record and aid the Court's adjudication of a forthcoming motion for preliminary injunction." Mot. at 1. But they fail to give any concrete information

regarding *what* facts are needed for the preliminary injunction and *why*, so their conclusory assertions are insufficient. *Avaya*, 2011 U.S. Dist. LEXIS 1635, at *6–7 (denying expedited discovery where movant offered conclusory allegations that were "absent . . . [of] any factual showing of a real need for expedited discovery"). Plaintiffs also assert that "[o]nly Defendants, not Plaintiffs or the Court, possess information as to the full contours of the" noncitizen registrant investigation process, Pl.'s Mot. at 8, but their filing already has voluminous exhibits, including numerous documents and references to hearing testimony from ELECT. See Background, *supra*. Plaintiffs thus fail to show that they would be irreparably harmed without expedited discovery.

Further, to the extent that responsive documents and information exist, they will be available in the ordinary course of discovery and are under no risk of destruction. Plaintiffs do not even attempt to argue that expedited discovery is necessary due to preservation concerns. *E.g.*, *Chryso*, 2015 U.S. Dist. LEXIS 182856, at *6-7 ("[D]ue to the evidence that certain electronically stored information pertinent to this case may have been modified or destroyed, it is appropriate for Chryso to conduct limited discovery to ensure that this information is properly preserved.").

Balanced against the lack of any risk of irreparable harm to Plaintiffs, there is a severe risk that the requested expedited discovery would harm Defendants. Plaintiffs seek burdensome, wide-ranging discovery that would consume the time of Virginia's election officials mere weeks before the presidential election; producing such discovery would prevent the officials from devoting their full attention to the Election as the citizens of this Commonwealth deserve. In the days leading up to Election Day with voting already underway, Defendants are extraordinarily busy ensuring that Virginia's election is safe, secure, and fair. Any hours diverted from those efforts can never be recovered. This Court should not reward Plaintiffs' dilatory tactics by forcing Defendants to scramble to respond to Plaintiffs' burdensome discovery at a time that they can ill afford to do so.

As with the other factors, the balance of the equities favors Defendants.  The Discovery

Motion should be denied under the "Good Cause" test.

## II.     Plaintiffs' Request for Expedited Discovery Fails Under the Modified Preliminary Injunction Test.

Plaintiffs also cannot satisfy the modified preliminary injunction test for obtaining

expedited discovery because they are neither likely to succeed on the merits, nor will they be

irreparably harmed in the absence of expedited discovery.

Plaintiffs' proposed methodology for applying the modified preliminary injunction test is

inaccurate.  Relying on *Malon v. Franklin Financial Corp.*, Plaintiffs contend that the modified

preliminary injunction test "requires a plaintiff to show only that it 'has made a sufficiently

colorable claim' under its cause of action 'to justify limited expedited discovery.'"  Pl.'s Mot. at 7

(quoting *Malon v. Franklin Fin. Corp.*, No. 3:14cv671, 2014 U.S. Dist. LEXIS 157304, at *7 (E.D.

Va. Nov. 6, 2014)).  Not so.  Courts in this District applying the modified preliminary injunction

test have assessed whether plaintiffs are *likely to succeed* on the merits.  *ForceX*, 2011 U.S. Dist.

LEXIS, at *15-20 (looking to whether the plaintiff makes a "strong showing of success on the

merits" under the modified preliminary injunction test); *Willis Towers Watson Se., Inc. v. Alliant

Ins. Servs., Inc.*, 2023 U.S. Dist. LEXIS 233032, at *4–5 (E.D. Va. Nov. 21, 2023) ("In applying

the modified preliminary injunction standard . . . this Court has already determined that Plaintiffs

have demonstrated a likelihood of success on the merits."); *Kia Motors*, 2020 U.S. Dist. LEXIS

252505, at *12 (cleaned up) ("The preliminary injunction test looks to whether the Plaintiff has

made a strong showing of merits.").  Moreover, even Plaintiffs' own citation reveals that "a

showing of irreparable harm" is also required.  2014 U.S. Dist. LEXIS at *6–7 ("Therefore, having

already determined that Plaintiff has made a showing of irreparable harm, the Court finds that

limited expedited discovery is appropriate.").

If this Court applies the modified preliminary injunction test, it should require the same—irreparable harm absent expedited discovery and a likelihood of success on the merits. Plaintiffs cannot meet that standard.

First, Plaintiffs cannot establish a likelihood of success because their First Amended Complaint is both jurisdictionally barred and fails on the merits. To deviate from the norm and obtain expedited discovery, Plaintiffs have the "burden" of establishing a likelihood of success on the merits. *Willis Towers Watson Se., Inc. v. Alliant Ins. Servs., Inc.*, 2023 U.S. Dist. LEXIS 233032, at *3–4 (E.D. Va. Nov. 21, 2023). They have not done so. Indeed, on this point the Discovery Motion offers a lone paragraph that simply lists Plaintiffs' claims and conclusorily asserts that they will succeed devoid of any substantive analysis. Pl.'s Mot. at 12. That is insufficient to carry their burden.

Nor could Plaintiffs establish a likelihood of success. First, Plaintiffs—all of whom are organizations, not individual citizens—lack standing to bring this action. They focus on their claim that they have "divert[ed] their resources" in response to Virginia's law, Pl.'s Mot. at 13, but an organization's choice to shift its resources in response to government action is not a legally cognizable injury. See *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) ("[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way."). Plaintiffs also lack standing to bring their claims on behalf of their members, because they have not identified any individual member of any of their organizations who they allege was erroneously removed from Virginia's voter rolls through the challenged process—or even who was required to

respond to a notice to affirm his citizenship. For the same reasons, Plaintiffs fail to show irreparable harm—particularly given that Virginia law allows for same-day registration of voters.

With respect to the merits, Plaintiffs' claims are based upon an erroneous interpretation of the NVRA and their mischaracterization of Virginia law. NVRA's 90 day period does not apply to the removal of noncitizens from the voter rolls, and in any event Virginia's noncitizen registrant investigation process is not a "systematic" program within the meaning of the NVRA's 90 day provision because it is based on an individualized inquiry as to each registrant. The process is also not "discriminatory"; contrary to Plaintiffs' contentions, registrants are not sent notices based on outdated documents that they previously submitted to DMV. Rather, the notices are based on new information such as the registrants' own recent affirmations to DMV that they are not citizens. These and other flaws in Plaintiffs' claims will be set forth in detail in Defendants' forthcoming opposition to Plaintiffs' preliminary injunction motion, which the Court has directed Defendants to file by "3:00 p.m. on Tuesday, October 22." ECF No. 62.

Plaintiffs' requested preliminary injunction—which would require Virginia to re-add thousands of noncitizens to its voter rolls very shortly before the election—also runs afoul of the well-established *Purcell* principle that federal courts should not alter state election laws in the period close to an election. See *Purcell v. Gonzalez*, 549 U.S. 1 (2006); see also, *e.g.*, *Democratic Nat'l Comm. v. Wisconsin State Legis.*, 141 S. Ct. 28, 30 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay); *Wise v. Circosta*, 978 F.3d 93, 103 (4th Cir. 2020) ("*Purcell* [] tilts against federal court intervention at this late stage"). Given the combination of the flaws in Plaintiffs' legal theory and these jurisdictional bars, Plaintiffs have plainly not met their burden to obtain expedited discovered based on a likelihood of success on the merits.

Plaintiffs also cannot meet the second prong of the modified preliminary injunction test, that the lack of expedited discovery will cause them irreparable harm. This factor addresses the same issue as factor three under the "good cause" test: whether plaintiffs can show that they will suffer irreparable harm in the *absence of expedited discovery*. *Kia Motors*, 2020 U.S. Dist. LEXIS 252505, at *12–13 (third factor of good cause test looks to "whether the requesting party would be irreparably harmed by waiting [to conduct discovery] until after the parties conduct their Rule 26(f) conference" while second prong of preliminary injunction test looks to whether there is "irreparable harm to Plaintiff in the absence of expedited discovery"); see also *Avaya, Inc.*, 2011 U.S. Dist. LEXIS 1635, at *5 ("Expedited discovery should be limited, however, and narrowly tailored to seek information necessary *to support expedited or preliminary relief*.") (emphasis added). For the same reasons discussed above, Plaintiffs cannot meet this factor. See Part I, *supra*.

Perhaps most salient, due to Plaintiffs' dilatory conduct, there simply is not time for the discovery Plaintiffs seek while simultaneously litigating the preliminary injunction: a hearing has been set on this Discovery Motion for next Monday (10/21), with the preliminary injunction hearing scheduled for next Thursday (10/24). There is clearly insufficient time to complete discovery—much less for both parties to submit supplemental briefing based on the discovery—before resolution of Plaintiffs' preliminary injunction motion. And it would severely prejudice Defendants to allow Plaintiffs to change their preliminary injunction arguments on essentially no notice.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny the Discovery Motion.

**RESPECTFULLY SUBMITTED,**

**SUSAN BEALS**, in her official capacity as Virginia Commissioner of Elections; **JOHN O'BANNON**, in his official capacity as Chairman of the State Board of Elections; **ROSALYN R. DANCE**, in her official capacity as Vice-Chairman of the State Board of Elections; **GEORGIA ALVIS-LONG**, in her official capacity as Secretary of the State Board of Elections; **DONALD W. MERRICKS** and **MATTHEW WEINSTEIN**, in their official capacities as members of the State Board of Elections; and **JASON MIYARES**, in his official capacity as Virginia Attorney General

By: _____ */s/ Thomas J. Sanford* _____

Jason S. Miyares
  *Attorney General of Virginia*

Steven G. Popps
  *Chief Deputy Attorney General*

Thomas J. Sanford (VSB No. 95965)*
  *Deputy Attorney General*

Stanley W. Hammer (VSB No. 82181)*
  *Assistant Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
Telephone: (804) 692-0551
Facsimile: (804) 371-2087
TSanford@oag.state.va.us
SHammer@oag.state.va.us

*Counsel of Record for Defendants*

## CERTIFICATE

I hereby certify that on October 18, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

/s/ Thomas J. Sanford
Counsel for Defendants