**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| VIRGINIA COALITION FOR IMMIGRANT RIGHTS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> SUSAN BEALS *in her official capacity as Virginia Commissioner of Elections, et al.*, <br><br> *Defendants*. | Case No. 1:24-cv-1778 (PTG/WBP) |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> COMMONWEALTH OF VIRGINIA, *et al.*, <br><br> *Defendants*. | Case No. 1:24-cv-1807 (PTG/WBP) |

**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER DIVISION**

# INTRODUCTION

The United States respectfully submits this brief in response to Defendants' Motion to Transfer Division pursuant to Eastern District of Virginia Local Rule 3(C) and 28 U.S.C. § 1404(a).  *See* Defs.' Mot. to Transfer Division, *United States v. Virginia*, No. 1:24-cv-01807, ECF No. 11.  These rules authorize this Court to transfer cases between Divisions where "convenience and fairness" warrant.  *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 867 (E.D. Va. 2013) (citation omitted).  But transfer, in this case, would compound the harms this litigation seeks to remediate.

Defendants argue that the Alexandria Division is not the United States' home forum and maintains a lesser connection to this suit than Richmond.  But given the necessarily abbreviated timeline for 90-Day Quiet Period litigation, and the imminence of the November 5, 2024, federal general election—just 16 days from the filing of this pleading—the interests of justice and convenience for all parties strongly favor denial of the motion to transfer.  Alexandria is a sufficiently convenient forum for all parties and, perhaps more importantly here, transfer will further harm voters and the United States by delaying necessary relief for the Commonwealth's unlawful voter removal program.  That program—carried out within 90 days of a federal election—has already resulted in the removal of United States citizens from Virgina's rolls.  An immediate remedy for those unlawful removals is vital to preserve the fundamental right to vote.  Transferring this case would simply compound the irreparable harm of potential disenfranchisement by imposing unwarranted delay.  *See* United States Prelim. Inj. Br., 8-9, *United States v. Virginia*, No. 1:24-cv-01807, ECF No. 9-1 (PI Br.).

Local Rule 3(C) and 28 U.S.C. § 1404(a) weigh heavily in favor of keeping this case in Alexandria.  Defendants' Motion to Transfer Division, ECF No. 11, must be denied.

## BACKGROUND

On August 7, 2024, 90 days before the November 5, 2024, federal General Election, Virginia's Governor issued Executive Order 35, formalizing the Commonwealth's systematic voter registration removal program aimed at purported noncitizens and requiring that program to be carried out each day (the Program). *See* PI Br. at 4, (*citing* Exec. Order No. 35 at 5, ECF No. 9-3). The Executive Order formalized the Program and announced that 6,303 individuals had been removed from the rolls pursuant to the same process between January 2022 and July 2024. *Id.* The Program has continued operating during the 90-day period before the November 5, 2024, federal general election, and thus violated, Section 8(c)(2), of the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. § 20507(c)(2) (Quiet Period Provision). On October 8, 2024, the United States notified Virginia officials of concerns that the Program may violate the Quiet Period Provision. *See* PI Br. at 9. The United States and Virginia officials conferred on October 10, 2024. *See id*.

The United States filed suit on October 11, 2024, alleging that ongoing implementation of the Program within 90 days of the November 5, 2024, federal general election violated the Quiet Period Provision, 52 U.S.C. § 20507(c)(2). Compl., *United States v. Virginia*, No. 1:24-cv-01807, ECF No. 1. At that time, another lawsuit challenging, among other things, the Defendants' violation of the Quiet Period Provision was already pending. *See* Compl., *Virginia Coalition for Immigrant Rts. et al., v. Susan Beals et al.*, No. 1:24-cv-1778, ECF No. 1 (complaint filed on October 7, 2024). The United States filed a Motion for Preliminary Injunction on October 16, 2024. *See* Mot. for Prelim. Inj., *United States v. Virginia*, No. 1:24-cv-01807, ECF No. 9.

2

On October 17, 2024, Defendants moved to transfer this case to Richmond. *See* Defs.' Mot., ECF No. 11. That same day, the parties jointly waived a hearing on Defendants' transfer motion. *See* Notice, *United States v. Virginia*, No. 1:24-cv-01807, ECF No. 13. On October 18, 2024, this Court ordered the United States to file an opposition to the Defendants' transfer motion by 9:00 a.m. on Monday, October 21, 2024. *See* Ord., *United States v. Virginia*, No. 1:24-cv-01807, ECF No. 14.

## LEGAL STANDARD

Defendants seek transfer pursuant to 28 U.S.C. § 1404(a) and Local Rule 3. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Section 1404(a) "is intended to place *discretion* in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Mullins v. Equifax Info. Servs., LLC*, No. 3:05-cv-888, 2006 WL 1214024, at *5 (E.D. Va. Apr. 28, 2006) (emphasis added) (citing *Stewart Org., Inc. v. Ricoh, Inc.*, 487 U.S. 22, 29 (1988)). The moving party "bears the burden of demonstrating that a transfer of venue is warranted under § 1404(a)." *Id.* That burden is a heavy one: "the moving party must show that the balance of convenience among the parties and witnesses 'is beyond dead center, and strongly favors the transfer sought.'" *Id*. (citing *Medicenters of Am., Inc. v T & V Realty & Equip. Corp.*, 371 F. Supp. 1180, 1184 (E.D. Va. 1974)).

This Court applies a four-factor test to determine whether to transfer a case pursuant to 28 U.S.C. § 1404(a): "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and[,] (4) the interest of justice." *Hunter*

3

*v. Dep't of the Army*, No. 3:17-cv-257, 2017 WL 11489269, at *3 (E.D. Va. Nov. 2, 2017) (citing *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs. Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). "[T]he balance of convenience among the parties and witnesses [must weigh] *strongly* in favor of the forum to which transfer is sought." *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 868 (E.D. Va. 2013) (citing *Nationwide Mut. Ins v. Overlook, LLC*, No. 4:10-cv-00069, 2010 WL 2520973, at *3 (E.D. Va. June 17, 2010) (emphasis in original)); *see also Soundexchange, Inc. v. Sirius Xm Radio, Inc.*, No. 1:23-CV-1083, 2024 WL 3416263, at *3 (E.D. Va. July 15, 2024). But "the interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction." *Mullins*, No. 3:05-cv-888, 2006 WL 1214024, at *5 (citing 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed.)).

## ARGUMENT

### A. The Factors Considered in Allowing Transfer of Venue Establish That Transfer is Inappropriate

Defendants fail to carry the heaven burden imposed by § 1404(a). All the factors, but particularly the interest of justice, dictate that the litigation should remain in the Alexandria Division to prevent further irreparable harm to voters and prejudice to the United States by Virginia's ongoing violation of federal law.

#### 1. The United States' Choice of Venue is Afforded Great Weight

Defendants contend that the United States' choice of the Alexandria Division "deserves no deference." Defs.' Br., 3, *United States v. Virginia*, No. 1:24-cv-01807, ECF 12 (Defs.' Br.). They are incorrect. "The initial choice of forum … is a privilege given to the plaintiff … and that choice is entitled to substantial weight." *Nationwide Mut. Ins.*, No. 4:10-cv-00069, 2010 WL 2520973, at *8 (E.D. Va. June 17, 2010) (quoting *Reynolds Foil Inc. v. Pai*, No. 3:09CV657,

4

2010 WL 1225620, at *8 (E.D. Va. Mar. 25, 2010). Accordingly, "[t]here is a strong presumption in favor of maintaining jurisdiction in [Plaintiff's choice of forum], and that presumption will be overcome only if the other factors involved in the analysis *considerably outweigh* [Plaintiff's] right to choose the forum of its lawsuit and clearly favor transferring the trial elsewhere." *Id.* (emphasis in original); *see also Va. Innovation Scis., Inc.*, 928 F. Supp. 2 at 868 ("Generally, the first factor—a plaintiff's choice of venue—is given substantial weight as '[i]t is well settled that a court should rarely disturb a plaintiff's choice of forum unless the balance of hardships clearly favor transfer.'" (quoting *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 623-24 (E.D. Va. 2002))).

Even if the United States' choice of forum was accorded less weight, Defendants must "demonstrate that the balance of factors *strongly favors* transfer" otherwise "Plaintiff's choice of forum should be respected." *Mullins v. Equifax Info. Servs., LLC*, No. 3:05-CV-888, 2006 WL 1214024, at *6 (E.D. Va. Apr. 28, 2006) (emphasis added). They have not done so. The United States has already shown that U.S. citizen voters have been removed from the voter rolls in both Loudoun and Prince William Counties. *See* PI Br. at 8 (presenting data affirming that registrars are aware of U.S. citizens likely being removed in both Loudoun and Prince Williams Counties). Loudoun and Prince William Counties both fall within the Alexandria Division. In fact, the Alexandria Division likely has more registered voters living within the division than does the Richmond Division, increasing the likelihood that affected U.S. citizens will be in the United States' chosen forum.[1] Undoubtedly, plaintiffs have "raise[d] causes of action that bear a strong

---

[1] Registrant Counts by Locality, Virginia Department of Elections (last visited 10/19/2024), https://www.elections.virginia.gov/resultsreports/registration-statistics/2024-registration-statistics/.

5

relation to this forum[,]" justifying deference. *Soundexchange, Inc.*, 2024 WL 3416263, at *3. The United States' decision to file suit in Alexandria deserves appropriate deference as the Alexandria Division is home to both the United States and many of the operative events and affected voters at the heart of this case.

### 2. Defendants Have Not Met Their Burden to Demonstrate That Witness Convenience Favors Richmond

The second factor, witness convenience and access, favors the United States. "The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Mullins*, No. 3:05-cv-888, 2006 WL 1214024, at *7 (citing *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2006)). This court has repeatedly held that "[t]he movant must provide 'particularized information usually in affidavit form 'to enable the court to ascertain how much weight to give a claim of inconvenience.'"" *Zurawski v. Off. Of the Att'y Gen.-Commonwealth of Va.*, No. 1:20-cv-00708, 2020 WL 13892584, at *5 (E.D. Va. Oct. 20, 2020) (quoting JTH *Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 737 (E.D. Va. 2007); *see also Bd. of Trustees v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1258 (E.D. Va. 1988).

Defendants failed to produce, by affidavit or otherwise, any statement about a specific witness indicating any degree of inconvenience. Instead, they summarily argue that witnesses will "plainly be in Richmond." Defs.' Br. at 4-5. But they offer no specificity as to numbers or potential inconvenience. The United States, on the other hand, may call witnesses from Loudoun, Fairfax, or Prince William Counties, including affected voters and local registrars.

6

Defendants failure to provide particularized information for the Court's review favors the United States.

### 3. Alexandria Remains the Most Convenient Division for the Parties

The third factor to consider is the convenience to the parties. When weighing party convenience, "'[t]he logical starting point is a consideration of the residence of the parties.'" *Mullins*, No. 3:05-cv-888, 2006 WL 1214024, at *6 (citing *U.S. Fidelity & Guaranty Corp. v. Republic Drug Co., Inc.*, 800 F. Supp. 1076, 1080 (E.D.N.Y.1992)). But "residence is not a controlling factor [under Section 1404(a)] if the convenience of witnesses and the interest of justice point strongly in a contrary direction." *Id.* (citing 15 Fed. Prac. & Proc. Juris. § 3849 (4th ed.)). Furthermore, as the moving parties, "Defendants must demonstrate that the [Alexandria Division] is 'an inconvenient forum in which to litigate, not simply that the [Richmond Division] would be more convenient.'" *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 870-71 (E.D. Va. 2013).

Defendants once again fail to bear their burden. They make much of the fact that Richmond is the seat of the Commonwealth's government, Virginia's election officials, and Defendant Commissioner Susan Beals. But that is hardly decisive. In fact, these Defendants have litigated in the Alexandria Division before, apparently without undue inconvenience. *See e.g.*, *Curtin v. Virginia State Board of Elections*, 463 F. Supp. 3d 653 (E.D. Va. 2020) (both State Board of Elections and Commissioner of Elections litigating in the Alexandria Division); *Lecky v. Virginia State Bd. of Elections*, 285 F. Supp. 3d 908 (E.D. Va. 2018) (both State Board of Elections and Commissioner of Elections litigating in the Alexandria Division); *Libertarian Party of Virginia v. Virginia State Bd. of Elections*, No. 1:10-cv-615, 2010 WL 3732012 (E.D. Va. Sept. 16, 2010) (State Board of Elections litigating in the Alexandria Division). And not

7

only has the Board of Elections litigated in Alexandria, Defendants cite no order from this Court granting a motion to transfer an election case from Alexandria to Richmond. This factor, too, favors the United States.

### 4. Interests of Justice Strongly Favor Litigation Remaining in Alexandria

In evaluating a motion to transfer under, 28 U.S.C. § 1404, "[t]he district court also must weigh in the balance . . . those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of the interest of justice." *Brock v. Entre Computer Centers, Inc.*, 933 F.2d 1253, 1258 (4th Cir. 1991) (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1988) (internal quotation marks omitted). Under the circumstances, this factor is decisive here. *See also Mullins*, 2006 WL 1214024, at *5.

This case implicates fundamental rights. The Supreme Court has repeatedly stressed that "[t]he right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). The right to vote is fundamental because it preserves "all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). The stakes here, therefore, could not be higher. And timing could not be tighter. Transferring this case to the Richmond Division will impose needless delay when time is increasingly of the essence. The interests of justice demand that the fundamental issues at stake be resolved as quickly as practicable. Indeed, "[b]y definition, 'the public interest favors permitting as many qualified voters to vote as possible.'" *League of Women Voters of N. Carolina v. N. Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) (quoting *Obama for Am. v. Husted,* 697 F.3d 423, 437 (6th Cir.2012)) (cleaned up). And yet, as detailed in the United States' Preliminary Injunction papers, Virginia continues to remove voters from the rolls, including qualified U.S. citizens. *See* PI Br. at 6. The

8

interests of justice require that Defendants' Quiet Period violations, and their consequent denial of fundamental voting rights, be remedied to the extent possible as quickly as possible. Those interests cannot bear the weight of delay required by a division transfer.

Absent expeditious resolution of this matter, eligible U.S. citizens snared by the Commonwealth's wayward voter removal program will be stripped of their right to vote and have limited opportunities to re-register. That is because Virginia's voter registration deadline has already passed for the November 5, 2024, federal general election[2]. Va. Code § 24.2-416(A). The harm inflicted by the Commonwealth's Quiet Period violations on affected Virgina citizens demands an immediate remedy. The United States itself also suffers injustice by the ongoing violation of federal law. *See New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 366-67 (1989); *see also, e.g.*, *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) ("The United States suffers injury when its valid laws in a domain of federal authority are undermined by impermissible state regulations. Frustration of federal statutes and prerogatives are not in the public interest[.]"); *United States v. Texas*, No. 1:24-cv-8, 2024 WL 861526, at *38-39 (W.D. Tex. Feb. 29, 2024) (collecting cases), *stay denied*, 96 F.4th 797 (5th Cir. 2024).

Defendants' brief ignores the ongoing harms to voters and the United States and instead focuses on "practical matter[s]," like "docket congestion" and "interest in having local controversies decided at home." *See* Defs.' Br. at 12 (citing to *Mullins*, No. 3:05-cv-888, 2006 WL 1214024, at *8 (citing *Carpenter v. Parker Drilling Offshore USA, Inc.*, 2005 WL 1432373,

---

[2] And though Virginia does allow eligible persons to provisionally register in the twenty days preceding Election Day and on Election Day, those registration requests must be made in person at early voting sites (prior to Election Day) or at the person's polling place (on Election Day). *See* Va. Code § 24.2-652(B); PI Br. at 18-19.

9

*1 (E.D. La. June 16, 2005)).  But Defendants concede that this is not a Richmond-based local controversy, *see* Defs.' Br. at 6, and Defendants' conclusory statements that docket congestion favors transfer from Alexandria to Richmond cannot overcome the strong presumption for maintaining Plaintiffs' forum choice.  *Id*.  These factors simply do not favor transfer.  And given this Court's familiarity with the claims, interests, and rights at stake, transfer will likely defeat the needs of judicial economy at this critical point.

The interests of justice require that the Defendants' transfer motion be denied.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Defendants' Motion to Transfer Division.

Date: October 20, 2024

| | |
|---|---|
| KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division | JESSICA D. ABER<br>United States Attorney<br>Eastern District of Virginia |

*/s/ Sejal Jhaveri*  
R. TAMAR HAGLER  
RICHARD A. DELLHEIM  
SEJAL JHAVERI  
KEVIN MUENCH  
BRIAN REMLINGER  
Attorneys, Voting Section  
Civil Rights Division  
U.S. Department of Justice  
950 Pennsylvania Avenue, N.W  
Washington, D.C. 20530  
(202) 305-5451  
Sejal.Jhaveri@usdoj.gov  

*/s/ Steven Gordon*  
STEVEN GORDON  
Assistant United States Attorney  
United States Attorney's Office  
Eastern District of Virginia  
2100 Jamieson Ave.  
Alexandria, VA 22314  
(703) 299-3817  
Steve.Gordon@usdoj.gov  

CHRISTOPHER R. KAVANAUGH  
United States Attorney  
Western District of Virginia  

*/s/ Christopher Kavanaugh*  
United States Attorney  
United States Attorney's Office  
Western District of Virginia  
255 West Main Street  
Charlottesville, VA 22902  
(434) 293-4283  
Christopher.Kavanaugh@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 20, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to counsel of record.

                                            */s/ Sejal Jhaveri*
                                            Sejal Jhaveri
                                            Civil Rights Division
                                            U.S. Department of Justice
                                            950 Pennsylvania Ave, NW
                                            Washington, DC 20530
                                            (202) 305-5451
                                            Sejal.Jhaveri@usdoj.gov

Case 1:24-cv-01778-PTG-WBP   Document 69   Filed 10/20/24   Page 13 of 13 PageID# 736