IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| VIRGINIA COALITION FOR IMMIGRANT RIGHTS, *et al.*, <br><br> *Plaintiffs*, <br> v. <br><br> SUSAN BEALS, in her official capacity as Virginia Commissioner of Elections, *et al.*, <br><br> *Defendants*. | Case No. 1:24-cv-1778 |
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br> v. <br><br> COMMONWEALTH OF VIRGINIA, *et al.*, <br><br> *Defendants*. | Case No. 1:24-cv-1807 |

### DECLARATION OF ASHLEY COLES

I, Ashley Coles, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I currently serve as Senior Policy Analyst and Chief Records Officer at the Virginia Department of Elections (ELECT). I have served in this role since May 28, 2024. I began my employment at ELECT in the role of Policy Analyst on January 25, 2021.

2. In my capacity as Senior Policy Analyst and Chief Records Officer at ELECT, I am familiar with ELECT's policies and practices, its relationships with both the Virginia Department of Motor Vehicles (DMV) and the local general registrars of each jurisdiction in Virginia, as well as the provisions of Virginia law governing Virginia's voter list.

3. Pursuant to Virginia Code § 24.2-410.1, signed into law in 2006 by then-Governor Timothy Kaine, ELECT works with the DMV and general registrars to ensure that noncitizens are not registered to vote.

4. ELECT receives from the DMV data listing information for all persons who declare that they are not citizens of the United States on DMV forms related to eligible transactions.

5. The information that the DMV sends to ELECT for these persons contains extensive data fields for each individual that allow both ELECT and general registrars to accurately compare the individual to the list of registered voters. ELECT's records show that those data fields include, among other things, full name, full social security number, birth date, address, sex, DMV customer number, and transaction date.

6. When ELECT receives this information from the DMV, it electronically compares the information for each self-declared noncitizen with voter information contained in ELECT's statewide voter registration system, the Virginia Election and Registration Information System (VERIS), to identify potential matches with registered voter records.

7. In contrast to ELECT's electronic process for comparing the noncitizen information obtained from the DMV with VERIS records to identify potential matches, general registrars conduct a manual review of each potential match received from ELECT on an individual basis to confirm that the noncitizen and the registered voter identified in VERIS are the same person. If after reviewing the potential match, the registrar determines that the noncitizen and the registered voter identified in VERIS are different people, the registrar can reject the match.

8. If the general registrar determines that the noncitizen and the registered voter are the same person, then the general registrar mails the individual a Notice of Intent to Cancel that individual's voter registration.

9. A Notice of Intent to Cancel explains that the person recently indicated on a DMV form that he may not be a citizen and advises that if the information is incorrect, the person should sign an Affirmation of Citizenship form and return it within 14 days.

10. The general registrar does not cancel the individual's registration to vote upon sending this Notice of Intent to Cancel. Instead, any individuals who receive a Notice of Intent to Cancel will only be removed from the voter rolls if they fail to respond to the registrar's request to correct an error in ELECT's information about their citizenship status within 14 days.

11. By default, however, these cancellations are not effective in VERIS until 21 days have elapsed without receipt of the person's attestation of citizenship, thus allowing a seven-day grace period on top of the two weeks the individual has to respond.

12. If a person does not respond and their voter registration is cancelled through VERIS, the registrar will send an additional notice advising that the person's registration has been cancelled. That notice again advises the person to contact the registrar if the removal was incorrect and provides a phone number to do so.

13. If, despite attesting to the DMV that he is not a citizen and then failing to respond to the general registrar's notice, a removed individual is in fact a U.S. citizen, that person may re-register to vote using the same registration process as any other voter.

14. If there is any person who was removed from the voter rolls pursuant to Virginia Code § 24.2 427(C) after failing to return the attestation of citizenship and who has not re-registered by the close of the ordinary registration period on October 15, but who is in fact an eligible citizen, then that person may same-day register in person at an early voting site during the early voting period or at the appropriate precinct on election day and may immediately vote a provisional ballot.

15. As with all voter registrations, the person must attest to his citizenship under penalty of perjury.

16. There is no requirement to provide documentary proof of citizenship, nor can the prior removal from the rolls due to noncitizenship be held against the individual in any way.

17. ELECT records demonstrate that it has consistently sent information about noncitizens who match VERIS records for registered voters to local general registrars, including during the 90-day period before a primary or general election, since at least 2010.

18. Pursuant to Executive Order 35, on August 19, 2024, ELECT began receiving from the DMV information from the previous day's transactions on a daily basis.

19. In addition, the DMV continued sending de-duplicated monthly files of the same information.

20. ELECT also receives information from the DMV, consistent with Virginia Code § 46.2-328.1(E), when a person who has declared that he is a citizen but has legal presence documentation on file with the DMV indicating that he is not. Legal presence documentation includes permanent resident cards, asylum status documents, employment authorization documents, and refugee travel documents.

21. Such legal presence documentation may be outdated, unlike the contemporaneous information for people who declare noncitizenship on a DMV form relating to an eligible transaction. Accordingly, it is ELECT's general policy not to conduct any comparisons of these names with voter information contained in VERIS unless ELECT has received verification of an individual's current immigration status or naturalized or derived citizenship status through the Department of Homeland Security as provided under Virginia Code § 24.2-404(E) within the last

4

30 days before conducting a comparison. No actions are taken to remove these people from the voter rolls without said verification.

22. Although the DMV information for individuals whose legal presence documentation on file indicates noncitizenship usually does not reach the general registrars, to comply with Virginia Code § 24.2-404(A)(4)(v) ELECT collaborated with the DMV on a one-time, *ad hoc* basis to analyze DMV transactions that occurred between July 1, 2023, and June 30, 2024, in which individuals indicated that they were U.S. citizens but their legal presence documentation on file with the DMV indicated noncitizen status.

23. To individually verify citizenship during this search, the DMV determined each person's current citizenship status through the Department of Homeland Security's Systematic Alien Verification for Entitlements (SAVE) database, which can determine whether a noncitizen has been naturalized.

24. Only persons who had a SAVE verification confirming noncitizen status within the preceding 30 days had their information passed along to the registrars in the *ad hoc* process.

25. ELECT ultimately identified 1,274 potential matches between individuals identified as noncitizens in the SAVE database and registered voter records in VERIS, which ELECT then transmitted to general registrars on August 28, 2024, for each jurisdiction to act upon, as detailed above.

26. Conducting a SAVE verification involves an electronic query inputting an individual's full name, date of birth, and document number that indicates legal presence into the SAVE database.

27. SAVE electronically verifies immigration status or naturalized or derived citizenship and provides a verification response with the applicant's current immigration status or naturalized or derived United States citizenship information.

28. The SAVE verification results will either confirm that the person is a citizen, confirm that the person is not a citizen, or state that additional verification is required.

29. ELECT only sent information to general registrars on individuals with a verification status that affirmatively showed the person is a noncitizen in this *ad hoc* process.

30. ELECT did not take any action, or send any individual's name or information to general registrars, based on information from the DMV pertaining to any individual's legal presence documentation unless the individual's current legal citizenship status had been verified within the last 30 days through the SAVE database.

31. ELECT's individualized approach to SAVE verification means that no person is removed from voter rolls based solely on potentially outdated legal presence records on file with the DMV.

32. Just as with individuals that self-declare noncitizenship, any individuals identified through SAVE verification are provided a Notice of Intent to Cancel and by default afforded a total of 21 days—the standard 14 days plus the 7-day grace period before the cancellation becomes effective in VERIS—to submit an Affirmation of Citizenship form to the general registrar. These individuals are also provided with the additional cancellation notice if they fail to respond to the Notice of Intent to Cancel.

33. ELECT ceased transmitting any information to general registrars regarding potential noncitizens on the voter rolls after October 14, 2024, the day before the statutory deadline to register to vote in the ordinary course.

34. When a same-day registrant votes a provisional ballot, the general registrar researches the individual's eligibility to register and to vote in their jurisdiction.

35. Based on that research, the local electoral board determines whether the provisional ballot should be counted.

36. In determining whether to count such a provisional ballot, neither the general registrar nor the electoral board considers the registrant's prior removal from the rolls due to noncitizenship.

37. The general registrar and the electoral board consider only whether the registrant is an eligible voter in the precinct in which he cast the provisional ballot.

38. If the electoral board determines that the registrant is qualified to vote, the ballot will be counted.

39. A person's prior removal under Virginia Code § 24.2 427(C), or prior declaration or submission of documents to DMV of noncitizen status, is not a reason to reject a provisional ballot, so long as the person attests on the voter registration form under penalty of perjury that the person is a citizen.

40. The period immediately preceding a general election is critical, with ELECT working at full capacity in conjunction with general registrars to ensure that the election is carried out fairly and accurately. To enable an orderly general election, ELECT imposes deadlines on the registration and voting process in the days leading up to the general election.

41. For the November 2024 General Election, those deadlines include the last day to register to vote or update an existing registration on October 15, 2024. By law, see Virginia Code § 24.2-416(A), the registration records are closed 21 days before an election, and ELECT ceases

to transmit voter citizenship information, or any other basis for voter removal other than death, to general registrars at this time.

42. The last day to apply to receive an absentee ballot by mail is on October 25, 2024.

43. Likewise, the period immediately following the general election includes a carefully choreographed series of deadlines to ensure rapid, accurate counting of votes prior to the State Board of Election's certification of the November 2024 General Election results on December 2, 2024. Among these deadlines are the November 8, 2024, deadline for absentee ballots properly returned by mail to be received by general registrars for counting, and ELECT's internal deadline of November 27, 2024, to verify the November 2024 General Election results.

44. Given these deadlines and the importance of clarity in counting votes and ultimately certifying the election results, along with my understanding of ELECT's resources and obligations regarding the November 2024 General Election, I believe that new court-ordered changes to those deadlines or impositions of the new requirements requested by the Plaintiffs in this case may substantially burden ELECT at a time when its limited resources are already wholly allocated to meet existing requirements and deadlines. For instance, a requirement to develop and distribute new guidance to local general registrars on short notice may work a substantial hardship on ELECT, which would have to reallocate already stretched resources to create that guidance and would create a significant risk of confusion and miscommunication at the general registrar level.

45. Similarly, a requirement to alter the voter rolls by reinstating voter registrations outside the same-day registration process, which is already available to all eligible voters who are not currently registered to vote, after the October 15, 2024, deadline for changes to the voting rolls would require substantial ELECT resources that would have to be reallocated from existing election-critical assignments while also increasing the risk that ineligible voters are erroneously

added to the voter list. In addition, a requirement that reinstated individuals be able to request absentee ballots by mail after the October 25, 2024 deadline for requesting them has passed would work a substantial hardship on the local general registrars who send ballots.

46. Finally, a requirement to send a new mailing to a subset of Virginia residents providing new guidance about their ability to participate in the November 2024 General Election—and to share the information included in this mailing through a public website and the press—would substantially burden ELECT by requiring reallocation of resources to develop the mailing and public statements while creating a marked risk of voter confusion when the general election is imminent.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Executed on October 22, 2024

_Ashley Coles_
Ashley Coles
Senior Policy Analyst and Chief Records Officer
Virginia Department of Elections