IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| VIRGINIA COALITION FOR IMMIGRANT RIGHTS; LEAGUE OF WOMEN VOTERS OF VIRGINIA; LEAGUE OF WOMEN VOTERS OF VIRGINIA EDUCATION FUND<br><br>*Plaintiffs*,<br><br>v.<br><br>SUSAN BEALS, in her official capacity as Virginia Commissioner of Elections; JOHN O'BANNON, in his official capacity as Chairman of the State Board of Elections; ROSALYN R. DANCE, in her official capacity as Vice-Chairman of the State Board of Elections; GEORGIA ALVIS-LONG, in her official capacity as Secretary of the State Board of Elections; DONALD W. MERRICKS and MATTHEW WEINSTEIN, in their official capacities as members of the State Board of Elections; and JASON MIYARES, in his official capacity as Virginia Attorney General<br><br>*Defendants*. | Case No. 24-01778-PTG-WBR |

**AMICUS CURIE PUBLIC INTEREST LEGAL FOUNDATION
BRIEF IN SUPPORT OF DEFENDANTS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i
TABLE OF AUTHORITIES ........................................................................................... ii
SUMMARY OF ARGUMENT ........................................................................................1
STATEMENT OF INTEREST .........................................................................................1
ARGUMENT ....................................................................................................................1
    I.     Plaintiffs' Request for a Preliminary Injunction Should be Denied .........................1
    II.    Purposes of the National Voter Registration Act ......................................................5
    III.   Virginia is not Conducting a Systematic Removal ....................................................7
    IV.   Correction of Registrations Allowable Within 90 days of Federal Election ............9
CONCLUSION ................................................................................................................10
CERTIFICATE OF COMPLIANCE ...............................................................................12

# **TABLE OF AUTHORITIES**

*Cases*

*Arcia v Secretary of Florida*, 772 F3d 1335, 1346 (11th Cir 2014.) .......................5, 6, 8, 9, 10

*Husted v A. Philip Randolph Inst.*, 584 US 756, 756 (2018) ......................................................5

*League of Women Voters of N. Carolina v. N. Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) .....2

*Majority Forward v Ben Hill County Bd. of Elections*, 509 F Supp 3d 1348, 1352
(MD Ga 2020) ...............................................................................................................................9

*Maryland Citizens for a Representative General Assembly v. Governor of Maryland*,
429 F.2d 606 (4th Cir. 1970) ........................................................................................................4

*Perry v. Judd*, 840 F.Supp. 2d 945 (E.D.Va. 2012) ....................................................................4

*Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346-47
(4th Cir. 2009) ..............................................................................................................................2

*Simkins v. Gressette*, 631 F.2d 287 (4th Cir. 1980) ....................................................................4

*Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 283 (4th Cir. 2002) ........................................3

*Soules v. Kauaians for Nukolii Campaign Committee*, 849 F.2d 1176, 1180-81
(9th Cir. 1988) ..............................................................................................................................4

*Talleywhacker, Inc. v. Cooper*, 465 F. Supp. 3d 523, 542 (E.D.N.C. 2020) ...............................3

*Winter v NRDC, Inc.*, 555 US 7, 22 (2008) .........................................................................1, 2, 3

*Statutes*

52 U.S.C. § 20507 (C)(2)(A) .......................................................................................................5

52 U.S.C. § 20507(c)(2)(B)(i) ..................................................................................................6, 7

52 U.S.C. 20507(a)(3)(A)-(B)), (4)(A) .....................................................................................6, 7

52 U.S.C. § 20507(c)(2)(B)(ii) ............................................................................................6, 7, 10

52 U.S.C.S. § 20501(b) ................................................................................................................5

Va. Code 24.2-410.1 .................................................................................................................3, 7

Fed. R. Civ. P. 65 .........................................................................................................................1

**Summary of Argument**

The factual record in this case is too undeveloped for the imposition of injunctive relief. This is especially so when injunctive relief would constrain the exercise of powers usually reserved to the states to manage their own election on the very eve of the election. Moreover, this entire issue turns on the meaning of the words "systematic" and "correction"

**Interest of Amicus**

The Public Interest Legal Foundation, Inc. ("Foundation") is a non-partisan, public interest 501(c)(3) organization whose mission includes working to protect the fundamental right of citizens to vote and preserving election integrity across the country. The Foundation has sought to advance the public's interest in having elections conducted in compliance with federal and state election laws. The Foundation has participated in perhaps more contested cases involving interpretations of the National Voter Registration Act – the statute at issue here – than any other party in the history of the statute. Amicus seeks to support the proper interpretation of what can be a frightfully confusing statute.

I. **Plaintiffs' Request for a Preliminary Injunction Should be Denied**

A. **Injunction is Premature as Plaintiffs Lack Evidence of Irreparable Injury**

Federal Rule of Civil Procedure 65 establishes the procedure for federal courts to grant preliminary injunctions. *See* Fed. R. Civ. P. 65. Because of the extraordinary nature of injunctive relief, the United States Supreme Court has held that preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v NRDC, Inc.*, 555 U.S. 7, 22 (2008). The factual record here is terribly undeveloped and calls for a continuation of discovery before plaintiffs could carry this burden. At worst, the imposition of

injunctive relief should wait for a more developed factual record and the continued process of discovery.

"A plaintiff seeking a preliminary injunction must establish all four of the following criteria: (1) that the plaintiff is likely to succeed on the merits, (2) that the plaintiff is likely to suffer irreparable harm in the absence of preliminary injunctive relief, (3) that the balance of equities tips in the plaintiff's favor, and (4) that the injunction is in the public interest." *League of Women Voters of N. Carolina v. N. Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (citing *Winter*, 555 U.S. at 20). "A plaintiff must make a *clear* showing that it is likely to succeed on the merits of its claim." *Winter*, 555 U.S. at 20-22. "Likewise, a plaintiff must make a *clear* showing that it is likely to be irreparably harmed absent injunctive relief. *Id.* "Only then may the court consider whether the balance of equities tips in the plaintiff's favor." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). "Finally, the court must pay particular regard to the public consequences of employing the extraordinary relief of injunction." U.S. *Id.* at 347.

Plaintiffs' complaint appears to mischaracterize factually Executive Order Thirty-Five, existing Virginia Statutes, and misses the mark on describing the actual – and sometimes complex - process by which non-citizens are removed from the official list of voters in Virginia. At worst for Defendants, a greater measure of factual clarity here should precede any imposition of injunctive relief.

"An applicant must demonstrate that in the absence of a preliminary injunction, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. A preliminary injunction will not be issued simply to prevent the *possibility* of some remote future injury. Issuing a preliminary injunction based only on a possibility of irreparable harm is

inconsistent with the characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief". *Winter* at 23. A plaintiff seeking a preliminary injunction must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id. a*t 22. A showing of the "possibility of irreparable harm" is not sufficient." *Id.* Instead, a plaintiff "must make a clear showing of irreparable harm . . . and the required irreparable harm must be neither remote nor speculative, but actual and imminent." *Talleywhacker, Inc. v. Cooper,* 465 F. Supp. 3d 523, 542 (E.D.N.C. 2020) (quoting *Scotts Co. v. United Indus. Corp.,* 315 F.3d 264, 283 (4th Cir. 2002).)

### B. Laches Bars Plaintiffs Claims

The plaintiffs seek to strike down a procedure that was first initiated in 2006. Laches bars this claim. The procedures at issue here have been implemented ever since Governor Tim Kaine in 2006 signed Senate Bill 313. That became Va. Code 24.2-410.1, the procedure challenged here. Even if Plaintiffs could satisfy their high burden for the issuance of a preliminary injunction, the court should exercise equitable discretion and deny injunctive relief because of laches. The statute reads:

> **§ 24.2-410.1. Citizenship status; Department of Motor Vehicles to furnish lists of noncitizens.**
> A. The Department of Motor Vehicles shall include on the application for any document, or renewal thereof, issued pursuant to the provisions of Chapter 3 (§ 46.2-300 et seq.) of Title 46.2 a statement asking the applicant if he is a United States citizen. Information on citizenship status shall not be a determinative factor for the issuance of any document pursuant to the provisions of Chapter 3 (§ 46.2-300 et seq.) of Title 46.2.
>
> The Department of Motor Vehicles shall furnish monthly to the Department of Elections a complete list of all persons who have indicated a noncitizen status to the Department of Motor Vehicles in obtaining any document, or renewal thereof, issued pursuant to the provisions of Chapter 3 (§ 46.2-300 et seq.) of Title 46.2. The Department of Elections shall transmit the information from the list to the

> appropriate general registrars. Information in the lists shall be confidential and available only for official use by the Department of Elections and general registrars.
>
> B. For the purposes of this section, the Department of Motor Vehicles is not responsible for verifying the claim of any applicant who indicates United States citizen status when applying for any document, or renewal thereof, issued pursuant to the provisions of Chapter 3 (§ 46.2-300 et seq.) of Title 46.2.
> 2006, cc. 926, 940; 2015, c. 740; 2020, cc. 908, 909, 1227, 1246.

Despite this law being fully implemented since 2006, Plaintiffs waited eighteen years to bring this claim, and on the eve of a federal election no less. Plaintiffs have lacked diligence and have delayed unreasonably in filing this claim. Other courts have held, "The law imposes a duty on parties having grievances based on discriminatory practices to bring their complaints forward for preelection adjudication." *Soules v. Kauaians for Nukolii Campaign Committee*, 849 F.2d 1176, 1180-81 (9th Cir. 1988) (citing *Chinese for Affirmative Action v. Leguennec*, 580 F.2d 1006, 1008 (9th Cir. 1978). *See also Simkins v. Gressette*, 631 F.2d 287 (4th Cir. 1980)(court found injunctive relief foreclosed to plaintiffs who waited to bring suit until two days before the opening of the filing period for candidates seeking nomination for South Carolina state senator and sixteen days before the final deadline for filing); *See also*, *Maryland Citizens for a Representative General Assembly v. Governor of Maryland*, 429 F.2d 606 (4th Cir. 1970) (finding latches can cause a major disruption not only in the election but in the year of the election); *Perry v. Judd*, 840 F.Supp. 2d 945 (E.D.Va. 2012) (Laches barred campaigns on eve of Presidential primary election from challenging Virginia ballot procedures.)

## II. Purposes of the National Voter Registration Act

Granting injunctive relief here would conflict with the articulated express purposes of the National Voter Registration Act. The purposes of the National Voter Registration Act, articulated

in 52 U.S.C.S. § 20501(b) are: (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office; (2) to make it possible for Federal, State, and local governments to implement this Act in a manner that enhances the participation of eligible citizens as voters in elections for Federal office; (3) to protect the integrity of the electoral process; and 4) to ensure that accurate and current voter registration rolls are maintained. *See, Arcia v Secretary of Florida*, 772 F3d 1335, 1346 (11th Cir 2014.) The Supreme Court has opined that "the Act has two main objectives: increasing voter registration and removing ineligible persons from the states' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 US 756, 756 (2018). To ensure accurate and current voter registration rolls, states are required to regularly update voter registration lists by adding new voters, correcting voter registrations, and removing those registrants who have moved from the jurisdiction, have died, or have otherwise *become* ineligible to be included on the list of registered voters.

### A.   The 90 Day Provision

Section 8 (c)(2) of the NVRA, requires that all programs that *systematically* remove the names of ineligible voters from the official lists of eligible voters be completed no later than 90 days prior to the date of a primary or general election for federal office. 52 U.S.C. § 20507 (C)(2)(A) states: "A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters."

Some exceptions limit this ban. The names of registrants may be removed from the official list of registered voters at the request of the registrant, by reason of criminal conviction or mental incapacity (as provided by state law), or by reason of the death of the registrant. 52 U.S.C. § 20507(c)(2)(B)(i) and 52 U.S.C. 20507(a)(3)(A)-(B)), (4)(A). Furthermore, the

correction of an individual voter's registration record may be corrected during the 90 days prior to a federal election. 52 U.S.C. § 20507(c)(2)(B)(ii).

This entire case turns on the definition of *systematically* in § 20507 (C)(2)(A) and *correction* in § 20507(c)(2)(B)(ii). Courts have not had many occasions to wade into these statutory waters.

The 11th Circuit did, but not terribly deeply for purposes here. "The 90 Day Provision is designed to carefully balance the four competing purposes in the NVRA. For example, by limiting its reach to programs that 'systematically' remove voters from the voter rolls, the 90 Day Provision permits removals based on *individualized information* at any time. Individualized removals are safe to conduct at any time because this type of removal is usually based on individual correspondence or rigorous individualized inquiry, leading to a smaller chance for mistakes." *Arcia, at* 1283-1284 (emphasis added).

To the 11th Circuit, maintenance was not systematic if it sprang from something unique to the individual registrant. Instead, if the maintenance was merely part of the ever-running machine, the anonymous sifting of data without any individualized inputs, then it was part of the system of list maintenance. This interpretation by the 11th Circuit supports Defendants' position here.

### III. Virginia is not Conducting a Systematic Removal Program

Any removal under the challenged process flows from an individualized input, not a systematic removal program. Executive Order Thirty-Five appears synonymous with Va. Code 24.2-410.1. The code requires that the Department of Motor Vehicles in Virginia notify the Department of Elections of any application it receives where the applicant indicates that he/she is

6

not a U.S. Citizen. The Department of Elections is then required to notify the local registrars of those names and if they are found to be on the official list of voters, they are to be sent a form in which they affirm that they are a U.S. Citizen. Since 2006, Virginia has been implementing this procedure.

In August 2024, Governor Youngkin issued Executive Order 35. A reading of the actual words of the Executive Order at issue here clearly establishes that Virginia is not engaging in a program that systematically removes the names of ineligible voters from the official list of Virginia voters. The Executive Order read as follows:

> The Commissioner of the Department of Elections shall certify in writing to the Governor that the following election security procedures are in place to protect the voter lists:
> 1. **Daily** Updates to the Voter List to: (emphasis added)
>    A. Add new eligible voters
>    B. Remove voters in accordance with Federal and State law
>    C. Remove deceased voters
>    D. Remove ineligible voters including felons and mentally incapacitated.
>    E. Remove individuals who are unable to verify that they are citizens to the Department of Motor Vehicles from the statewide voter registration list, should the individual either intentionally or unintentionally attempt to register to vote in accordance with state and federal law.
>    F. The Department of Elections compares the list of individuals identified as non-citizens to the list of registered voters and then notifies any matches of their pending cancellation unless they affirm their citizenship within 14 days.

The Executive Order goes no further than Va. Code 24.2-410.1 itself does. The above delineated actions appear to be within the NVRA safe harbor. 52 U.S.C. § 20507(c)(2)(B)(i) and 52 U.S.C. 20507(a)(3)(A) -(B)), and 52 U.S.C. § 20507(c)(2)(B)(ii). "All that the 90 Day Provision prohibits is a *program* whose purpose is to "systematically remove the names of ineligible voters" from the voter rolls within the last 90 days before a federal election." *Arcia,* at 1338.

If the under-oath statement by a registrant at DMV is viewed as an individualized statement by the registrant that they are not a citizen, then Defendants should prevail here.

7

Initiating the state statutory procedure after this statement is triggered by the registrant themselves, not a systematic program of list maintenance.[1]

A.  **Removal for Non-Citizenship is Triggered by the Registrant Not a Systematic Program for Removal**

Each of the removals being conducted by the Commonwealth are triggered by individualized information from the registrants. They therefore are not plausibly part of a systematic program. "The 90 Day Provision of the National Voter Registration Act, 52 U.S.C.S. § 20501 et seq., limits its reach to programs that systemically remove voters from the voter rolls but permits removals based on individualized information at any time. Individualized removals do not present the same risks as systematic removals because they are based on individual correspondence or rigorous individualized inquiry, leading to a smaller chance for mistakes". *Majority Forward v Ben Hill County Bd. of Elections*, 509 F Supp 3d 1348, 1352 (MD Ga 2020).

The removal of non-citizens is not being triggered by the Commonwealth through a systematic removal program but rather is triggered by an individualized statement under oath by the registrant. Thus, any removal that does occur relies upon the registrant's own information

---

[1] The work of this Amicus revealed that previous administrations – namely those of *Governors Terry McAuliffe and Ralph Northam - were indeed removing American citizens from the voter rolls under this provision*. The McAuliffe and Northam election departments had removed registrants as "Declared non-citizen," this Amicus publicly spoke about this removal of purported non-citizens, and improperly removed American citizens brought an action *against the Amicus* for speaking about and drawing reasonable inferences about what the Northam and McAuliffe administration had done. E.D.Va. Civil Action No. 1:18-cv-00423. Perhaps more surprising, the removed citizens *took no action* against the Department of Elections for their removal. Amicus filed a Third-Party Complaint against the Northam administration's Department of Elections for producing reports, *inter alia*, that contained the names of American citizens as "Declared Non Citizen." *Id.,* ECF Document No. 73. Though the Third Party Complaint was dismissed by the district court, the essential point remains that Plaintiffs here took no action through 18 years of enforcement of this statute when in fact previous administrations *removed American citizens* from the voter rolls *as non-citizens*.

provided to the DMV and should be aligned with a request not to be registered. Unlike the systematic removal programs identified in *Arcia* and *Majority Forward*, here registrants are only subject to scrutiny once they notify the DMV under oath that they are not a U.S. citizen, and they appear on the official list of registered voters. Without the registrant providing this information to the DMV the Commonwealth would have no basis to send a confirmation request to the registrant. Far from being a "Purge Program" systematically instituted by the State, the registrant's possible removal is an individual assertion by the registrant.

The 90 Day Provision by its terms only applies to programs which "systematically" remove the names of ineligible voters. "Systematically" should be interpreted by excluding individualized statements to Virginia officials that the registrant is not a citizen. "Individualized removals, not expressly forbidden within the 90-day window, are based on more 'rigorous' registrant-specific inquiries 'leading to a smaller chance for mistakes.'" *Arcia*, at 1346.

### IV. Correction of Registrations Allowable Within 90 days of Federal Election

The scope of the statutory term "correction" is also at issue here. Both the 1993 report of the Committee on the House Administration of the U.S. House of Representatives on the NVRA, and the NVRA itself clarifies that the 90-day deadline "does not prohibit a State, during the 90 day pre-election period from removing the names from the official list of eligible voters on the basis of the request of the registrant, as provided by State law for criminal conviction or mental incapacity, death, or *any other correction of registration records pursuant to the Act.*"

Therefore, the 90-deadline contained in the provision deals solely with systematic programs to remove voters based on their change of address. The statute allows the removal of individuals who may have been eligible to vote when they registered but have become ineligible

due to death, criminal conviction, or mental incapacity. As such, the 90-day provision does not apply to ineligible voter removals. This raises a significant question as to whether this 90-day limitation has any applicability to an alien *who was never eligible to register in the first place*. The statutory term "correction" should be read to reach registrations which were invalid *a priori*.

Citizenship is a criterion for voter registration in the State of Virginia and in Federal elections. Moreover, "the National Voter Registration Act (NVRA) is premised on the assumption that citizenship is one of the requirements for eligibility to vote. *See* (requiring certain voter registration forms to state or specify "each eligibility requirement (including citizenship)" *Arcia, at* 1281. The removal of registrants who are not U.S. citizens who were incorrectly included on the official list of registered voters is analogous to simply correcting a registration, something that is allowable during the 90-day period. 52 U.S.C. § 20507(c)(2)(B)(ii).

## CONCLUSION

For the foregoing reasons, the Plaintiff's request for a preliminary injunction should be denied. Respectfully submitted,

    */s/ J. Christian Adams*
J. Christian Adams
VA BAR #42543
PUBLIC INTEREST LEGAL FOUNDATION
1729 King Street
Suite 100
Alexandria, Virginia 22314
Phone: (703) 963-8611
Fax: (888) 815-5641
adams@publicinterestlegal.org

# CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2024, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

/s/ J. Christian Adams
J. Christian Adams
adams@publicinterestlegal.org
*Counsel for Amici*