# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| **Virginia Coalition for Immigrant Rights, et al.,** ) ) ) **Plaintiffs,** ) ) v. ) ) **Susan Beals, in her official capacity as Virginia Commissioner of Elections, et al.,** ) ) ) **Defendants.** ) | Civil Action No. 1:24-cv-01778 |

## DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF THEIR INTERLOCUTORY APPEAL

Defendants respectfully move this Court to stay proceedings in this case pending resolution of Defendants' sovereign-immunity appeal.[1] The notice of appeal has automatically divested this Court of jurisdiction over the Attorney General with respect to all Counts in the Amended Complaint and over all Defendants with respect to Count I. A stay of proceedings on Counts II and IV, in addition to the automatic stay created by the notice of appeal, would promote judicial economy by avoiding piecemeal discovery. The Court possesses inherent authority to manage its docket in an efficient manner and should exercise that authority here. *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).

### BACKGROUND

In October 2024, Plaintiffs filed this lawsuit to challenge Virginia's removal of noncitizens from the voter rolls and alleged refusal to provide information about such removals. See Amended

---

[1] Defendants Christopher P. Stolle and J. Chapman Petersen have been automatically substituted as defendants for Donald W. Merricks and Matthew Weinstein pursuant to Federal Rule of Civil Procedure 25(d).

1

Compl. ECF No. 23. The Amended Complaint contained four Counts. Count I alleged that Virginia's purportedly systematic removal of noncitizens within 90 days of a federal election violated the National Voter Registration Act's (NVRA) quiet-period provision.[2] 52 U.S.C. § 20507(c)(2)(A). Count II alleged that Virginia's process for removing noncitizens, as codified in Va. Code § 24.2-427(C), ran afoul of the NVRA's requirement that voter-roll-maintenance programs be "nondiscriminatory," which applies at all times and not just during the 90 days before a federal election. 52 U.S.C. § 20507(b)(1). Count III claimed that the alleged removal of noncitizens for the failure to respond to a notice of intent to cancel amounted to a failure to "accept and use" the federal registration form, in contravention of the NVRA's requirements. *Id.* § 20505(a)(1). In each of these counts, Plaintiffs focused on Governor Youngkin's Executive Order No. 35 rather than the underlying and longstanding statutory processes. Count IV alleged that Virginia had not turned over documents that the Plaintiffs maintained they were entitled to under the NVRA's public-inspection provision. *Id.* § 20507(i).

Plaintiffs moved for a preliminary injunction on Counts I and II weeks before the 2024 election. ECF No. 26. After a hearing, this Court granted the injunction exclusively on Count I, ECF No. 112, and the Fourth Circuit denied a stay pending appeal, see *Virginia Coalition for Immigrant Rights v. Beals*, No. 24-2071, 2024 WL 4601052 (Oct. 27, 2024). The Supreme Court, however, granted a materially identical motion and stayed the injunction. *Virginia Coalition for Immigrant Rights v. Beals*, 603 U.S. __, 2024 WL 4608863 (slip op. at 1) (2024) (mem.). The injunction expired the day "after the 2024 General Election." ECF No. 112 at 4.

---

[2] The United States originally joined the Plaintiffs on Count I, but later voluntarily dismissed its lawsuit. ECF No. 140.

Defendants then moved to dismiss the Amended Complaint both on threshold jurisdictional grounds and for the failure to state a claim. ECF No. 121. Most relevant here, Defendants maintained that sovereign immunity bars the bulk of this lawsuit. The Attorney General does not play a role in enforcement of the challenged provisions or the relevant Executive Order, so the *Ex parte Young* exception that Plaintiffs depend upon to bring this action is unavailable against him as to any count. ECF No. 122 at 19–22. Likewise, because the quiet period for the 2024 election is over, Plaintiffs could not point to an "ongoing" violation by the Commissioner of Elections, members of the Board of Elections, or the Attorney General that would allow Plaintiffs to use the *Ex parte Young* exception as to any Defendant for Count I. *Id.* at 19 (quoting *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013)).

On August 13, 2025, this Court entered an opinion granting the motion to dismiss in part and denying it in part. ECF Nos. 153, 154. The Court rejected all of Defendants' threshold arguments, including sovereign immunity as to both the Attorney General and the remaining Defendants. ECF No. 153 at 7–19. On the merits, the Court dismissed Count III, but the other three Counts survived. *Id.* at 19–32. The parties held a discovery conference, as required by Rule 26(f), on September 8, 2025. The parties reached agreement on many matters at the conference. But the parties could not come to an agreement with respect to discovery and the briefing timelines for any summary-judgment motions. During the conference, Defendants notified Plaintiffs that they were considering an appeal on sovereign-immunity grounds and asked whether Plaintiffs would consider agreeing to stay discovery until the appeal was resolved. Plaintiffs declined.

On September 11, 2025, Defendants noticed an interlocutory sovereign-immunity appeal for the Attorney General on all Counts and an interlocutory sovereign-immunity appeal for the

remaining Defendants on Count I. See ECF No. 165. Defendants now move to stay all proceedings pending the resolution of the sovereign-immunity appeal.

**ARGUMENT**

This Court should stay proceedings pending the resolution of Defendants' interlocutory appeal for two reasons. First, at a minimum, this Court must stay proceedings under all Counts against the Attorney General and also stay proceedings on Count I against all Defendants. Supreme Court and Fourth Circuit precedent are clear that a notice of appeal divests a district court of jurisdiction, including the jurisdiction to conduct pre-trial proceedings. ECF No. 165. Second, because this Court no longer has jurisdiction over Count I or the Attorney General, it would be a waste of judicial resources to proceed with discovery on the remaining Counts. This Court has inherent authority to manage its docket, and it can use that authority to stay further proceedings. *Landis*, 299 U.S. at 254.

**I.  Defendants' interlocutory appeal of this Court's denial of sovereign immunity divests the Court of jurisdiction**

An order denying sovereign immunity is an immediately appealable collateral order. See *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–45 (1993); *Industrial Servs. Group, Inc. v. Dobson*, 68 F.4th 155, 163 (4th Cir. 2023). And it is "a longstanding tenet of American procedure" that an "appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). When that divestment of jurisdiction occurs, "the district court must stay its pre-trial and trial proceedings while the interlocutory appeal is ongoing." *Id.* at 738; *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985) ("In general, filing of a

4

notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal.").

This Court has correctly applied this principle in the context of an interlocutory appeal challenging the denial of sovereign immunity. See *Glover v. Hryniewich*, 438 F. Supp. 3d 625, 643–44 (E.D. Va. 2020). In *Glover*, the Court denied a city defendant's assertion of sovereign immunity. See *id.* at 643–44. The city then sought a stay based on its impending interlocutory appeal challenging that denial, arguing that the filing of the notice of appeal would divest the Court of jurisdiction under *Griggs*. *Id.* at 644. The Court agreed and stayed the case, holding "that it lacks jurisdiction to proceed to trial during the pendency of the City's interlocutory appeal." *Id.* at 645. This Court has held the same in the context of foreign sovereign immunity. See *France.com, Inc. v. French Republic*, No. 1:18-cv-460, 2020 WL 8172981, at *4 (E.D. Va. Feb. 20, 2020) (staying the case because the "Court no longer asserts jurisdiction over the question of sovereign immunity" after defendants filed an interlocutory appeal challenging denial of immunity).

Because a notice of appeal divests the district court of jurisdiction, this Court has no power to proceed on the aspects of the ruling that have been appealed. Specifically, this Court has no jurisdiction over the Attorney General as to any count and no jurisdiction over Commissioner Beals and members of the Board of Elections with respect to Count I. Discovery on these matters cannot proceed until the Fourth Circuit decides whether these Defendants are immune from suit. *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 144–45.

II.     **This Court should enter a stay as to the limited aspects of the case over which it retains jurisdiction while Defendants pursue their interlocutory appeal**

Although this Court lacks jurisdiction to proceed on Count I and against the Attorney General on all Counts, Defendants acknowledge there is no *mandatory* stay for Counts II and IV against Commissioner Beals and the members of the Board of Elections. See *Marrese*, 470 U.S. at

379 (staying only the parts of the case relevant to the appeal). But proceeding with piecemeal discovery would waste judicial resources and serve no beneficial purpose. See *Coinbase*, 599 U.S. at 743. This Court should thus stay *all* the proceedings until the appeal is resolved.

This Court will typically consider three factors when exercising its inherent power to stay proceedings: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Redding v. Mayorkas*, No. 1:23-cv-1325, 2024 WL 663038, at *3 (E.D. Va. Feb. 5, 2024) (brackets and internal quotation marks omitted). These factors support staying the entire case while Defendants' sovereign-immunity appeal plays out.

First, judicial economy would be served by granting a stay. See *Coinbase*, 599 U.S. at 743 ("[A]llowing a case to proceed simultaneously in the district court and the court of appeals creates the possibility that the district court will waste scarce judicial resources."). While the sovereign-immunity appeal is pending, Plaintiffs will be unable to take any discovery into the Attorney General. See *id.* (explaining that one purpose of divesting the district court of jurisdiction is to prevent discovery). Nor will they be able to take discovery into any Defendant with respect to the quiet-period provision. *Id*. The only discovery available would be related to Counts II and IV, and even then only as to the defendant members of the Board of Elections and Commissioner Beals. See *Marrese*, 470 U.S. at 379. If Defendants win the appeal, then the issues in this case will be significantly narrowed, conserving judicial resources. If Defendants lose but discovery had not been stayed, then this Court would need to reopen discovery to allow inquiry into Count I for Commissioner Beals and the members of the Board of Elections and Counts I, II, and IV for the Attorney General. This kind of duplicative discovery schedule would waste valuable resources of both the parties and the Court. In a similar vein, creating separate rounds of discovery would not

produce any efficiencies or accelerate resolution of this matter. While Defendants' sovereign immunity appeal is pending, this Court cannot proceed to summary judgment or trial on Count I or any claims against the Attorney General. See Part I, *supra*. Thus, even if the parties completed some discovery now, they would still have to wait for resolution of the appeal and potentially additional discovery before taking any further action in the case.

Conducting discovery immediately, especially on an accelerated timeline as Plaintiffs propose, would also risk wasting judicial resources because there is an impending gubernatorial election in Virginia. Plaintiffs' claims are heavily focused on Executive Order No. 35. See, *e.g.*, Am. Compl. ¶¶ 3, 4, 5, 7, 10, 21, 22, 23, 26, 27, 34, 35, 37, 38, 39, 40, 47, 76, 80, 84, 90 & n.1 (citing or discussing Executive Order No. 35). But due to the Constitution of Virginia's prohibition on Governors serving consecutive terms, Va. Const. art. V, § 1, there will inherently be a new Governor of Virginia starting in mid-January 2026. As a result, the relevant Executive Order may be altered, amended, revised, expanded, or otherwise modified. If that occurs, additional discovery may be necessary. By contrast, a stay would permit discovery to proceed in a more concrete setting and prevent the possible duplication of efforts.

Second, Defendants would also suffer hardship if they are not granted a stay. *Redding*, 2024 WL 663038, at *3; *Sehler v. Prospect Mortg., LLC*, 2013 WL 5184216, at *2 (E.D. Va. Sept. 16, 2013). Virginia's 2025 general election will take place on November 4, 2025, and Commissioner Beals and the members of the Board of Elections are hard at work preparing for that election. "High ranking government officials," like the Defendants here, "have greater duties and time constraints than" typical defendants, and as other courts have recognized, their "time is very valuable." *In re U.S.*, 985 F.2d 510, 512 (11th Cir. 1993). Being forced into burdensome—and ultimately repetitive—discovery would distract from their duties and harm the Commonwealth of

Virginia's efforts to run an efficient and fair election. See, *e.g.*, *In re Stone*, 986 F.2d 898, 904 (5th Cir. 1993) (per curiam) ("Obviously, high-ranking officials of cabinet agencies could never do their jobs if they could be subpoenaed for every case involving their agency."); *In re U.S. Dep't of Educ.*, 25 F.4th 692, 701 (9th Cir. 2022) ("[T]he executive branch's execution of the laws" would "be crippled if courts" could "unnecessarily burden [officials] with compelled depositions.").

Third, although Plaintiffs would experience some delay in litigating Counts II and IV, that delay would not "prejudice" them. *Redding*, 2024 WL 663038, at *3. Count II alleges that Virginia's process for removing noncitizens from the voter rolls fails the NVRA's requirement that roll-maintenance programs be "nondiscriminatory." 52 U.S.C. § 20507(b)(1). Despite the fact that Virginia has been openly removing noncitizens from its voter rolls under Va. Code § 24.2-427(C) since Governor Kaine signed the law in 2006, Plaintiffs waited until 2024 to sue. Given Plaintiffs' 18-year delay to sue over a statute that they claim is preempted, Plaintiffs have little basis for opposing a limited stay in the interests of judicial economy. Likewise, Plaintiffs would suffer no harm from waiting to resolve Count IV, which only seeks documents. Plaintiffs have already been provided with most, if not all, of the documents in question through voluntary disclosures or the expedited discovery that preceded the preliminary injunction hearing. Moreover, as this matter remains in its early stages with discovery having not yet commenced, a stay will not disrupt any ongoing efforts.

## CONCLUSION

For the foregoing reasons, the Court should stay all proceedings pending resolution of Defendants' interlocutory appeal.

Dated: September 12, 2025

Respectfully submitted,

**SUSAN BEALS**, in her official capacity as Virginia Commissioner of Elections; **JOHN O'BANNON**, in his official capacity as Chairman of the State Board of Elections; **ROSALYN R. DANCE**, in her official capacity as Vice-Chairman of the State Board of Elections; **GEORGIA ALVIS-LONG**, in her official capacity as Secretary of the State Board of Elections; **CHRISTOPHER P. STOLLE**, and **J. CHAPMAN PETERSEN**, in their official capacities as members of the State Board of Elections; and **JASON MIYARES**, in his official capacity as Virginia Attorney General

By:    */s/ Thomas J. Sanford*
      Thomas J. Sanford (VSB #95965)
        *Deputy Attorney General*

Charles J. Cooper *(Pro Hac Vice)*
Joseph O. Masterman *(Pro Hac Vice)*
Bradley L. Larson *(Pro Hac Vice)*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Defendants Susan Beals, John O'Bannon, Rosalyn R. Dance, Georgia Alvis-Long, Christopher P. Stolle, J. Chapman Petersen, and Attorney General Jason Miyares*

Jason S. Miyares
   *Attorney General*
Kevin M. Gallagher (VSB #87548)
   *Solicitor General*
Graham K. Bryant (VSB #90592)
   *Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
TSanford@oag.state.va.us
SolicitorGeneral@oag.state.va.us

**CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY that on September 12, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

                                                */s/ Thomas J. Sanford*
                                                Thomas J. Sanford (VSB #95965)
                                                         *Deputy Attorney General*