IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **Virginia Coalition for Immigrant Rights, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil Action No. 1:24-cv-01778 |
| ) | |
| **Susan Beals, in her official capacity as Virginia Commissioner of Elections, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF THEIR INTERLOCUTORY APPEAL**

This Court should stay all proceedings until the Fourth Circuit has ruled on Defendants' interlocutory appeal. The notice of appeal has divested this Court of jurisdiction over the Attorney General entirely and the ELECT Defendants with respect to Count I. Jurisdiction remains only over Counts II and IV and only with respect to the ELECT Defendants. Recognizing this well-established consequence of Defendants' sovereign immunity appeal, Plaintiffs attempt to evade it by launching a Hail Mary argument that, because Plaintiffs view the appeal as frivolous, this Court should defy these settled principles and instead retain jurisdiction over the appealed parts of the case. But they come nowhere close to satisfying the demanding standard for establishing frivolity. Separately, with respect to the counts and parties still before the Court, it would be a waste of judicial and litigant resources to proceed with discovery piecemeal. Plaintiffs' arguments against a stay apply the wrong legal standard and are unconvincing on their own terms.

**ARGUMENT**

Defendants are entitled to a stay of the proceedings because this Court was divested of jurisdiction over the aspects of the case that are at issue in the appeal, and it makes little sense to

1

proceed with discovery piecemeal. Plaintiffs' primary argument is that the sovereign-immunity appeal is frivolous, and thus this Court has the option to retain jurisdiction. See Pls.' Opp. to Defs.' Mot. to Stay Proceedings (Opp.) (ECF No. 171) at 6. Not so. Defendants' appeal involves novel issues about the application of the notoriously vexing *Ex parte Young* doctrine; it is light years away from triggering the demanding standard of frivolity. This Court thus has no discretion to proceed with the appealed parts of the order denying the motion to dismiss. And because piecemeal discovery would waste resources, this Court should use its discretion to stay proceedings on the remaining counts. *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).

## I. Defendants are entitled to an automatic stay with respect to the Attorney General on all counts and with respect to the ELECT Defendants on Count I

All parties agree that an order denying sovereign immunity is an immediately appealable collateral order. See Opp. 3; *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–45 (1993); *Industrial Servs. Group, Inc. v. Dobson*, 68 F.4th 155, 163 (4th Cir. 2023). And it is "a longstanding tenet of American procedure" that an "appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). When that divestment of jurisdiction occurs, "the district court *must* stay its pre-trial and trial proceedings while the interlocutory appeal is ongoing." *Id.* at 738 (emphasis added). That should be the end of the story.

But Plaintiffs are dissatisfied with that outcome and so they contend that these rules do not apply because, according to them, the appeal is frivolous. To be sure, if a district court certifies an appeal as frivolous, the court may "retain jurisdiction pending summary disposition of the appeal." *Behrens v. Pelletier*, 516 U.S. 299, 310–11 (1996). But an interlocutory appeal "is not frivolous merely because the appellant's arguments are 'unconvincing' and 'contrary to existing

2

precedent[.]'" *Global Innovative Concepts, LLC v. Division of Emergency Mgmt.*, No. 5:23-CV-69-FL, 2023 WL 8099111, at *2 (E.D.N.C. Nov. 21, 2023) (quoting *Eckert Int'l, Inc. v. Government of Sovereign Democratic Republic of Fiji*, 834 F. Supp. 167, 174–75 (E.D. Va. 1993)). Nor is it enough that the arguments on appeal were "already rejected by the district court," *Black v. West Va. State Police*, No. 3:22-cv-96, 2023 WL 6850027, at *4 (S.D. W. Va. Oct. 17, 2023); indeed, the existence of an appeal necessarily means that the district court already rejected the appealing party's arguments. Only if the appeal "is *wholly* without merit" will a court deem it frivolous. *In re Property Movers*, 31 Fed. App'x 81, 84 (4th Cir. 2002) (per curiam) (quoting *Williams v. United States Postal Serv.*, 873 F.2d 1069, 1075 (7th Cir.1989) (emphasis added)).

This is an extraordinarily demanding standard, requiring the claim on appeal to "lack all 'arguable' bases in law and fact." *Black*, 2023 WL 6850027, at *3 (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). The appeal must "be so baseless that it does not invoke appellate jurisdiction," or it must challenge a "disposition [that] is so plainly correct that *nothing* can be said on the other side." *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989) (emphasis added); see also, *e.g.*, *Rivera-Torres v. Ortiz Velez*, 341 F.3d 86, 96 (1st Cir. 2003) (recognizing a district court's power to keep jurisdiction when the notice of appeal is "patently meritless"). For example, an appeal is frivolous when "an appellant cites no relevant cases in response to a lower court's accurate exposition of the law, and where an appellant's arguments are irrelevant to the issues in dispute." *In re Property Movers*, 31 Fed. App'x at 84. By contrast, "[i]f the proposed appeal presents legal arguments, it is not frivolous." *Black*, 2023 WL 6850027, at *4 (citing *Witt v. West Va. State Police, Troop 2*, 633 F.3d 272, 275 (4th Cir. 2011)). Because "the power to declare an appeal frivolous is discretionary and should be 'used with restraint,'" courts resolve close calls

"against the party moving for certification." *Black*, 2023 WL 6850027, at *3–4 (quoting *Apostol*, 870 F.2d at 1339).

A frivolity argument is particularly inappropriate given the novel sovereign-immunity questions presented in this case. Courts around the country have repeatedly rejected Plaintiffs' tactic when used to nullify the protections of sovereign immunity. See, *e.g.*, *Texas Democratic Party v. Hughs*, 974 F.3d 570, 570 (5th Cir. 2020) ("The appeal is far from frivolous. It presents an important question that has not been resolved by our court: whether and to what extent *Ex parte Young*'s exception to sovereign immunity permits plaintiffs to sue" the defendants under the facts of the case); *Lewis v. New Mexico Dep't of Health*, No. 99-0021 MV/RLP, 2001 WL 37125164, at *2 (D.N.M. Mar. 1, 2001) ("[A]lthough this Court believes that the weight of authority goes against Defendants' arguments, Eleventh Amendment immunity is an ever-changing and always contentious area of the law. Defendants are entitled to appeal this Court's ruling that the *Ex parte Young* doctrine applies to deny sovereign immunity from Plaintiffs' § 1983 claims."). Accordingly, the exacting standard for demonstrating frivolity is even more demanding in the sovereign immunity context "given the strong general presumptions in favor of protecting sovereign immunity." *Global Innovative Concepts, LLC*, 2023 WL 8099111, at *3.

"District courts in the Fourth Circuit follow these 'sensible holdings.'" *Black*, 2023 WL 6850027, at *4 (quoting *Thompson v. Farmer*, 945 F. Supp. 109, 112 (W.D.N.C. 1996) (cleaned up)). Plaintiffs have not come close to meeting this concededly "exacting" standard. Opp. 5. Defendants' appeal is meritorious and falls nowhere near "frivolous" territory, even if this Court found it "unconvincing" in the first instance. *Global Innovative Concepts, LLC*, 2023 WL 8099111, at *2. Although the appeal has not yet been briefed, Defendants plan to raise at least two arguments

on appeal, both of which are supported by Fourth Circuit precedent and jurisprudential first principles.

First, the Attorney General is immune from suit because he plays no role whatsoever in removing noncitizens from the voter rolls. The *Ex parte Young* exception to sovereign immunity applies only to officials who bear a "special relation" to "the challenged statute" and who have "acted or threatened" to enforce the statute. *McBurney v. Cuccinelli*, 616 F.3d 393, 399, 402 (4th Cir. 2010) (quotation marks omitted). "*General authority* to enforce the laws of the state" is insufficient to satisfy the *Ex parte Young* exception. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) (quoting *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996)) (emphasis added). To be sued under *Ex parte Young*, a state officer must enforce the "specific law" being challenged. *Doyle v. Hogan*, 1 F.4th 249, 254–55 (4th Cir. 2021). The "specific law" Plaintiffs challenge here is Virginia Code § 24.2-427(C), which requires the "general registrar" to "cancel the registrations of . . . persons who do not respond" to a notice of intent to cancel. As the statute plainly states, the "general registrar" is the Virginia official assigned to enforce it by cancelling the person's registration. *Ibid.* The "specific law" being challenged thus does not assign the Attorney General any role in enforcement. *Doyle*, 1 F.4th at 254–55.

The fact that this Court concluded otherwise when denying the motion to dismiss in part does not make the appeal frivolous. See *Global Innovative Concepts, LLC*, 2023 WL 8099111, at *2. This Court concluded that the ability to investigate and enforce laws that restrict noncitizens from voting means that the Attorney General bears a sufficient relationship to the challenged statute to satisfy *Ex parte Young*. See Memorandum Opinion (Op.) (ECF No. 153), at 17–19. But that conclusion is hardly beyond question. Section 24.2-427(C), the only statute at issue here,

5

exclusively lists the general registrars as the officers who enforce the statute by removing from the voter rolls persons who fail to respond to a notice, and the general registrars do not report to the Attorney General. Cf. *Lindh v. Murphy*, 521 U.S. 320, 330 (1997) (negative-implication canon). Given that this power is vested in the general registrars, who operate independently of the Attorney General, it would plainly not be "necessary or appropriate" under the Attorney General's general enforcement powers to seek removal of the noncitizen from the voter rolls. See Defs. Mot. to Dismiss (ECF. No. 122) at 21.

Of course, the Attorney General can still investigate referrals alleging illegal voting and prosecute persons who commit voter fraud. See Va. Code. § 24.2-1004(B)(iii). But the ability to enforce different laws does not mean that the Attorney General enforces the challenged law here. The Fourth Circuit has been clear that the relevant official must be able to enforce "the *specific law* the plaintiff challenges." *Doyle*, 1 F.4th at 255 (emphasis added). The Attorney General has nothing to do with the specific law here; Plaintiffs only contend that the downstream effect of partially invalidating Virginia Code § 24.2-427(C) would prohibit the Attorney General from exercising his enforcement powers under other provisions of Virginia law. At a bare minimum, this case differs in material respects from the typical *Ex parte Young* case, which involves a defendant who applies the challenged law directly to the plaintiff instead of enforcing a different, unchallenged law. Defendants are unaware of any case where the ability to enforce a *different* statute, even if conceptually related to the challenged one, satisfies *Ex parte Young*. The paucity of precedent alone makes this appeal meritorious and certainly nonfrivolous. Notably, just last year, the Fourth Circuit reversed a district court after that court erroneously held that the Governor of Virginia and Secretary of the Commonwealth had a special relationship to the challenged law. See *King v. Youngkin*, 122 F.4th 539, 548–49 (4th Cir. 2024).

Nor is the ELECT Defendants' appeal of this Court's ruling that *Ex parte Young* allows them to be sued under the quiet-period provision frivolous. For *Ex parte Young* to apply, Plaintiffs must allege an "ongoing" violation of federal law. *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013). A violation that "occurred entirely in the past" is insufficient, even if the requirements of *Ex parte Young* are otherwise satisfied. *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999). The allegedly unlawful conduct of the ELECT Defendants—removing purported noncitizens from the voter rolls—is no longer illegal (even assuming Plaintiffs' interpretation of the National Voter Registration Act) because the quiet period has ended. See 52 U.S.C. § 20507(c)(2)(A). Thus, there is no "ongoing" activity that is allegedly unlawful. The same practice that was allegedly unlawful under the quiet-period provision in October of 2024 is undisputedly lawful today outside the quiet period.

This Court nonetheless held that because the ELECT Defendants intend to enforce the Virginia statute requiring the removal of noncitizens in the quiet period before the next federal election (which is itself a speculative assumption given that the outcome of the ongoing Virginia elections will influence the Commonwealth's future conduct), there was still an ongoing violation of federal law. Op. 16. But Fourth Circuit precedent suggests otherwise. The fact that Defendants' conduct may reoccur may be enough to establish that Plaintiffs' harms are capable of repetition for *mootness-exception* purposes, but the Fourth Circuit has steadfastly refused to "conflate[] the *Ex parte Young* exception with the doctrine of mootness." *Allen v. Cooper*, 895 F.3d 337, 355 (4th Cir. 2018). In *Allen*, the Fourth Circuit refused to apply the "voluntary cessation" doctrine to *Ex parte Young* and held that the relevant violation was not "ongoing," even if a State could "resume infringing [the plaintiff's] copyrights" in the future. *Ibid.* Although this Court did not view *Allen* as controlling here, it is far from frivolous for the ELECT Defendants to assert sovereign immunity

7

given *Allen*'s holding that the *Ex parte Young* exception to sovereign immunity did not apply even if a State could potentially resume its unlawful activity.

Separately, this Court also noted that "to the extent citizens were systematically removed from" the voter rolls, reinstatement of these citizens would remedy an ongoing violation of federal law. Op. 17; see also *ibid.* ("[T]he Fourth Circuit has already held that requesting the injunctive remedy of reinstatement in the employment context satisfies *Ex parte Young*."). It is not frivolous to contend that this conclusion is wrong. For one, there are no such persons identified in the complaint itself. For another, the analogy between employment reinstatement and voter-roll reinstatement is far from ineluctable. When a public-sector employee is fired for an unlawful reason, the reason for his firing does not generally become *lawful* during the suit. Thus, there is a "continuing violation" of his right to employment. *Republic of Paraguay v. Allen*, 134 F.3d 622, 628 (4th Cir. 1998) (quoting *Coakley v. Welch*, 877 F.2d 304 (4th Cir. 1989)). And, even in the employment context, application of this reasoning to find a continuing violation under *Ex parte Young* is not straightforward. See *Harris v. Department of Treasury of the Commonwealth of Va.*, Case No. 3:25-cv-270-DJN (E.D. Va. Sept. 25, 2025), Memorandum Order, ECF No. 12 at 16 ("Even where effects from an unlawful termination linger, 'as they do with most injuries,' an injunction would be impermissible under *Ex parte Young*, because it could not remedy any ongoing violation of federal law."); *Butrick v. Dine Dev. Corp.*, No. 3:23-cv-884-HEH, 2024 WL 4643258, at *6 (E.D. Va. Oct. 30, 2024) (holding that injunctive relief based on a continuing violation was barred because, for purposes of the court's analysis under *Ex parte Young*, "[t]he last point in time that Defendants violated federal law" occurred when "employment was terminated").

And here, unlike in the employment context, the quiet period is over, and so even under Plaintiffs' theory it is no longer illegal to systematically remove persons from the voter rolls,

8

whether citizens or noncitizens. This case is thus different from one in which an employee who remains entitled to his job seeks to get it back. On this point, the Fourth Circuit has distinguished a suit to "undo accomplished state action," which is impermissible, and a suit "to provide prospective relief against the continuation of the past violation," which is allowed. *Allen*, 134 F.3d at 628. It is, at the very least, arguable that this case falls into the first category. Likewise, whether *Ex parte Young* allows for a "positive injunction[]" forcing Defendants not only to void removals from the voter rolls, but also to *affirmatively add* persons to the rolls "is an unsettled question that has roused significant debate." *Green Valley Special Utility Dist. v. City of Schertz*, 969 F.3d 460, 472 n.21 (5th Cir. 2020) (en banc); *Vann v. Kempthorne*, 534 F.3d 741, 751–53 (D.C. Cir. 2008) (surveying the confusion about *Ex parte Young* and affirmative relief).[1]

Because Defendants' appeal is far from frivolous, this Court has no jurisdiction over the Attorney General and no jurisdiction over the ELECT Defendants with respect to Count I. Therefore, under black letter legal principles, proceedings with respect to the Attorney General and Count I must be stayed pending resolution of Defendants' sovereign immunity appeal

## II. This Court should stay all proceedings

Although this Court retains jurisdiction over limited aspects of this case, it should stay all proceedings until the appeal is resolved. As explained in Defendants' motion, courts consider three factors when deciding whether to stay proceedings under their inherent authority: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Redding v. Mayorkas*, No. 1:23-cv-1325, 2024

---

[1] Plaintiffs contend that Defendants' appeal is also frivolous because it "hinges on a factual disagreement regarding the nature of the challenged Purge Program and the relief sought by Plaintiffs." Opp. 6. That assertion is wrong because, as explained above, Defendants seek review on novel, purely legal questions about the intricacies of *Ex parte Young*.

9

WL 663038, at *3 (E.D. Va. Feb. 5, 2024) (brackets and quotation marks omitted). These factors unanimously support staying all proceedings until the Fourth Circuit decides the sovereign-immunity appeal.

First, judicial economy would be served by granting a stay because a stay would allow for a single discovery period. Plaintiffs notably do not dispute that proceeding piecemeal would require two separate discovery periods. They nonetheless argue that a stay would not serve judicial economy because "Counts I and II vary in their elements, and discovery regarding the two claims will not be *entirely* duplicative." Opp. 8 (emphasis added). It is unclear why that fact counsels against granting a stay. Because the evidence for the Counts will substantially overlap, even if not "entirely," it is best to have a single discovery period where *all* the parties (including the Attorney General) can receive *all* the evidence they are entitled to at once, instead of having to take a wait-and-see approach across two separate periods.

Second, Defendants would suffer hardship without a stay. The conclusion of Virginia's 2025 general election is only weeks away with voting already underway, and forcing the ELECT Defendants to undergo burdensome discovery during the election season would distract them from their duties. Plaintiffs acknowledge "the important role of election officials" but summarily state that "commencing discovery" would not "prevent them from doing their duties." Opp. 9. But Defendants and the persons they supervise have limited time, and working on discovery will necessarily take time and attention away from election administration.

Third, Plaintiffs have not shown that they would suffer prejudice if proceedings are stayed. Plaintiffs do not deny that they could have raised Count II at any point in the past two decades. Nor could they plausibly claim to be unaware of Virginia's method of removing noncitizens from the voter rolls, as it has been explicitly codified in the relevant statute. See Va. Code § 24.2-427(C).

Plaintiffs also do not dispute that, even in their view of what they are entitled to, they have received the lion's share of the documents they requested in Count IV, such as the list of persons removed from the voter rolls during the quiet period. And they do not identify any document that they lack, the absence of which would prejudice them.

Instead of applying the standard three-pronged test for discretionary stays, Plaintiffs ask this Court to apply the test for a stay of an order pending appeal established in *Nken v. Holder*, 556 U.S. 418, 434 (2009), which requires the moving party to establish a likelihood of success on appeal, see Opp. 4, 10. But the *Nken* standard contains that requirement because the moving party is seeking a stay of a particular judgment or order *already entered*, rather than a stay of *future proceedings* pending appeal. See, *e.g.*, *O'Brien v. Appomattox Cnty., Va.*, No. Civ.A.6:02 CV 00043, 2002 WL 31663226, at *1–2 (W.D. Va. Nov. 15, 2002) (laying out different standards for a stay of injunction pending appeal and a stay of proceedings pending appeal). For this reason, in evaluating motions to stay proceedings, district courts apply the three-prong balancing test laid out above and not the test to stay an order pending appeal. See, *e.g.*, *Redding*, 2024 WL 663038, at *3 (collecting cases). Indeed, several of Plaintiffs' own cases apply this three-factor test. See *Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518, 525 (E.D. Va. 2018) (cited at Opp. 4); *Simpson v. LLAB Trucking, Inc.*, No. 1:21-cv-00333, 2022 WL 2614876, at *1 (E.D. Va. Jan. 26, 2022) (cited at Opp. 4). The only authority that Plaintiffs can muster for applying *Nken* is a district court opinion from outside the Fourth Circuit that applied *Nken* without explaining why. Opp. 4 (citing *Courtemanche v. Motorola Sols., Inc.*, 783 F. Supp. 3d 527, 531–34 (D. Mass. 2025)). That district court simply applied the wrong standard without remark, and this Court should not repeat the error. In any event, Defendants have shown a likelihood of success on the merits for the reasons discussed *supra* at 5–9. Not only is Defendants' appeal not frivolous, but Defendants are likely to succeed.

With the traditional test for a discretionary stay favoring Defendants, this Court should stay proceedings until the Fourth Circuit resolves the sovereign-immunity appeal.

**CONCLUSION**

For the foregoing reasons, the Court should stay all proceedings pending resolution of Defendants' interlocutory appeal.

Dated: October 2, 2025

Respectfully submitted,

**SUSAN BEALS**, in her official capacity as Virginia Commissioner of Elections; **JOHN O'BANNON**, in his official capacity as Chairman of the State Board of Elections; **ROSALYN R. DANCE**, in her official capacity as Vice-Chairman of the State Board of Elections; **GEORGIA ALVIS-LONG**, in her official capacity as Secretary of the State Board of Elections; **CHRISTOPHER P. STOLLE**, and **J. CHAPMAN PETERSEN**, in their official capacities as members of the State Board of Elections; and **JASON MIYARES**, in his official capacity as Virginia Attorney General

By: */s/ Thomas J. Sanford*
   Thomas J. Sanford (VSB #95965)
   *Deputy Attorney General*

Charles J. Cooper *(Pro Hac Vice)*
Bradley L. Larson *(Pro Hac Vice)*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Defendants Susan Beals, John O'Bannon, Rosalyn R. Dance, Georgia Alvis-Long, Christopher P. Stolle, J. Chapman Petersen, and Attorney General Jason Miyares*

Jason S. Miyares
   *Attorney General*
Kevin M. Gallagher (VSB #87548)
   *Solicitor General*
Graham K. Bryant (VSB #90592)
   *Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
TSanford@oag.state.va.us
SolicitorGeneral@oag.state.va.us

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on October 2, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

                                        */s/ Thomas J. Sanford*
                                        Thomas J. Sanford (VSB #95965)
                                        *Deputy Attorney General*