# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

VIRGINIA COALITION FOR IMMIGRANT RIGHTS, *et al.*,

    *Plaintiffs*,

        v.

SUSAN BEALS, in her official capacity as Virginia Commissioner of Elections, *et al.*,

    *Defendants*.

Case No. 1:24-cv-01778
Judge Patricia Tolliver Giles

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................2

    I.     Statutory Framework and Factual Background ..................................2

    II.    Procedural Background..................................................................4

LEGAL STANDARD ..........................................................................................7

ARGUMENT ......................................................................................................8

    I.     The law of the case doctrine bars Defendants' duplicative arguments ..........................8

    II.    Plaintiffs' claims are not jurisdictionally barred ........................................10

        A.  This Court correctly held that the Organizational Plaintiffs have Article III standing ..................................................10

        B.  The Individual Plaintiffs have Article III standing ................................14

        C.  This Court correctly held that Plaintiffs' Quiet Period Provision claim is not moot ..................................................17

        D.  This Court correctly held that Defendants are proper parties to this lawsuit.........20

    III.   Plaintiffs have sufficiently stated their claims ............................................22

        A.  Individual Plaintiffs have a cause of action under the NVRA ..............................22

        B.  This Court correctly held that Plaintiffs have sufficiently stated that Defendants systematically purged voters in violation of the Quiet Period Provision in the NVRA ..................................................23

            i.     This Court correctly held that Defendants' removals within 90 days of the election were systematic ..........................................24

            ii.    This Court correctly held that the Quiet Period Provision protects the voters removed by Defendants' Purge Program ..........................25

        C.  This Court correctly held that Plaintiffs have sufficiently pled that the Defendants' Purge Program is nonuniform and discriminatory in violation of the NVRA .......27

        D.  This Court correctly held that Plaintiffs have sufficiently pled that Defendants have violated the Public Disclosure of Voter Registration Activities Provision of the NVRA ..................................................29

CONCLUSION....................................................................................................30

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page**

*Action NC v. Strach*, 216 F. Supp. 3d 597 (M.D.N.C. 2016) ........................................................22

*Al Shimari v. CACI Premier Technology, Inc.*, 684 F. Supp. 3d 481 (E.D. Va. 2023) ....................8

*Alabama Coalition for Immigrant Justice v. Allen*, No. 2:24-cv-1254, 2024 WL 4510476
    (N.D. Ala. Oct. 16, 2024)........................................................................................................26

*Arcia v. Florida Secretary of State*, 772 F.3d 1335 (11th Cir. 2014) ................................13, 25, 26

*Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013)..............................................23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .....................................................................................7, 24

*Azalea Spa & Nails Inc. v. Zhang*, No. 1:23-cv-712, 2025 WL 991029 (E.D. Va. Apr. 2, 2025)....8

*Beals v. Virginia Coalition for Immigrant Rights*, No. 24A407, 2024 WL 4608863, slip op.
    (U.S. Oct. 30, 2024) (mem.) ......................................................................................................5

*Bishop v. Bartlett*, 575 F.3d 419 (4th Cir. 2009) .........................................................................16

*Carolina Youth Action Project; D.S. by & through Ford v. Wilson*, 60 F.4th 770
    (4th Cir. 2023)..........................................................................................................................15

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).........................................................................14

*Coakley v. Welch*, 877 F.2d 304 (4th Cir. 1989).........................................................................21

*Columbia Gas Transmission, LLC v. RDFS, LLC*, 148 F.4th 163 (4th Cir. 2025).....................7, 8

*Commodity Futures Trading Commission v. Board of Trade of City of Chicago*, 701 F.2d 653
    (7th Cir. 1983) ..........................................................................................................................18

*CSX Transportation, Inc. v. Board of Public Works*, 138 F.3d 537 (4th Cir. 1998)......................21

*Deutsche Bank National Trust Company v. Fegely*, No. 3:16-cv-147, 2020 WL 201048
    (E.D. Va. Jan. 13, 2020) ............................................................................................................8

*Doyle v. Hogan*, 1 F.4th 249 (4th Cir. 2021)...............................................................................21

*Evans v. United States*, 105 F.4th 606 (4th Cir. 2024) ..................................................................7

*Ex parte Young*, 209 U.S. 123 (1908) ..........................................................................................20

*FDA v. Alliance for Hippocratic Medicine* ("*AHM*"), 602 U.S. 367 (2024)...............10, 11, 12, 15

*Federal Election Commission v. Wisconsin Right to Life, Inc.* (*WRTL*),
    551 U.S. 449 (2007)..............................................................................................................18, 19

*Florida State Conference of NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008)....................13

*Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167 (2000) ...........................................12

*Fusaro v. Howard*, 19 F.4th 357 (4th Cir. 2021)...........................................................10

*Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008)......................................................7

*Gonzalez v. Arizona*, No. 06-cv-1268, 2008 WL 11395512 (D. Ariz. Aug. 20, 2008) .................23

*Greater Birmingham Ministries v. Secretary of State of Alabama*,
105 F.4th 1324 (11th Cir. 2024)..............................................................................29

*Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982)...............................10, 11

*Honig v. Doe*, 484 U.S. 305 (1988).............................................................................19

*Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009) .......................................................7

*Lighthouse Fellowship Church v. Northam*, 20 F.4th 157 (4th Cir. 2021)....................19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).......................................................17

*Lux v. Judd*, 651 F.3d 396 (4th Cir. 2011)..............................................................18, 19

*Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025) ...................................9, 26, 28

*North Carolina Right to Life v. Leake*, 524 F.3d 427 (4th Cir. 2008) ...........................18

*North Carolina State Conference of the NAACP v. North Carolina State Board of Elections*,
No. 1:16-CV-1274, 2016 WL 6581284 (M.D.N.C. Nov. 6, 2016) ............................25

*Northern Virginia Hemp and Agriculture, LLC v. Virginia*, 125 F.4th 472 (4th Cir. 2025).......1, 14

*Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) .........................27, 29

*Public Interest Legal Foundation v. Chapman*, 595 F. Supp. 3d 296 (M.D. Pa. 2022)................30

*Public Interest Legal Foundation, Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024)............................30

*Public Interest Legal Foundation, Inc. v. North Carolina State Board of Elections*,
996 F.3d 257 (4th Cir. 2021)...................................................................................7

*Pulsifer v. United States*, 601 U.S. 124 (2024) ...............................................................26

*RNC v. North Carolina State Board of Elections*, 120 F.4th 390 (4th Cir. 2024)..............10, 11, 12

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006) ....................15

*Schneider v. Rusk*, 377 U.S. 163 (1964) ...........................................................................2

*Sejman v. Wanter-Lambert Company, Inc.*, 845 F.2d 66 (4th Cir. 1988) ..................................7

*Sharma v. Hirsch*, 121 F.4th 1033 (4th Cir. 2024) ............................................................16, 18, 19

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ............................................16, 17

*Town of Chester, New York v. Laroe Estates, Inc.*, 581 U.S. 433 (2017) .......................................14

*United States v. Florida*, 870 F. Supp. 2d 1346 (N.D. Fla. 2012)................................................28

*Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002) .........20

*Virginia Coalition for Immigrant Rights v. Beals*, No. 24-2071,
    2024 WL 4601052 (4th Cir. Oct. 27, 2024) ................................................5, 24, 25, 26

*Voter Reference Foundation, LLC v. Torrez*, 727 F. Supp. 3d 1014 (D.N.M. 2024).....................30

*Wilson v. Johnson*, 535 F.3d 262 (4th Cir. 2008) ............................................................7

**Codes**

52 U.S.C. §§ 20501 *et seq*.............................................................................................2

52 U.S.C. § 20507............................................................................................................25

52 U.S.C. § 20507(a)(3)...................................................................................................26

52 U.S.C. § 20507(b)(1)............................................................................................2, 27, 28

52 U.S.C. § 20507(c)(2)(A)......................................................................................2, 25, 26

52 U.S.C. § 20507(i).........................................................................................................3

52 U.S.C. § 20507(i)(1)...................................................................................................29

52 U.S.C. § 20510(b)(1)...................................................................................................22

52 U.S.C. § 20510(b)(2)...................................................................................................22

Va. Code § 24.2-104.........................................................................................................4

Va. Code § 24.2-104.1......................................................................................................4

Va. Code § 24.2-404.4......................................................................................................4

Va. Code § 24.2-410.1(A).............................................................................................3, 19

Va. Code § 24.2-427.........................................................................................................1

Va. Code § 24-2-427(B)-(C).........................................................................................4, 21

Va. Code § 24.2- 427(B)(iii)..............................................................................................3

**Other Authorities**

Emergency Application for Stay, *Beals v. Virginia Coalition for Immigrant Rights*,
    No. 24A407 (U.S. Oct. 28, 2024) ...........................................................................................4

H.R. Rep. No. 103-9 (1993)...............................................................................................27

S. Rep. No. 103-6 (1993).................................................................................................27

# INTRODUCTION

The Parties are before this Court to assess a second Motion to Dismiss from Defendants. Their Memorandum in Support of the motion begins with the statement, "some arguments Defendants raise for dismissal will be familiar to the Court." ECF No. 186 at 1. This is a vast understatement: Defendants ask this Court to reconsider its prior rulings on standing for the Organizational Plaintiffs, on sovereign immunity, and on mootness, as well as its prior rulings that Plaintiffs sufficiently pled that the Purge Program[1] is systematic, the Quiet Period Provision protects voters from purges purportedly aimed at eliminating noncitizens from the rolls, that the Purge Program is nonuniform and discriminatory, and that Defendants violate the NVRA's Public Disclosure requirements. This Court rejected all these arguments when it considered Defendants' first Motion to Dismiss and many of them at the preliminary injunction stage as well. This Court should reject these arguments under the law of the case doctrine, because Defendants have entirely failed to demonstrate any of the extraordinary circumstances that would warrant a departure from this Court's prior holdings. And Defendants' "new" arguments concerning Individual Plaintiffs Shaw and Shiferaw are equally unavailing, because they almost entirely rely on arguments that have already been rejected by this Court in its consideration of the first Motion to Dismiss.

On the merits, nothing has changed. Organizational Plaintiffs have Article III standing, as do Individual Plaintiffs, and regardless, this Court has jurisdiction so long as one plaintiff has standing to seek each form of relief requested. *See N. Va. Hemp and Agric., LLC v. Virginia*, 125 F.4th 472, 491 (4th Cir. 2025). Further, Plaintiffs' claims are not moot, and Defendants are proper parties to this lawsuit. Plaintiffs have also sufficiently stated their claims that: Individual Plaintiffs have a cause of action under the NVRA's plain text and relevant case law; Defendants have

---

[1] The "Purge Program" as used herein refers to Executive Order 35 (E.O. 35), Va. Code § 24.2-427, and actions taken to further Defendants' voter purge effort.

systematically purged voters in violation of the NVRA's Quiet Period Provision and will continue to do so; the Purge Program is nonuniform and discriminatory in violation of the NVRA; and Defendants violated the NVRA's Public Disclosure Provision.

The right to vote is foundational to American democracy, and American citizens hold that right in equal measure regardless of where they were born. *See Schneider v. Rusk*, 377 U.S. 163, 165 (1964). In passing the National Voter Registration Act (NVRA), Congress sought to protect that fundamental right, in particular defending it against voter registration and list maintenance programs that threaten to exclude eligible voters from the ballot box and/or operate in a nonuniform or discriminatory manner. Defendants are operating such a program. The Court should deny Defendants' duplicative Motion in its entirety and permit Plaintiffs' case to move forward.

## BACKGROUND

### I.    Statutory Framework and Factual Background

The United States Congress enacted the National Voter Registration Act of 1993 to protect and promote the "fundamental right" to vote. 52 U.S.C. §§ 20501 *et seq*. The NVRA contains several key provisions at issue here. First, the Quiet Period Provision prohibits systematic voter purges on the eve of an election because they could strip eligible citizens of their fundamental right to vote. 52 U.S.C. § 20507(c)(2)(A). Second, the NVRA requires that all voter list maintenance programs "be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." *Id.* § 20507(b)(1). These provisions are intended to "increase the number of eligible citizens who register to vote in elections for Federal office," to protect "the integrity of the electoral process," and ensure the maintenance of "accurate and current voter registration rolls." 52 U.S.C. § 20501(b). Third, the NVRA's Public Disclosure of Voter Registration Activities Provision requires that states "shall maintain for at least 2 years and shall make available for public inspection . . . all

records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i).

The Virginia Code provides that general registrars shall cancel the registrations of all persons who are known not to be U.S. citizens by reasons of report from the Department of Motor Vehicles (DMV) or from the Department of Elections (ELECT) based on information received from the Systematic Alien Verification for Entitlements Program (SAVE). Va. Code § 24.2-427(B)(iii). Virginia law also requires the DMV to provide to ELECT on a monthly basis a list of people "who have indicated a noncitizen status." Va. Code § 24.2-410.1(A).

On August 7, 2024, the beginning of the Quiet Period for the 2024 General Election, Governor Youngkin announced Executive Order 35 (E.O. 35), which mandates an escalation of the list maintenance procedures established by the Virginia Code. ECF No. 26-4. E.O. 35 directs the DMV to "expedite the interagency data sharing with [ELECT] of noncitizens by generating a daily file of all non-citizens transactions." *Id.* at 4. ELECT is then required to make daily updates to the voter rolls by comparing "the list of individuals who have been identified as non-citizens to the list of existing registered voters[.]" ECF No. 26-4 at 3-4. Defendants also have described an "*ad hoc*" review purported to remove, after applying a SAVE search, voters who indicated citizenship in a DMV transaction but also had noncitizen documents on file. ECF No. 92-1 at 5.

Once ELECT has identified these alleged noncitizens, ELECT sends the data to county registrars. Once ELECT notifies a registrar that a registered voter is allegedly a noncitizen, the registrar performs no additional citizenship check—the registrar verifies only that the purported noncitizen is the same person as the one listed on the voter rolls. ECF No. 26-5 at 35-36. Indeed, Virginia law does not allow registrars to conduct any further inquiry into the individual's

citizenship status.[2] When there is an identity match, the registrar, as directed by ELECT, sends a letter to "notify any matches of their pending cancellation unless they affirm their citizenship within 14 days" of sending the notice and ultimately cancels the voter's registration if the registrar's office does not receive this affirmation. ECF No. 26-4 at 4; *see also* Va. Code § 24-2-427(B)-(C); ECF No. 120 at 10. The registrar can manually cancel the recipient's registration starting 14 days from the date the letter was mailed by the registrar. *Id.* The person is automatically canceled and removed from the voter rolls by the Virginia Election and Registration Information System (VERIS) after 21 days. *Id.* As a result of the Purge Program, many registrants with contradictory indicators of citizenship were automatically subjected to the removal process. ECF No. 26-4 at 4; ECF No. 182 ¶ 51. From the start of the pre-election Quiet Period on August 7, 2024 until October 21, 2024—the date on which Defendants provided the Purge List to Plaintiffs—over 1,600 voters were purged. *See* ECF No. 110-1.

The Purge Program also directs counties to refer voters removed for alleged noncitizenship to Commonwealth Attorneys for criminal investigation and potential prosecution. ECF No. 26-4 at 4. Some counties have also referred those voters to Defendant Attorney General Miyares, who has authority under statute to decide whether to take action regarding ELECT referrals. Va. Code §§ 24.2-404.4, 24.2-104, 24.2-104.1.

## II.    Procedural Background

On October 7, 2024, Plaintiffs filed their complaint challenging Defendants' administration of an ongoing program to remove certain Virginia voters from the rolls and their refusal to provide information regarding the program. *See* ECF No. 23. Plaintiffs allege that Defendants'

---

[2] Defendants have conceded no further inquiry is conducted. *See, e.g.*, Emergency Application for Stay at 7, *Beals v. Va. Coal. for Immigrant Rts.*, No. 24A407 (U.S. Oct. 28, 2024); ECF No. 119 at 95-97; ECF No. 92-1 at 2; Va. Code § 24.2-427(C).

administration of the Purge Program violates several provisions of the NVRA, including provisions governing voter list maintenance and the public disclosure of related records. ECF No. 182 ¶¶ 87-99.

On October 15, 2024, Plaintiffs moved for a preliminary injunction. ECF No. 26. After a hearing, this Court found that Plaintiffs suffered irreparable harm from Defendants' Program, which "curtailed the right of eligible voters to cast their ballots in the same way as all other eligible voters," ECF No. 120 at 20:6-8, and enjoined Defendants from "continuing any systemic program intended to remove the names of ineligible voters from registration lists less than 90 days before the November 5, 2024, federal General Election." ECF No. 112 at 2. The Fourth Circuit denied stay pending appeal, concluding that Defendants' Purge Program constitutes a "program" that "most certainly is" systematic, and that at least some "eligible citizens have had their registrations canceled and were unaware that this was even so." *See Va. Coal. for Immigrant Rts. v. Beals*, No. 24-2071, 2024 WL 4601052, at *1-2 (4th Cir. Oct. 27, 2024) (internal quotations omitted). On October 30, 2024, the Supreme Court granted Defendants' motion for stay. *Beals v. Va. Coal. for Immigrant Rts.*, No. 24A407, 2024 WL 4608863, slip op. at 1 (U.S. Oct. 30, 2024) (mem.).

On November 21, 2024, Defendants filed their first Motion to Dismiss and a Memorandum in Support of that motion. ECF Nos. 121, 122. On August 12, 2025, this Court denied in part and granted in part Defendants' Motion. ECF No. 153. This Court rejected all of Defendants' jurisdictional arguments, holding that Plaintiffs VACIR, LWVVA, and ACT have organizational standing and associational standing to pursue Counts I, II, and III, and that VACIR and LWVVA have organizational standing to pursue Count IV. ECF No. 153 at 14. This Court also rejected each of Defendants' sovereign immunity arguments as to the Attorney General and the remaining Defendants, holding that Plaintiffs' allegations sufficed to support an action under *Ex parte Young*,

because Plaintiffs sought a prospective remedy for ongoing harm, and that *Ex parte Young* applied to the Attorney General, because he "unambiguously has the authority to enforce the law or practice Plaintiffs challenge." *Id.* at 17-19.

Next, this Court rejected Defendants' Rule 12(b)(6) arguments, except as to Count III. The Court rejected Defendants' argument that Plaintiffs' Quiet Period Provision claim (Count I) was moot, concluding that Defendants' conduct was "capable of repetition, yet evading review." *Id.* at 19-21 (citation omitted). The Court held that Plaintiffs had adequately pled a violation of the Quiet Period Provision, rejecting for a second time in this case Defendants' arguments that the Purge Program was not systematic and Defendants' proposed reading of the Quiet Period Provision. *Id.* at 22-23. This Court also decided that Plaintiffs adequately pled a violation of the NVRA's Uniform and Nondiscriminatory Provision (Count II) by alleging that "naturalized citizens . . . are more likely to have their registrations flagged for cancellation" and that "Defendants' program has a discriminatory impact." *Id.* at 24-26. Finally, the Court held that Plaintiffs sufficiently stated their Public Disclosure Provision claim (Count IV), rejecting Defendants' narrow reading of the Public Disclosure Provision and holding that the claim is not moot, because certain records Plaintiffs requested remained outstanding and the claim "fits the capable of repetition yet evading review exception." *Id.* at 29-32.

On October 1, 2025, Plaintiffs filed a Motion for Leave to File Second Amended Complaint and Add Party Plaintiffs. ECF No. 172-1 at 1-2. On October 17, 2025, this Court granted Plaintiffs' Motion. The Second Amended Complaint adds two individual plaintiffs, Rina Shaw and Genet Shiferaw, and includes updated information on organizational plaintiffs' activities and information that Defendants have (and have not) provided since the First Amended Complaint was filed. ECF No. 182 at 1-2.

On November 6, 2025, Defendants filed their second Motion to Dismiss and a Memorandum in Support of that motion. ECF Nos. 185, 186.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In assessing a 12(b)(6) motion, the Court must "accept[] the plaintiff's allegations as true and draw[] all reasonable inferences in the plaintiff's favor." *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 263 (4th Cir. 2021); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Likewise, under Rule 12(b)(1), "[w]hen a defendant makes a facial challenge to subject matter jurisdiction, . . . the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation modified); *see also, e.g.*, *Evans v. United States*, 105 F.4th 606, 615 (4th Cir. 2024); *Wilson v. Johnson*, 535 F.3d 262, 264 (4th Cir. 2008).

 "As most commonly defined, the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages if the same case." *Columbia Gas Transmission, LLC v. RDFS, LLC*, 148 F.4th 163, 169 (4th Cir. 2025) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988)). The doctrine, which guides courts' discretion to revisit interlocutory orders before entering final judgment, is "a prudent judicial response to the public policy favoring an end to litigation." *Sejman*

*v. Wanter-Lambert Co., Inc.*, 845 F.2d 66, 68 (4th Cir. 1988); *see also Columbia Gas Transmission*, 148 F.4th at 169.

> [T]he law of the case, once established, 'must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal [] unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'

*Al Shimari v. CACI Premier Tech., Inc.*, 684 F. Supp. 3d 481, 491 (E.D. Va. 2023) (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009)). Courts in this district have applied the law of the case doctrine to reject second motions to dismiss which "raise[] identical claims to those rejected" previously. *Deutsche Bank Nat'l Tr. Co. v. Fegely*, No. 3:16-cv-147, 2020 WL 201048, at *4 (E.D. Va. Jan. 13, 2020); *Azalea Spa & Nails Inc. v. Zhang*, No. 1:23-cv-712, 2025 WL 991029, at *1 (E.D. Va. Apr. 2, 2025) (rejecting, under the law of the case doctrine, defendant's second motion to dismiss in which "arguments mirror the arguments raised by Defendant" previously).

## ARGUMENT

### I.    The law of the case doctrine bars Defendants' duplicative arguments.

Defendants' Motion should be denied because, as discussed *infra*, the law of the case wholly snuffs out Defendants' arguments, and none of the exceptions to the law of the case doctrine are met here. Defendants repeatedly ask this court to reconsider conclusions and findings in its ruling on the first Motion to Dismiss. While the law of the case doctrine dictates that courts *may* revisit their decisions when the circumstances require, "as a rule[,] courts should be loathe to do so in the absence of extraordinary circumstances." *Al Shimari*, 684 F. Supp. 3d at 491 (quoting *Christianson*, 486 U.S. at 817). There are no such extraordinary circumstances here. Nor do Defendants even attempt to make such a showing; the law of the case doctrine appears in a *single*

*sentence* of Defendants' Motion, ECF No. 186 at 8, and Defendants neither identify nor apply the exceptions to the law of the case doctrine.

*First*, there has been no subsequent trial producing substantially different evidence. Even if this Court were to consider evidence outside of a subsequent trial, which Defendants seem to encourage by gesturing at new facts in the Second Amended Complaint and the fact of Governor-elect Spanberger's recent election, none of those facts change the core of the Court's analysis in its prior denial of Defendants' Motion to Dismiss.

*Second*, there has been no change in controlling authority that would justify reversing course. Defendants seem to attempt to argue for this exception for the Quiet Period Claim, relying on "six judges on the Ninth Circuit" who recently adopted Defendants' reading of the Quiet Period Provision. *See* ECF No. 186 at 19. But those six judges, apart from being in a circuit which does not provide controlling authority to this Court, were writing to *dissent* from the Ninth Circuit's vote, *not* to rehear *en banc* a Ninth Circuit panel's *rejection* of Defendants' interpretation of the Quiet Period Provision. The Ninth Circuit panel held that a purge program like Defendants', that was purportedly aimed to remove non-citizens, was "precisely the type of systematic cancellation program that the 90-day Provision was meant to preclude." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 717 (9th Cir. 2025). Therefore, rather than providing a contrary decision of law, *Mi Familia Vota* further *supports* this Court's holding. Absent any change in controlling authority, Defendants are merely re-raising their rejected jurisdictional arguments in substantially the same form and duplicating their prior rejected assertions that Plaintiffs insufficiently pled Counts I, II, and IV.

*Third*, this Court's prior decision was not clearly erroneous and would not work manifest injustice. In this context,

> for a prior decision of this Court to be 'clearly erroneous,' it cannot be 'just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old,

unrefrigerated dead fish.' . . . That is, in order for this exception to apply, the prior decision must be 'dead wrong.'

*Fusaro v. Howard*, 19 F.4th 357, 367 (4th Cir. 2021) (*quoting TFWS, Inc.*, 572 F.3d at 194). Once again, Defendants' repetition of old arguments and mere disagreement with this Court's well-reasoned and supported holdings do not meet this high bar.

This Court should decline Defendants' invitations to reconsider its prior rulings and reject Defendants' Motion to Dismiss the Second Amended Complaint, because the law of the case requires it.

## II. Plaintiffs' claims are not jurisdictionally barred.

### A. This Court correctly held that the Organizational Plaintiffs have Article III standing.

Defendants provide no reason for this Court to depart from its prior holding that Plaintiffs VACIR, LWVVA, and ACT have both organizational and associational standing. Defendants largely attempt to revive arguments made in their first Motion to Dismiss. Defendants do not substantively challenge causation or redressability, focusing their arguments on whether Organizational Plaintiffs have suffered an injury in fact for organizational standing or made a sufficient showing for associational standing. *See* ECF No. 186 at 8-14. Curiously, Defendants appear to argue that the passage of time, in which Plaintiff Organizations' injury has continued and compounded, and the Second Amended Complaint's more specific pleadings, which identify by pseudonym organizational members threatened by the Purge Program, undermine Plaintiff Organizations' standing claims. ECF 186 at 9-12. But those assertions are baseless, and the Court should reject Defendants' arguments for the same reasons it did previously. ECF No. 153 at 7-14.

As this Court and the Fourth Circuit have already held, Plaintiffs have established organizational standing. This Court should once again reassert its interpretation and application of *Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982); *FDA v. Alliance for Hippocratic*

*Medicine* ("*AHM*"), 602 U.S. 367 (2024); and *RNC v. North Carolina State Board of Elections*, 120 F.4th 390 (4th Cir. 2024).

Rather than abrogating *Havens Realty* in the way Defendants imagine, *see* ECF No. 186 at 11-13, *AHM* in fact expressly re-affirmed the core of *Havens Realty*: that plaintiff organizations have standing when a defendant's actions "perceptibly impair[]" their core organizational activities "with the consequent drain on the organization's resources." *Havens Realty*, 455 U.S. at 379; *see AHM*, 602 U.S. at 395. The *AHM* plaintiffs alleged only that they had incurred costs by "advocat[ing] against the defendant's actions," *AHM*, 602 U.S. at 394, but not that those actions "imposed any similar impediment" to their core organizational activities, *id.* at 395. The *AHM* Plaintiffs were just "concerned bystanders" without a concrete stake in the dispute. *Id.* at 382. In other words, *AHM* merely clarified that, absent an impairment of core organizational activities as in *Havens Realty*, plaintiffs had done nothing more than "assert standing simply because they object to [defendant's] actions." *Id.* at 394.

*RNC v. North Carolina State Board of Elections* foreclosed Defendants' reading of *AHM* and remains "squarely on point." ECF No. 153 at 10-12. In *RNC*, the Court explained that alleged non-compliance with a federal voter-registration law "directly affected and interfered with" the core organizational activities of "counseling interested voters and volunteers on election participation," because the alleged inaction forced plaintiffs to "divert significantly more of their resources into combatting election fraud" and "frustrated their organizational and voter outreach efforts." *RNC*, 120 F.4th at 397, 410 (internal citations and quotation marks omitted). Considering *AHM*, the Fourth Circuit distinguished between an "uncompelled choice to expend resources" "not [made] in response to a threat to the organization's core mission," which cannot establish standing, and resource expenditures necessary to continue conducting core organizational activities—the

11

kind of expenditures made by Organizational Plaintiffs here—which can. *Id.* at 396-97. Defendants assert that *RNC* stands for the proposition that organizations may have standing to challenge only "a law that directly harms its *already existing* activities" and claim that Plaintiffs have made no such allegations. ECF No. 186 at 13-14. But this Court already rejected Defendants' reading of *RNC* ("The Fourth Circuit required no more than what Plaintiffs allege here to establish organizational standing for the *RNC* plaintiffs." ECF No. 153 at 11) and furthermore found that Plaintiffs have satisfied even that reading ("Even if the test required Plaintiffs to allege direct harm to pre-existing core activities, Plaintiffs have sufficiently alleged that Defendants' program has stymied their 'organizational and voter outreach efforts' because they have to re-train staff and volunteers and expend more resources encouraging and educating voters on how to check their registration." *Id.*).

This Court correctly found that Plaintiff Organizations have themselves suffered redressable injuries, because "Defendants' violations of the NVRA impair their core mission of providing voting counseling, voter outreach, among other initiatives, which consequently force them to divert their resources to re-register voters." ECF No. 153 at 10-11. Plaintiffs' updated allegations about how the Purge Program continues to "directly affect[] and interfere[] with" their core organizational activities, *AHM*, 602 U.S. at 395, reinforce, rather than undercut, this Court's prior holding that Plaintiff Organizations have organizational standing to challenge the Purge Program.

As this Court previously held, Plaintiffs also have associational standing, because at least one member has standing in their own right, and organizations have standing to sue on behalf of their members. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. Inc.*, 528 U.S. 167, 181 (2000). Evidence shows that least one member of Plaintiff League of Women Voters of Virginia,

who does not wish to be named, appeared on the Purge List and was removed from the voting rolls pursuant to Defendants' Purge Program.[3] ECF No. 103-1 (Suppl. Porte Decl.) ¶¶ 3-5; see ECF No. 103 at 16. Even Defendants do not contest that a purged voter, whose fundamental right to vote has been directly impaired by removal from the voter rolls and referral for investigation, would undoubtedly have standing. And at no point—not during the preliminary injunction proceedings, not in their first Motion to Dismiss briefing, and not in their second Motion to Dismiss briefing—have Defendants challenged the Supplemental Porte Declaration's confirmation that a LWVVA member was purged.

The naturalized-citizen members in Plaintiff Organizations' ranks, including those pseudonymously named in the Second Amended Complaint,[4] further bolster associational standing, because those members also face threatened harm—such as removal from the voter rolls and referral for investigation—due to the Purge Program. *See* ECF No. 182 ¶¶ 23, 25, 31, 34, 36. Indeed, the Eleventh Circuit recognized that the "risk of false positives and mismatches" in voter registration removals creates a "realistic danger" that Plaintiff Organizations' naturalized-citizen members will be erroneously swept up by such programs. *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1342 (11th Cir. 2014). Nor is this harm speculative: both the mechanism of harm—errors and mismatches—and the threatened result—purging naturalized citizens—are actually occurring and entirely traceable to Defendants' actions. See ECF No. 26-1 at 17-19; ECF No. 26-2 at 4, 7-9; *see also Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1163-64 (11th Cir. 2008)

---

[3] Given that Plaintiffs brought this suit in part to protect their members from Defendants' threats of prosecution and attendant intimidation, *see* ECF No. 182 ¶¶ 5, 23, 27, 31, 36, it is unsurprising that affected individuals do not wish to be identified by name.

[4] Plaintiffs can provide the full names of these naturalized citizen members to Defendants pursuant to a protective order if necessary. Defendants have previously indicated that they are open to the same. *See* ECF No. 119 at 11:5-12.

(distinguishing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), on that basis in the context of a similar voter purge program). This harm and the naming of naturalized-citizen members experiencing it confer associational standing on behalf of these members and, therefore, extinguish Defendants' arguments that Organizational Plaintiffs have not identified specific members.

In any event, this Court correctly determined, and Defendants have provided no reason to disturb this Court's holding, that "at this stage, it is not necessary that an organizational plaintiff alleging associational standing disclose the identity of the specific member that was harmed so long as they allege a sufficient injury to a member." ECF No. 153 at 14. Organizational Plaintiffs therefore also have established associational standing.

Finally, this Court found and Defendants do not appear to challenge anew that Plaintiffs VACIR and LWVVA have established organizational standing for Count IV. ECF No. 153 at 14-15. Plaintiffs VACIR and LWVVA submitted the notice they sent to Defendants regarding Defendants' failure to comply with the statute along with responsive documents. ECF No. 26-16 ¶¶ 17, 20. Because the NVRA requires such disclosure, Plaintiffs VACIR and LWVVA have suffered an injury in fact and have standing for their Public Disclosure Provision claim.

### B.      The Individual Plaintiffs have Article III standing.

To start, this Court need not consider Defendants' arguments about Individual Plaintiffs' standing, because Organizational Plaintiffs have standing to seek each form of relief requested. When there are multiple plaintiffs in a suit, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017). Once the Court has determined at least one plaintiff has "standing to seek each form of relief requested in the complaint . . . it is unnecessary to consider the other plaintiffs." *N. Va. Hemp and Agriculture, LLC v. Virginia*, 125 F.4th 472, 491 (4th Cir. 2025); *see also, e.g.*,

*Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 53 n.2 (2006); *Carolina Youth Action Project; D.S. by & through Ford v. Wilson*, 60 F.4th 770, 778 (4th Cir. 2023). This Court has already correctly determined that Organizational Plaintiffs have standing to pursue each claim. ECF No. 153 at 14-15. The Court's analysis can end there.

Regardless, the Individual Plaintiffs do have standing. A Plaintiff establishes standing by showing they suffered an "injury-in-fact" that was caused by the Defendant and that the Court can redress. *AHM*, 602 U.S. at 380. Ms. Shiferaw and Ms. Shaw have sufficiently alleged that they are "U.S. citizens who were erroneously purged by Defendants' Purge Program." ECF No. 182 ¶ 12. Ms. Shiferaw has further alleged that the harm to her is directly traceable to the fact that she is a naturalized citizen. ECF No. 182 ¶¶ 39-41. Defendants' program "flags registrations for cancellation who have indicated that they *may have been* a non-citizen at some point but otherwise attested to being a citizen," ECF No. 153 at 25 (emphasis in original), and Ms. Shiferaw has clearly alleged that her registration would carry that indication because "[p]rior to naturalization, Ms. Shiferaw self-identified as a noncitizen when she obtained a Virginia resident identification card." ECF No. 182 ¶ 39. With the benefit of full discovery, Plaintiffs will have more certainty as to when and why both Ms. Shiferaw and Ms. Shaw were removed from the voter rolls, but Plaintiffs' allegations are sufficient to survive Defendants' Motion.[5]

Defendants' assertions that the Individual Plaintiffs lack standing conflate standing and mootness, and they are wrong on either account. ECF No. 186 at 14-15. Defendants seemingly do not contest that Individual Plaintiffs were injured by being purged from the voter rolls in the 2024

---

[5] Defendants also object that Ms. Shiferaw makes no specific allegation that she was removed within the Quiet Period. But Ms. Shiferaw has challenged the Purge Program both as it may have been or may in the future be applied to systematically remove her within the Quiet Period *and* because it is nonuniform and discriminatory in violation of the NVRA no matter when she may have been or may in the future be removed.

election cycle. ECF No. 186 at 14. Indeed, the "right to vote is 'the most basic of political rights,' . . . such that the government's interference with that right may satisfy the injury-in-fact requirement." *Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009) (internal citation omitted) (quoting *FEC v. Akins*, 524 U.S. 11, 25 (1998)). Instead, they claim that Plaintiffs' past injury cannot support standing to seek prospective injunctive relief. However, this Court has already addressed this argument, and Individual Plaintiffs' allegations fall squarely within the "capable of repetition yet evading review" exception to mootness. ECF No. 153 at 20-21. Where, as here "repeated conduct is before the court in the present, the prospect of future repetition becomes all the more likely." *Sharma v. Hirsch*, 121 F.4th 1033, 1039 n.1 (4th Cir. 2023). The Court's prior findings are consistent with this. In discussing the impacted LWVVA member, the Court found that it was "not persuaded by Defendants' self-serving and circuitous argument that because the member voted in the past 'without an issue' makes the likelihood that the same harm will recur speculative." ECF No. 153 at 21. Likewise, with Ms. Shaw and Ms. Shiferaw, "[a]ccepting Plaintiffs' allegations as true, Defendants offer no reason why, if Defendants were to renew their program before a subsequent federal election cycle, the program would not affect th[ese] same [voters] again." *Id.*; *see also, id.* at 21 n.7 ("Defendants offer no explanation for why Plaintiff LWVVA's member would be removed only in this cycle or any reason to believe that the problem would not recur in a subsequent cycle."); *infra* Part II.C.

Individual Plaintiffs also have standing because they face a credible threat of future enforcement of the Purge Program against them. Plaintiffs may bring pre-enforcement challenges to laws where they allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. Farm*

*Workers Nat. Union*, 442 U.S. 289, 298 (1979)). *Driehaus* held that a pro-life organization alleged a credible threat of enforcement where the organization's intended future conduct was "'arguably . . . proscribed by [the] statute' they wish[ed] to challenge" and the State previously enforced the statute against similar conduct. 573 U.S. at 162-67 (quoting *Babbitt*, 442 U.S. at 298). So too here. Ms. Shaw and Ms. Shiferaw have alleged an intention to vote in future election cycles—conduct which certainly affects a constitutional interest—and face a credible threat of enforcement under the Purge Program, as evidenced by their experiences being purged in the 2024 cycle and the significant evidence that purged voters have been removed from the voter rolls repeatedly. ECF 182 ¶¶ 37-41, 60-61. That threat is especially acute because it carries the threat of criminal investigation and prosecution of individuals who vote unlawfully. ECF No. 153 at 18; *Driehaus*, 573 U.S. at 165.[6]

The Individual Plaintiffs have alleged injury-in-fact capable of repetition yet evading review, as well as a credible threat of enforcement sufficient to establish standing at this stage of litigation.

### C.    This Court correctly held that Plaintiffs' Quiet Period Provision claim is not moot.

Defendants incorrectly contend that Plaintiffs' Quiet Period Provision claim is moot, since the 2024 elections are over. *See* ECF No. 186 at 15-16. Though the 2024 elections have indeed passed, Defendants have repeatedly asserted that they have removed voters during the 90-day periods prior to federal elections for many years and election cycles. *See* ECF No. 122 at 2; ECF No. 186 at 4. Thus, Plaintiffs challenge a longstanding and ongoing policy of violating federal law,

---

[6] Each element of standing must be proven "with the manner and degree of evidence required at the successive stages of litigation," so "on a motion to dismiss[,] we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889 (1990)).

albeit one that bars action during certain cyclical periods of time. Since Defendants make no claim of cessation of that policy, they cannot reasonably claim mootness simply because we are not presently within a 90-day quiet period. *See, e.g.*, *Commodity Futures Trading Comm'n v. Bd. of Trade of City of Chicago*, 701 F.2d 653, 655 (7th Cir. 1983) (explaining that the passage of the challenged delivery cycle did not moot the case, since Plaintiffs sought "a broader injunction" that would affect future delivery cycles as well).

In any event, this Court correctly held that the "capable of repetition yet evading review" exception applies here as well. ECF No. 153 at 19-22. That exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *FEC v. Wis. Right to Life, Inc.* (*WRTL*), 551 U.S. 449, 462 (2007) (quotations omitted). The Fourth Circuit has explained that "[e]lection-related disputes qualify as 'capable of repetition' when there is a reasonable expectation that the challenged provisions will be applied against the plaintiffs again during future election cycles." *Sharma v. Hirsch*, 121 F.4th 1033, 1039 n.1 (4th Cir. 2024) (quotations omitted). Importantly, the Fourth Circuit has made clear that "reasonable expectation" in this context does not require anything approaching certainty. *See N.C. Right to Life Comm. for Indep. Political Expenditures v. Leake*, 524 F.3d 427, 435-36 (4th Cir. 2008) (quoting *Int'l Org. of Masters, Mates & Pilots v. Brown*, 498 U.S. 466, 473 (1991)). And "the Supreme Court has repeatedly instructed that the exception is especially appropriate when mootness would have otherwise been the result of a completed election cycle." *Id.*; *see also Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011); *N.C. Right to Life*, 524 F.3d. That exception unmistakably applies here, because there is a reasonable expectation that Plaintiffs will suffer injury during future

18

quiet periods.[7] That standard is easily met here where Defendants have repeatedly argued that the Quiet Period Provision allows the Program to continue during the quiet period; they have not offered to halt purges during future quiet periods; and the accelerated purge required by E.O. 35 is ongoing.

Defendants newly assert that this month's election lessens the risk of future harm and divests this Court of jurisdiction. This is not so. The Defendants claim that "it is wholly speculative" whether Governor-elect Spanberger will leave the Purge Program in place. But Defendants misunderstand what the "capable of repetition yet evading review" exception requires. The concern in these cases is "whether the controversy was *capable* of repetition and not . . . whether the claimant ha[s] demonstrated that a recurrence of the dispute was more probable than not." *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988) (emphasis in original). Predicting political futures is an "inexact science at best." *See id.* at 321 (holding possibility that school officials may adapt IEPs to mitigate disruptive student conduct giving rise to injury was too inexact make recurrence improbable). This Court should not guess as to what actions a future Governor may take. Moreover, even if Governor-elect Spanberger rescinds E.O. 35, a possibility for which Defendants provide no proof, a statute still requires some version of the Program to be carried out. Va. Code § 24.2-410.1(A). And it is entirely possible that, even if the General Assembly also wanted to change that statute and the Governor-elect wanted to sign that change into law, that may not be done before

---

[7] Defendants do not dispute that the "challenged action [was] in its duration too short to be fully litigated prior to cessation or expiration," *WRTL*, 551 U.S. at 462, and the Fourth Circuit has not focused on the duration inquiry in election-related cases. *See Sharma*, 121 F.4th at 1039 n.1; *Lux*, 651 F.3d at 401. Even if it were relevant here, there is no question that the duration of Defendants' action during the previous 90-day quiet period was too short to be fully litigated. *See Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 165 (4th Cir. 2021) ("Notably, the Supreme Court has found a period of as long as two years too short to complete judicial review in the context of the exception for wrongs capable of repetition yet evading review.").

the next quiet period. But ultimately these hypotheticals are, to borrow a phrase from Defendants, "wholly speculative" and do nothing to moot Plaintiffs' claims. Any extension of the Purge Program into the next quiet period will harm Plaintiffs in all the ways Plaintiffs were harmed by the previous quiet period purge, including their organizational harms and the harms to their members. *See* Part II.A., *supra*. Plaintiffs' Quiet Period claim is not moot.

**D.    This Court correctly held that Defendants are proper parties to this lawsuit.**

As this Court has repeatedly found, Defendants remain proper parties this this lawsuit. Under *Ex parte Young*, when a plaintiff seeks injunctive relief to remedy an ongoing violation of federal law and names as defendant a state official who has "some connection" to enforcement of the challenged law, the state official is not entitled to sovereign immunity. 209 U.S. 123, 158, 161 (1908). In determining whether *Ex parte Young* applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)). "[T]he inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Id.* at 646.

Here, the Court has conducted that inquiry, and found that the *Ex parte Young* exception to sovereign immunity applies because, despite Defendants' claims to the contrary, *see* ECF No. 186 at 17, Plaintiffs' Quiet Period Provision claim challenges and seeks prospective relief from an ongoing Purge Program that will continue to improperly remove voters from the rolls within 90 days before every federal election until the Program is enjoined. ECF No. 153 at 15-17; ECF No. 182 ¶¶ 55, 88-89; *id.* at 31 ¶¶ (c), (h), (i), (j), (m). As this Court found, "Defendants' program is neither a one-time event, nor have the removed voters been reinstated" and "[t]o the extent citizens

were systematically removed from these rolls within 90 days of a federal election and have not been restored, reinstating these voters' registrations would be prospective relief which would cure an ongoing violation of federal law." ECF No. 153 at 16-17. "Further, a permanent injunction would prevent voters who were removed and re-registered from being removed all over again ahead of the next federal general election." *Id.* at 17; *see also, e.g.*, *Coakley v. Welch*, 877 F.2d 304, 305, 307 n.2 (4th Cir. 1989) (former state employee's challenge of his termination satisfied *Ex parte Young* because loss of benefits of employment caused ongoing harm and employee requested injunctive remedy of reinstatement); *see also, e.g.*, *CSX Transp., Inc. v. Bd. of Pub. Works*, 138 F.3d 537, 541 (4th Cir. 1998). Defendants all but ignore these findings by this Court and still can cite no comparable case in which a court held that a similarly situated plaintiff had failed to meet *Ex parte Young*'s requirement.

Defendants also once again claim, under the Fourth Circuit's "special relation" test for *Ex parte Young*, that the Attorney General is not a proper party to the lawsuit because he "plays no role in enforcing Va. Code § 24.2-427(C)." ECF No. 186 at 18.  Defendants again "draw the challenged action too narrowly by focusing on whether the Attorney General makes the determination to remove voters from the rolls. After ELECT and the registrars forwards the names of voters who were removed, the Attorney General then chooses whether to investigate and prosecute referrals." ECF No. 153 at 18 (citing Va. Code Ann. §§ 24.2-104, 24.2-1019). This Court correctly held that the Attorney General satisfies the Fourth Circuit's "special relation" test. ECF No. 153 at 18. As the Fourth Circuit explained in *Doyle v. Hogan*, the requisite enforcement authority under *Ex parte Young* can "come from the 'particular act' being challenged, a more general law providing enforcement authority, or 'the general duties of the officer.'" 1 F.4th 249,

255 (4th Cir. 2021) (quoting *Ex parte Young*, 209 U.S. at 157-58). Defendants take issue with the Court's findings but offer no reason why they should be reconsidered.

## III.     Plaintiffs have sufficiently stated their claims.

### A.     Individual Plaintiffs have a cause of action under the NVRA.

Defendants' argument that Plaintiffs do not have a cause of action because they were able to vote in the 2024 election fails, because Defendants misread 52 U.S.C. § 20510(b)(1) and misstate Individual Plaintiffs' claims.

52 U.S.C. § 20510(b)(1) gives "[a] person who is aggrieved" by a violation of the NVRA the ability to bring a civil suit if they provide notice to the relevant state officer and the violation is not corrected within specified time frames. *Id.* § 20510(b)(1)-(2). Defendants contend that the NVRA violations that aggrieved Plaintiffs Shaw and Shiferaw must have been "corrected," because "they were able to cast votes in 2024 and are currently entitled to vote because they are on the voter rolls." ECF No. 186 at 26. But in their NVRA Notice Letters, Plaintiffs Shaw and Shiferaw did not identify their own 2024 purge from the voter rolls as the NVRA violation which they were challenging, but instead challenged the continuing Purge Program as a whole. Ex. A, NVRA Notice Letter on Behalf of Rina Shaw and Genet Shiferaw. There can be no question that Defendants have not corrected that violation and that Plaintiffs Shaw and Shiferaw therefore maintain their cause of action under the plain text of § 20510(b)(2). Defendants provide no case to support a contention that the scope of the NVRA-violative practice being challenged by individuals need be limited to a practice which is continuously aggrieving those individuals. In contrast, courts have allowed NVRA claims by individuals against large-scale practices to move forward even when the individuals' own violations had been "corrected." In *Action NC v. Strach*, voters were deprived of their vote due to an NVRA violation that was subsequently corrected for those voters; the court found that "not only have Individual Plaintiffs alleged sufficient facts to support a

particularized, concrete claim of injury-in-fact when denied their right to vote in 2014, they have also sufficiently alleged that if Defendants are not enjoined into compliance with the NVRA, there is a reasonable expectation they will be so injured in the future." 216 F. Supp. 3d 597, 615 (M.D.N.C. 2016). Plaintiffs Shaw and Shiferaw here are in a similar situation in which they have been restored to the voter rolls for now, but their initial purge was still an injury that they have a reasonable expectation will recur. And, despite the fact that the injury they have suffered did not amount to full vote denial, "[a] plaintiff need not have the franchise wholly denied to suffer injury. Any concrete particularized, non-hypothetical injury to a legally protected right is sufficient." *Id.*

*Arizona v. Inter Tribal Council of Arizona, Inc.* is also instructive; in that case, the trial court found individual plaintiffs had a cause of action against a law requiring proof of citizenship to register to vote, even though they had the necessary paperwork to register and vote in person on election day. *Gonzalez v. Arizona*, No. 06-cv-1268, 2008 WL 11395512, at *9-10 (D. Ariz. Aug. 20, 2008), *aff'd in part rev'd in part on other grounds by* 570 U.S. 1 (2013). The NVRA is simple: if a party is injured by the State's failure to follow the NVRA, reasonably expects to be injured again, and provides proper notice, they may sue so long as the State continues to violate the NVRA. Defendants' attempt to smuggle a mootness challenge into the text of the NVRA is unavailing.

### B. This Court correctly held that Plaintiffs have sufficiently stated that Defendants systematically purged voters in violation of the Quiet Period Provision in the NVRA.

Plaintiffs have alleged facts sufficient to show that Defendants have engaged in a systematic Purge Program impacting persons protected by the NVRA. As this Court has already found, Defendants' Program is systematic, is not based on individualized determination, and has resulted in the improper removal of eligible voters from the voter rolls. ECF No. 120 at 14-17. All of this is clearly laid out in the operative complaint. ECF No. 182 ¶¶ 8-11, 64. Thus, under the NVRA's Quiet Period Provision, Plaintiffs have included "sufficient factual matter, accepted as

23

true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation and quotations omitted). For the purposes of this Motion, it is unnecessary to again rebut all of Defendants' statutory arguments, but those arguments still lack merit.

>    **i.    This Court correctly held that Defendants' removals within 90 days of the election were systematic.**

As the Fourth Circuit and this Court have both concluded, the Purge Program is systematic: it "does not require communication with or particularized investigation into any specific individual. Rather, the inclusion of a person's name on a list electronically compared to other agency databases is enough for removal from the voter rolls." *VACIR v. Beals*, 2024 WL 4601052, at *1-3; ECF No. 23 ¶¶ 39-43; ECF No. 153 at 21-22. Defendants appear to assert once again that because they initially collect data from individual transactions, any subsequent data matching process should be considered individualized. ECF No. 186 at 24-26. But as the Second Amended Complaint alleges, the Purge Program systematically selects voters for removal based on a mass database matching exercise. ECF No. 182 ¶¶ 47-51. Defendants' Program amounts to "simply checking data fields, matching in mass." ECF No. 120 at 16.[8]

As this Court noted, Plaintiffs have alleged that "Defendants' program does not require communication with or particularized investigation into any specific individual[.]" ECF No. 153 at 22 (citing *VACIR*, 2024 WL 4601052, at *1) (internal quotations omitted). The Fourth Circuit previously affirmed in this litigation that "[a] process is systematic if it uses a 'mass computerized data-matching process' to identify and confirm names for removal without 'individualized information or investigation.'" *VACIR*, 2024 WL 4601052, at *1 (quoting *Arcia*, 772 F.3d at 1344). Moreover, courts have uniformly held that mass mailing to affected voters does not make the

---

[8] Defendants concede that they perform no individualized investigation into the citizenship status of removed individuals. *See* ECF No. 120 at 16; ECF No. 122 at 33; ECF No. 186 at 24-25. The only process resembling individualized investigation is limited to identification purposes. *Id.*

process "individualized." *See, e.g.*, *Arcia*, 772 F.3d at 1344; ECF No. 91-1 at 9; *N.C. State Conference of the NAACP v. N.C. State Bd. of Elections*, No. 1:16-CV-1274, 2016 WL 6581284, at *6-7 (M.D.N.C. Nov. 6, 2016). Plaintiffs' allegations that Defendants are using a computerized data matching system and mailing system to purge voters without individualized investigation is sufficient at this stage of litigation.

> ### ii.    This Court correctly held that the Quiet Period Provision protects the voters removed by Defendants' Purge Program.

Defendants unavailingly raise the proposed statutory interpretation of the Quiet Period Provision that they presented to this Court—and that was rejected by this Court—twice before on the Motion for Preliminary Injunction and in their first Motion to Dismiss. ECF No. 122 at 24; ECF No. 153 at 22. And for the third time, the Defendants' argument "violates basic principles of statutory construction by focusing on a differently worded statutory provision that is not at issue here and proposing a strained reading of the Quiet Period Provision to avoid rendering that other provision absurd or unconstitutional." *VACIR*, 2024 WL 4601052, at *1.

The plain language of the Quiet Period Provision states in simple terms that programs like Defendants' are prohibited: "A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A). As this Court noted, "the only exceptions" to that prohibition include removals at "the request of the registrant," "by reason of criminal conviction or mental incapacity," or due to "the death of the registrant." ECF No. 120 at 14. The Quiet Period Provision is designed not to protect ineligible voters—be they noncitizens or nonresidents—but the eligible voters ensnared in systematic list maintenance prior to an election. *See* 52 U.S.C. § 20507. As Plaintiffs have alleged, the Purge Program is a "program" that "systematically removes" the names of both

eligible and ineligible voters from the voter rolls within the meaning of § 20507(c)(2)(A), and no exceptions apply. ECF No. 182 ¶¶ 2-8.

Defendants' suggested reading of the Quiet Period Provision remains "inconsistent with Congress' intent" to protect eligible voters from erroneous last-minute purges and indeed would circumvent that purpose entirely. ECF No. 120 at 17. Defendants argue again that, because the NVRA's General Removal Provision prohibits removal of "registrants" unless an enumerated exception applies and because none of those exceptions relate to noncitizenship, the term "registrants" and the Quiet Period Provision's separate reference to "ineligible voters" cannot be read to include noncitizens. See ECF No. 186 at 20-23; 52 U.S.C. § 20507(a)(3). However, no court or state, including the parties and courts in this case, has concluded that the NVRA disallows states from ever removing noncitizens. And Congress' decision to use different words in the Quiet Period and General Removal provisions is a strong reason to conclude that they should be given different meanings. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024).

Furthermore, Defendants' reading of the NVRA would permit states to remove any eligible citizens so long as the states used the correct pretense of suspected noncitizenship or any other category that fits Defendants' "*ab initio*" construction. ECF No. 186 at 20. This statutory construction has been rejected by this Court, the Fourth Circuit, and established jurisprudence in the federal courts. *See* ECF No. 120 at 17-18; *VACIR*, 2024 WL 4601052; *Arcia*, 772 F.3d at 1348; *Mi Familia Vota v. Fontes*, 129 F.4th 691, 717 (9th Cir. 2025); *Ala. Coal. for Immigrant Justice v. Allen*, No. 2:24-cv-1254, 2024 WL 4510476 (N.D. Ala. Oct. 16, 2024).

Defendants point to the Supreme Court's reiteration that lower courts should heed its rulings as reason to reassess the Court's previous opinion. ECF No. 186 at 24 (citing *Trump v. Boyle*, 145 S. Ct. 2653 (2024); *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658,

2663 (2024) (mem.) (Gorsuch, J., concurring in part)). But, as this Court noted, the Supreme Court did not provide any reasoning for its stay. ECF No. 153 at 23 (citing Order Granting Stay, *Beals v. VACIR*, No. 24-2071 (U.S. Oct. 30, 2024)). This Court was right to "decline[] to overread the Supreme Court's decision" in August, and nothing has changed between then and now. *Id.* Twice, this Court has rejected Defendants' "tortured reading." *Id.* at 23. It should do so again here.

    **C.**    **This Court correctly held that Plaintiffs have sufficiently pled that the Defendants' Purge Program is nonuniform and discriminatory in violation of the NVRA.**

This Court previously held that Plaintiffs have stated a plausible claim for relief on their claim that the Purge Program is nonuniform and discriminatory in violation of 52 U.S.C. § 20507(b)(1). ECF No. 153 at 24-25; *see* ECF No. 23 ¶¶ 2, 9, 14, 55-71, 83. It should so do again now. "The NVRA reflects the view of Congress that the right to vote 'is a fundamental right,' that government has a duty to 'promote the exercise of that right,' and that discriminatory and unfair registration laws can have a 'damaging effect on voter participation' and 'disproportionately harm voter participation by various groups, including racial minorities.'" *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334 (4th Cir. 2012) (quoting 52 U.S.C. § 20501(a)). The NVRA sought to eliminate nonuniform, discriminatory practices such as "selective purging of the voter rolls" with a specific concern that "[s]uch processes must be structured to prevent abuse which has a disparate impact on minority communities." S. Rep. No. 103-6, at 3, 18 (1993); *see also* H.R. Rep. No. 103-9, at 15 (1993). Voter list maintenance programs must accordingly be applied uniformly throughout the jurisdiction and cannot discriminatorily single out specific subsets of voters, such as voters born outside the United States (*i.e.*, naturalized citizens), for purging under the NVRA. 52 U.S.C. § 20507(b)(1).

Plaintiffs have alleged more than enough factual content to allow the Court to draw the reasonable inference that Defendants' Purge Program discriminates based on national origin and

thus also citizenship classification. The Purge Program "by design singles out individuals who were once identified in DMV records as noncitizens and subjects them to scrutiny not generally faced by U.S.-born citizens." ECF No. 182 ¶¶ 78-79; *see also* ECF No. 23 ¶ 69 ("[N]oncitizen designation or transactions in the DMV data are often the sole criterion to trigger voter registration cancellation."). The Program is therefore exactly the sort of discriminatory, selective purge that federal courts have repeatedly held violates the NVRA's Uniform and Nondiscriminatory provision. *See, e.g.*, *Mi Familia Vota*, 129 F.4th at 714 ("The citizenship checks are non-uniform and are discriminatory in effect because it is likely that the properly registered citizens who would be required to respond and provide documentation would be naturalized citizens." (quotations omitted)); *United States v. Florida*, 870 F. Supp. 2d 1346, 1350 (N.D. Fla. 2012) (selective purge that swept in "primarily newly naturalized citizens" likely violated the NVRA's Uniform and Nondiscriminatory requirement). And, because Plaintiffs have alleged facts sufficient to show that the Purge Program classifies individuals on the basis of naturalized citizenship status and national origin, Plaintiffs need not otherwise demonstrate discriminatory intent: such a policy is flatly unlawful under the NVRA. *See, e.g.*, *Florida*, 870 F. Supp. 2d 1346; *Mi Familia Vota*, 129 F.4th at 714.

Defendants' citation to *Husted v. A. Philip Randolph Institute*, 584 U.S. 756 (2018), is inapposite. As this Court found, *Husted* "did not concern the Uniform and Nondiscriminatory Provision of § 20507(b)(l) because 'respondents did not assert a claim under that provision.'" ECF No. 153 at 25-26 (quoting *Husted*, 584 U.S. at 779). "Thus, that case offers no clarity on what Plaintiffs must allege here." *Id.* Plaintiffs, therefore, have sufficiently alleged their Uniform and Nondiscriminatory claim.

**D.    This Court correctly held that Plaintiffs have sufficiently pled that Defendants have violated the Public Disclosure of Voter Registration Activities Provision of the NVRA.**

Defendants attempt to revive their extremely narrow construction of the NVRA's public disclosure provision on the grounds that this Court seemed to "misunderstand[]" their argument. ECF No. 186 at 30. This Court did no such thing. Instead, it correctly rejected Defendants' attempt to construe the provision exceedingly narrowly and render it nugatory. ECF No. 153 at 31. This Court should reject Defendants' arguments once more.

A practical reading of the NVRA, understanding advances in technology since it was enacted, shows that the digital systems Virginia uses for list maintenance are subject to records request claims. Defendants rely on a strained, overly-narrow reading of the NVRA to suggest that Plaintiffs have not properly pleaded their records claim, because they have not included a request to "photocopy" records or to review records via "in-person access to a file room in Richmond." ECF No. 186 at 29. To support their position, Defendants again attempt to rely on *Greater Birmingham Ministries v. Secretary of State of Alabama*, 105 F.4th 1324 (11th Cir. 2024), an out of circuit case that does not create binding precedent. But if Defendants' proposed reading of the NVRA were accepted, the NVRA's public records provision would be rendered useless in the modern age where states rely on digital databases to carry out list maintenance. Moreover, Defendants have not argued (nor could they) that they have made the requested records available for public inspection in lieu of electronic production. As this Court agreed, Defendants' arguments about what means of disclosure would be adequate under the NVRA are therefore premature at the motion to dismiss stage. ECF No. 153 at 31.

The NVRA requires states to disclose "all records" related to any effort by the state to ensure "the accuracy and currency" of voter registration lists. *See* 52 U.S.C. § 20507(i)(1). As the Fourth Circuit has recognized in the context of interpreting the NVRA's public disclosure

provision, "the use of the word all as a modifier suggests an expansive meaning because all is a term of great breadth." *See Project Vote/Voting for Am., Inc.*, 682 F.3d at 336 (citation modified) ("[T]he fact that [Section 8(i)(1)] very clearly requires that 'all records' be disclosed brings voter registration applications within its reach.") (quotations omitted). Consistent with this, numerous courts have concluded that voter databases are subject to the public records disclosure provision, because the information housed in those databases is "the output and end result" of voter list registration and maintenance activities and therefore "plainly relates" to said activities. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 47 (1st Cir. 2024); *see also, e.g.*, *Voter Reference Found., LLC v. Torrez*, 727 F. Supp. 3d 1014, 1218 (D.N.M. 2024); *Pub. Int. Legal Found. v. Chapman*, 595 F. Supp. 3d 296, 306 (M.D. Pa. 2022). This Court, consistent with circuit precedent broadly interpreting the NVRA's public disclosure provision, should once again do the same. Accordingly, the request to dismiss the public records disclosure claim should once again be denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety.

Date: November 20, 2025                    Respectfully submitted,

<table>
<tr><td></td><td>/s/ Shanna Ports</td></tr>
<tr><td></td><td>Shanna Ports (VSB No. 86094)</td></tr>
<tr><td>Ryan Snow*</td><td>Danielle Lang*</td></tr>
<tr><td>Javon Davis*</td><td>Brent Ferguson*</td></tr>
<tr><td>LAWYERS' COMMITTEE FOR CIVIL RIGHTS</td><td>Simone Leeper*</td></tr>
<tr><td>UNDER LAW</td><td>Katherine Hamilton*</td></tr>
<tr><td>1500 K Street, NW, Ste. 900</td><td>CAMPAIGN LEGAL CENTER</td></tr>
<tr><td>Washington, DC 20005</td><td>1101 14th Street NW, Suite 400</td></tr>
<tr><td>(202) 662-8600</td><td>Washington, DC 20005</td></tr>
<tr><td>rsnow@lawyerscommittee.org</td><td>Tel: (202) 736-2200</td></tr>
<tr><td>jdavis@lawyerscommittee.org</td><td>Fax: (202) 736-2222</td></tr>
<tr><td></td><td>sports@campaignlegalcenter.org</td></tr>
<tr><td>Orion Danjuma*</td><td>dlang@campaignlegalcenter.org</td></tr>
<tr><td>John Paredes*</td><td>bferguson@campaignlegalcenter.org</td></tr>
<tr><td>THE PROTECT DEMOCRACY PROJECT, INC.</td><td></td></tr>
</table>

82 Nassau Street, # 601
New York, NY 10038
Telephone: (202) 579-4582
orion.danjuma@protectdemocracy.org
john.paredes@protectdemocracy.org

Benjamin L. Berwick*
THE PROTECT DEMOCRACY PROJECT, INC.
15 Main Street, Suite 312
Watertown, MA 02472
(202) 579-4582
ben.berwick@protectdemocracy.org

Anna Dorman*
THE PROTECT DEMOCRACY PROJECT, INC.
200 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
anna.dorman@protectdemocracy.org

sleeper@campaignlegalcenter.org
khamilton@campaignlegalcenter.org

John Powers*
Hani Mirza*
ADVANCEMENT PROJECT
1220 L Street Northwest, Suite 850
Washington, D.C. 20005
(202) 728-9557
jpowers@advancementproject.org
hmirza@advancementproject.org

*Attorneys for Plaintiffs Virginia Coalition for Immigrant Rights, the League of Women Voters of Virginia, African Communities Together, Rina Shaw, and Genet Shiferaw*

*Admitted pro hac vice*

31

## CERTIFICATE OF SERVICE

I certify that on November 20, 2025, I electronically filed the above document with the Clerk of Court using the ECF system, which will provide electronic copies to any counsel of record.

/s/ Shanna Ports
Shanna Ports