**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **Virginia Coalition for Immigrant Rights, et al.,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| | ) | **Civil Action No. 1:24-cv-01778** |
| **v.** | ) ) | |
| **Susan Beals, in her official capacity as Virginia Commissioner of Elections, et al.,** | ) ) ) | |
| **Defendants.** | ) ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Charles J. Cooper *(Pro Hac Vice)*
Bradley L. Larson *(Pro Hac Vice)*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Defendants Susan Beals, John O'Bannon, Rosalyn R. Dance, Georgia Alvis-Long, Christopher P. Stolle, J. Chapman Petersen, and Attorney General Jason Miyares*

Jason S. Miyares
    *Attorney General*
Kevin Gallagher (VSB #87548)
    *Solicitor General*
Thomas J. Sanford (VSB #95965)
    *Deputy Attorney General*
Graham K. Bryant (VSB #90592)
    *Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.    The law-of-the-case doctrine does not apply ................................................... 2

II.    This Court should dismiss the Second Amended Complaint on threshold grounds........... 5

    A.    Plaintiff Organizations lack standing ................................................................ 5

    B.    The Individual Plaintiffs lack standing and a cause of action ....................................... 7

    C.    The quiet period claim is moot ................................................................ 9

    D.    Sovereign immunity bars several claims, including all claims against the Attorney General ................................................................................................ 11

III.    This Court should dismiss the claims on the merits ......................................... 13

    A.    This Court should dismiss the quiet period claim .......................................... 13

    B.    The "nondiscrimination" claim fails as a matter of law ............................... 16

    C.    This Court cannot rewrite the Public Inspection Provision ......................... 16

CONCLUSION .................................................................................................................. 17

CERTIFICATE OF SERVICE .......................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Shimari v. CACI Premier Tech., Inc.*,
    684 F. Supp. 3d 481 (E.D. Va. 2023) ......................................................................4

*Allen v. Cooper*,
    895 F.3d 337 (4th Cir. 2018) ..............................................................................11

*Allen v. Wright*,
    468 U.S. 737 (1984) ...............................................................................................6

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983) .............................................................................................16

*Arizona v. California*,
    460 U.S. 605 (1983) ...............................................................................................4

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
    570 U.S. 1 (2013) ....................................................................................2, 14, 15

*Askins v. DHS*,
    899 F.3d 1035 (9th Cir. 2018) ..............................................................................3

*Azalea Spa & Nails Inc. v. Zhang*,
    No. 1:23-cv-712, 2025 WL 991029 (E.D. Va. Apr. 2, 2025) ...............................3

*Burdick v. Takushi*,
    504 U.S. 428 (1992) .............................................................................................16

*Carrington v. Rash*,
    380 U.S. 89 (1965) ...............................................................................................14

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .................................................................................................8

*City of Riverside v. McLaughlin*,
    500 US. 44 (1991) .................................................................................................8

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ...............................................................................................9

*Clark v. Martinez*,
    543 U.S. 371 (2005) .........................................................................................4, 13

*Columbia Gas Transmission, LLC v. Ott*,
    984 F. Supp. 2d 508 (E.D. Va. 2013) ................................................................2, 4

*Crowell v. Benson*,
    285 U.S. 22 (1932)........................................................................................4, 13

*Cummings v. Missouri*,
    71 U.S. 277 (1867)..............................................................................................14

*DeBauche v. Trani*,
    191 F.3d 499 (4th Cir. 1999) ..............................................................................11

*Deutsche Bank Nat'l Tr. Co. v. Fegely*,
    No. 3:16-cv-147, 2020 WL 201048 (E.D. Va. Jan. 13, 2020).................................3

*Doyle v. Hogan*,
    1 F.4th 249 (4th Cir. 2021) .................................................................................12

*EEOC v. International Longshoremen's Assoc.*,
    623 F.2d 1054 (5th Cir. 1980) ..............................................................................4

*FDA v. Alliance for Hippocratic Medicine*,
    602 U.S. 367 (2024)..............................................................................................6

*Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)..............................................................................................5

*Gonzalez v. Arizona*,
    No. 06-cv-1268, 2008 WL 11395512 (D. Ariz. Aug. 20, 2008) ............................9

*Greater Birmingham Ministries v. Secretary of State of Alabama*,
    105 F.4th 1324 (11th Cir. 2024) .........................................................................17

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)..............................................................................................6

*King v. Youngkin*,
    122 F.4th 539 (2024)..........................................................................................12

*Krembel v. United States*,
    837 Fed. Appx. 943 (4th Cir. 2020)......................................................................2

*Lane v. Holder*,
    703 F.3d 668 (4th Cir. 2012) ................................................................................7

*Lang v. Patients Out of Time*,
    689 F. Supp. 3d 259 (W.D. Va. 2023) ..................................................................4

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...................................................................................6, 7

*Lux v. Judd*,
    651 F.3d 396 (4th Cir. 2011) ..............................................................10

*McBurney v. Cucinelli*,
    616 F.3d 393 (4th Cir. 2010) ..............................................................12

*Mi Familia Vota v. Fontes*,
    129 F.4th 691 (9th Cir. 2025) ....................................................... *passim*

*Mi Familia Vota v. Fontes*,
    152 F.4th 1153 (9th Cir. 2025) .....................................................2, 4, 13

*Moore v. Flagstar Bank*,
    6 F. Supp. 2d 496 (E.D. Va. 1997) ...................................................5, 6

*North Carolina Right to Life Comm. Fund for Indep. Political Expenditures v. Leake*,
    524 F.3d 427 (4th Cir. 2008) ..............................................................10

*O'Shea v. Littleton*,
    414 U.S. 488 (1974).............................................................................8

*Outdoor Amusement Bus. Ass'n v. DHS*,
    983 F.3d 671 (4th Cir. 2020) ................................................................5

*Pérez–Ruiz v. Crespo–Guillén*,
    25 F.3d 40 (1st Cir. 1994)....................................................................3

*Plotkin v. Lehman*,
    1999 WL 259669 (4th Cir. Apr. 30, 1999) .......................................2, 3

*Republican Nat'l Comm. v. North Carolina Bd. of Elecs.*,
    120 F.4th 390 (4th Cir. 2024) ............................................................6, 7

*Rockwell Int'l Corp. v. United States*,
    549 U.S. 457 (2007).............................................................................7

*Sekhar v. United States*,
    570 U.S. 729 (2013)...........................................................................16

*South Carolina Wildlife Fed'n v. Limehouse*,
    549 F.3d 324 (4th Cir. 2008) ..............................................................12

*Spencer v. Kemna*,
    523 U.S. 1 (1998)...............................................................................11

*Strong Cmtys. Found. of Ariz. Inc. v. Richer*,
    No. CV-24-02030, 2024 WL 4475248 (D. Ariz. Oct. 11, 2024)...........................7

*Thompson v. North American Stainless, LP*,
    562 U.S. 170 (2011).........................................................................................9

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021).........................................................................................6

*United States v. Cuddy*,
    147 F.3d 1111 (9th Cir. 1998) .......................................................................3

*United States v. Florida*,
    870 F. Supp. 2d 1346 (N.D. Fla. 2012)........................................................16

*Verizon Md., Inc. v. Public Serv. Comm'n of Md.*,
    535 U.S. 635 (2002).......................................................................................11

*Walker v. S.W.I.F.T. SCRL*,
    517 F. Supp. 2d 801 (E.D. Va. 2007) ...........................................................4

*Wisconsin Right to Life v. FEC*,
    551 U.S. 449 (2007)..................................................................................8, 10

*Ex parte Young*,
    209 U.S. 123 (1908).......................................................................................1

## Statutes

52 U.S.C. § 20507....................................................................................2, 13, 16, 17

52 U.S.C. § 20510...................................................................................................9

Va. Code § 24.2-104.............................................................................................12

Va. Code § 24.2-404.4..........................................................................................15

Va. Code § 24.2-427.............................................................................................12

## Other Authorities

18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
    (3d ed. 2025) ..................................................................................................3

Robert G. Natelson, *The Original Scope of the Congressional Power to Regulate
    Elections,* 13 U. Pa. J. Constitutional L. 1 (2010). ..................................14

U.S. Const. Art. I, § 4, cl. 1..................................................................................14

Va. Const. art. II, § 1 ................................................................................................................15

# INTRODUCTION

Virginia's process for removing noncitizens from its voter rolls is both lawful and accurate, ensuring that all persons who are eligible to cast a vote can do so while protecting the sanctity of the political process. Despite their repeated attempts over the past year, Plaintiffs have *still* failed to identify any citizen who was denied the ability to vote. Plaintiffs nonetheless attempted to bolster their claims in other ways, but none of them worked.

Plaintiffs' lead argument is that the law-of-the-case doctrine bars this Court from considering Defendants' motion to dismiss. Pls. Opp. to Defs.' Mot. to Dismiss Second Amend. Compl. (Opp.) at 8–10 (ECF No. 189). But they are wrong in three ways. First, the law-of-the-case doctrine does not apply to the denial of a motion to dismiss. Second, even if the doctrine did apply to motions to dismiss generally, multiple exceptions apply to this particular motion. Finally, many of Defendants' arguments have not yet been addressed by the Court because they are based on new allegations in the Second Amended Complaint, new judicially noticeable facts, or new legal authorities.

Without the law-of-the-case doctrine to rely on, Plaintiffs' claims must be dismissed. At the outset, they are jurisdictionally barred. Plaintiffs have still not established standing, and the intervening election only bolsters Defendants' mootness and sovereign-immunity arguments. And the newly added Individual Plaintiffs are not even suffering an injury that would allow them to seek injunctive relief, so their claims cannot rescue the Second Amended Complaint. Nor have Plaintiffs justified why *Ex parte Young*, 209 U.S. 123 (1908), should allow their quiet period claim to proceed now that any violation of that provision is no longer "ongoing."

Even if this Court did have jurisdiction, it should dismiss all three counts. As persuasively explained by Ninth Circuit Judges Bumatay and Nelson, programs targeted at removing

1

noncitizens from the voter rolls fall outside of the Quiet Period Provision's ambit. See *Mi Familia Vota v. Fontes*, 129 F.4th 691, 756 (9th Cir. 2025) (Bumatay, J., dissenting); *Mi Familia Vota v. Fontes*, 152 F.4th 1153, 1166 (9th Cir. 2025) (Nelson, J., dissenting from the denial of rehearing en banc). Noncitizens are not "voters," eligible or otherwise, under the National Voter Registration Act of 1993 (NVRA). 52 U.S.C. § 20507(c)(2)(A). Concluding to the contrary, as this Court did in its first motion-to-dismiss order, ECF No. 153, would render the provision invalid, violating the Constitution's assignment of voter qualifications to the States. See *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013). As a result, if the NVRA has the meaning this Court has previously ascribed to it and as Plaintiffs propose, the statute itself is unconstitutional and cannot be enforced against Defendants.

Plaintiffs' nondiscrimination count also fails to state a claim. 52 U.S.C. § 20507(b)(1). Most significantly, Plaintiffs refuse to engage with the copious evidence that the term "nondiscriminatory" in election law requires only that the law not discriminate on its face. Finally, Plaintiffs attempt to rehabilitate their Public Inspection Provision claims by asking the Court to judicially update that part of the NVRA. But it is the job of Congress, not federal judges, to amend federal statutes.

## ARGUMENT

### I.    The law-of-the-case doctrine does not apply

The law-of-the-case doctrine does not foreclose Defendants' motion to dismiss for three reasons. First, the doctrine does not apply to denials of a motion to dismiss. A denial of a motion to dismiss "does not constitute 'the law of the case' as envisioned by the Fourth Circuit." *Columbia Gas Transmission, LLC v. Ott*, 984 F. Supp. 2d 508, 523 (E.D. Va. 2013); see also, *e.g.*, *Krembel v. United States*, 837 Fed. Appx. 943, 950 (4th Cir. 2020) (recognizing that "denials of motions to dismiss[ ]" do "not constitute the law of the case" (quoting *Plotkin v. Lehman*, 1999 WL 259669

at *1 (4th Cir. Apr. 30, 1999))). And as explained in Wright and Miller's *Federal Practice and Procedure*, "[d]enial of a motion to dismiss may be followed by an order granting dismissal" without violating the law-of-the-case doctrine. 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4478.1 & n.15 (3d ed. 2025).

Other circuits agree. For example, the Ninth Circuit has held that when an amended complaint is filed, any ruling on a motion to dismiss the superseded complaint cannot create law of the case. *Askins v. DHS*, 899 F.3d 1035, 1040–42 (9th Cir. 2018). The amended complaint "is a new complaint, entitling the" parties "to judgment on the complaint's own merits." *Id.* at 1043. To be sure, "[t]he district court may decide the second motion to dismiss in the same way it decided the first," but starting on a blank slate "leaves the district court free to correct any errors or misunderstandings without having to find that its prior decision was 'clearly erroneous.'" *Ibid.* (quoting *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998)). The First Circuit follows the same rule. *Pérez–Ruiz v. Crespo–Guillén*, 25 F.3d 40, 42 (1st Cir. 1994) ("Interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case."); *Plotkin*, 1999 WL 259669, at *1 (adopting *Pérez–Ruiz*).

Plaintiffs muster two unpublished district-court cases where a court applied the law-of-the-case doctrine to a previous denial of a motion to dismiss. Opp. 8 (citing *Deutsche Bank Nat'l Tr. Co. v. Fegely*, No. 3:16-cv-147, 2020 WL 201048, at *4 (E.D. Va. Jan. 13, 2020); *Azalea Spa & Nails Inc. v. Zhang*, No. 1:23-cv-712, 2025 WL 991029, at *1 (E.D. Va. Apr. 2, 2025)). But in neither case did the court explain why the law-of-the-case doctrine applied to an interlocutory ruling, especially given the Fourth Circuit's statements that the doctrine does not apply in that context. Those cases simply got the law wrong, presuming without any analysis that the doctrine applies in this situation. Other, published district court decisions have refused to apply the law-of-

3

the-case doctrine in these circumstances. See, *e.g.*, *Columbia Gas*, 984 F. Supp. 2d at 523; *Lang v. Patients Out of Time*, 689 F. Supp. 3d 259, 265 (W.D. Va. 2023).

Second, even if the law-of-the-case doctrine did apply in this posture, new facts can change the application of previously established principles of law. *Al Shimari v. CACI Premier Tech., Inc.*, 684 F. Supp. 3d 481, 491 (E.D. Va. 2023) (noting that the law of the case doctrine does not apply if the "evidence" changes) (quoting *EEOC v. International Longshoremen's Assoc.*, 623 F.2d 1054, 1058 (5th Cir. 1980))); *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 807 (E.D. Va. 2007). Many new facts are relevant to Defendants' motion to dismiss the Second Amended Complaint, such as the inclusion of uniquely situated individual plaintiffs, and the election of Governor-elect Spanberger and Attorney General-elect Jones. See Mem. in Supp. of Defs.' Mot. to Dismiss Second Amend. Compl. (Mem.) at 14–15, 16 (ECF No. 186). Likewise, the Second Amended Complaint conspicuously omits facts about the anonymous individual in the Porte Declaration, on which this Court previously relied for associational-standing purposes. ECF No. 153 at 12–13.

Third, the law of the case can be set aside if the Court is convinced that the previous decision was clearly erroneous. *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983). Respectfully, as Judges Bumatay and Nelson's dissents persuasively demonstrate, the Court's previous ruling meets that standard. *Mi Familia Vota*, 129 F.4th at 756 (Bumatay, J., dissenting); *Mi Familia Vota*, 152 F.4th at 1166 (Nelson, J., dissenting from the denial of rehearing en banc). And to rule otherwise would render the NVRA itself unconstitutional. See Part II.A, *supra*; cf. *Clark v. Martinez*, 543 U.S. 371, 381 (2005) (The canon of constitutional avoidance "rest[s] on the reasonable presumption that Congress did not intend the alternative [reading] which raises serious constitutional doubts."); *Crowell v. Benson*, 285 U.S. 22, 62 (1932) ("When the validity of an act

of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.").

## II.     This Court should dismiss the Second Amended Complaint on threshold grounds

### A.  Plaintiff Organizations lack standing

The Plaintiff Organizations lack both associational standing and organizational standing. To show associational standing, an association must show that one of its members "would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Outdoor Amusement Bus. Ass'n v. DHS*, 983 F.3d 671, 683 (4th Cir. 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). But here the Plaintiff Organizations' complaint fails to allege facts concerning a member of their organizations that has standing in his or her own right. See *ibid.*

Although this Court previously relied upon a declaration about an anonymous member of the League of Women Voters of Virginia for associational-standing purposes, ECF No. 153 at 12–13, Plaintiffs made a conscious decision to omit allegations about that individual in their Second Amended Complaint. When confronted with the fact that they failed to include the relevant allegations, see Mem. 10–11, Plaintiffs simply ignore the problem. Their response brief attempts to rely on the anonymous member without even acknowledging that doing so would be procedurally improper. At the motion-to-dismiss stage, only allegations in the complaint and documents attached to the complaint may be considered. *Moore v. Flagstar Bank*, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997). The Porte Declaration is neither part of the Second Amended Complaint

nor attached to it. If Plaintiffs wanted to rely on the anonymous member in the Porte Declaration, they needed to add allegations to the complaint or attach a declaration to it.[1] *Ibid.* They did not.

Plaintiffs attempt to substitute in two different pseudonymous members of their organizations—identified only as A.S. and K.V.—for the anonymous individual in the Porte Declaration. See Second Amended Complaint (SAC) ¶¶ 21, 25 (ECF No. 182). But their attempt fails to establish associational standing. Neither of these individuals have suffered *any* injury. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Neither has been removed from the voter rolls, much less removed from the voter rolls within 90 days of a federal election. It is axiomatic that if there is no injury, there is no standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021).

Nor have the Plaintiff Organizations established organizational standing. Organizations can sue to protect their own rights, but they must satisfy the same standing test as individuals, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982), which is substantially more difficult when the organization is not the direct object of the regulation, *Lujan*, 504 U.S. at 562 (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)). Here, each plaintiff organization is making, at most, an "uncompelled choice to expend resources." *Republican Nat'l Comm. (RNC) v. North Carolina Bd. of Elecs.*, 120 F.4th 390, 396 (4th Cir. 2024). And as the Fourth Circuit recently confirmed, an organization cannot "spend its way into standing." *Ibid.* (quoting *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 395 (2024)).

---

[1] The requirement to include allegations in the complaint or in a contemporaneous declaration is not an idle formality. Allowing Plaintiffs to rely on a year-old stale declaration would let them claim standing without having to affirm that the putative anonymous member still has not reregistered to vote.

6

This fact belies Plaintiffs' primary argument in their response brief that this case is actually *akin* to *RNC v. North Carolina Board of Elections*. See Opp. 11–12. Rather, that case recognized that "'mere expense' does not constitute an injury in-fact." 120 F.4th at 396 (quoting *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012)). True, *RNC* held that the RNC had standing to challenge the refusal of North Carolina's State Board of Elections to remove persons who failed to provide "their driver's license number or the last four digits of their social security number on their application" to vote because the failure to strike these people from the rolls would make the RNC's existing voter-integrity efforts more difficult. *Id.* at 398. But the important part of the case, as highlighted by Judge Diaz, was that the policy harmed the RNC "apart" from its "response to that governmental action." *Id.* at 411 (quoting *Strong Cmtys. Found. of Ariz. Inc. v. Richer*, No. CV-24-02030, 2024 WL 4475248, at *8–10 (D. Ariz. Oct. 11, 2024)). Each of the Plaintiff Organizations' alleged harms flows from the alleged reallocation of organizational resources and not from direct harm to their preexisting activities. Thus, they have not established organizational standing.

**B.  The Individual Plaintiffs lack standing and a cause of action**

The two individuals added to this case in the Second Amended Complaint also lack standing. They are suffering no injury whatsoever because they are listed on the voter rolls and may cast a ballot without hinderance. Without an injury at the time they filed the Second Amended Complaint, the Individual Plaintiffs do not have standing. See *Lujan*, 504 U.S. at 561 (standing requires an injury-in-fact).  Plaintiffs' contrary argument is flawed for at least two reasons.

First, Plaintiffs are wrong as a matter of black-letter law when they assert that mootness rather than standing is the best lens to view their justiciability problem. Opp. 15–16. Standing is evaluated at the time the operative complaint was filed—here, the Second Amended Complaint. See, *e.g.*, *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007) (holding that "when

a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction"); *City of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) (evaluating standing "at the time the second amended complaint was filed"). The Second Amended Complaint was filed on November 6, 2025. ECF No. 185. But on November 6, 2025, neither of the Individual Plaintiffs were suffering an injury. Rina Shaw had already called the registrar and had been placed back on the voter rolls over a year earlier. See SAC ¶ 39. And Genet Shiferaw admits that she "used same-day registration" to place herself back on the voter rolls. *Id.* ¶ 40. Because the Individual Plaintiffs lacked an injury on the day the complaint was filed, they lack *standing*. *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).

The Supreme Court has been clear about the difference between standing and mootness in this context. In the seminal case of *City of Los Angeles v. Lyons*, the Court explained that when a short-lived injury has ceased by the time the plaintiff files suit, "the issue . . . is not whether that claim has become moot but whether [he] meets the preconditions for asserting an injunctive claim in a federal forum." 461 U.S. 95, 109 (1983). In other words, the plaintiff's "lack of standing" is what doomed his claim in *Lyons* and what dooms the Individual Plaintiffs' claims here. *Ibid.*

Plaintiffs' misstatement of the law is fatal to their arguments. If mootness were the correct doctrine through which to analyze the Individual Plaintiffs' claims, then they could attempt to take advantage of the capable-of-repetition-yet-evading-review doctrine. *Wisconsin Right to Life v. FEC*, 551 U.S. 449, 462 (2007). But if standing is the right doctrine (as it plainly is), then that exception is unavailable to them. See *Lyons*, 461 U.S. at 109. Without a mootness exception on which to rely, the allegation that the Individual Plaintiffs were removed from the voter rolls sometime in the past cannot give them the ability to sue in federal court. Rather, the Individual Plaintiffs must argue that a *future* injury is sufficiently "imminent" to grant them standing to sue

8

for an injunction. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation marks omitted). It is not. There is no "certainly impending" unlawful harm that will befall them. *Ibid.* (quotation marks omitted). The only plausible injury they could suffer is being mistakenly removed from the voter rolls once again. But the complaint contains no allegations whatsoever that support the conclusion that either Individual Plaintiff will be mistakenly removed from the voter rolls imminently, much less in the 90 days before a federal election.

For largely the same reasons, Plaintiffs also lack a cause of action. The NVRA only allows "aggrieved" parties to sue, and individuals who are not suffering an injury are not "aggrieved." 52 U.S.C. § 20510(b)(1)-(2). In their opposition brief, Individual Plaintiffs contend that they are aggrieved under the NVRA because Virginia continues to remove noncitizens from the voter rolls. Opp. 22. But an "aggrieved" person is a person suffering harm, not a person who has a policy disagreement with the State. See *Thompson v. North American Stainless, LP*, 562 U.S. 170, 176–77 (2011) ("The term 'aggrieved'" must be construed more narrowly than the outer boundaries of Article III."). Allowing any individual to be considered an "aggrieved" party based on that person's objection to a general policy that does not directly affect him would read that requirement out of the NVRA. See *ibid.* And it would also make the cause of action in the NVRA broader than what Article III would allow. See *ibid.* That a single out-of-circuit district court once allowed an NVRA suit after the violation was remedied is immaterial. Opp. 23 (citing *Gonzalez v. Arizona*, No. 06-cv-1268, 2008 WL 11395512, at *9–10 (D. Ariz. Aug. 20, 2008), *aff'd in part rev'd in part on other grounds by* 570 U.S. 1 (2013)). That case conducted no analysis of the word "aggrieved," and the issue was apparently not even raised by the parties.

### C.  The quiet period claim is moot

Even if Plaintiffs could establish a cognizable injury at the time of the complaint to bring their quiet period claim, any claim for injunctive relief to address that injury is now moot. With

the 2024 election in the rear-view mirror, any injury Plaintiffs suffered can no longer be traced to an unlawful act by Defendants (because systematic removals are now undisputedly lawful), nor be redressed by a favorable ruling from this Court (because the 2024 election has come and gone). Their claim is thus nonjusticiable on mootness grounds as well.

Plaintiffs' opposition brief focuses on attempting to show that their injuries and accompanying legal theories fall into the bucket of those capable of repetition yet evading review. Opp. 18–19; see *Wisconsin Right to Life*, 551 U.S. at 462. For a case to be eligible for this exception, however, the *injured party* must show that there exists a "reasonable expectation" that *he* will be subjected to the same harm as before. *North Carolina Right to Life Comm. Fund for Indep. Political Expenditures v. Leake*, 524 F.3d 427, 435 (4th Cir. 2008); *Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011). Plaintiffs cannot make such a showing. First, they have not identified any members of their organizations who have been removed from the voter rolls, and an injury cannot *re*occur if it has not previously occurred at all. Second, even if this Court concludes that the Plaintiff Organizations suffered an injury in fact when they voluntarily diverted resources in response to the removal of noncitizens from the voter rolls within 90 days of the 2024 election, they cannot show that injury is likely to recur. Governor-elect Spanberger will lead Virginia's executive branch when the next federal election and quiet period occur. Nobody knows exactly how the Spanberger administration will implement Virginia's noncitizen removal laws. And to the extent that this Court concludes the Attorney General's actions are relevant, that factor also points toward the case being moot. By the time the next quiet period begins, Attorney General-elect Jones will be in office, and his potential actions to enforce Virginia's election laws are equally speculative.

Plaintiffs dispute whether the election results are relevant by asserting that the "Court should not guess as to what actions a future Governor may take." Opp. 19. On that point, Defendants are in complete agreement. This Court should *not* speculate about whether or when Governor-elect Spanberger will remove, or not remove, noncitizens from the voter rolls, including whether that will occur within 90 days of a federal election. Because Plaintiffs are seeking to take advantage of a mootness exception, they bear the burden of proving their future injury. *Spencer v. Kemna*, 523 U.S. 1, 18 (1998). But they attempt to reverse this burden by claiming that Defendants are the ones asking the Court to speculate. Plaintiffs are suffering no injury today, and so it is *Plaintiffs* who are asking the Court to speculate that the new administration will harm them in the future. It is wholly unclear whether that will happen.

### D. Sovereign immunity bars several claims, including all claims against the Attorney General

For the *Ex parte Young* exception to a State's sovereign immunity to apply, the plaintiff must properly allege that he is suffering an injury from the defendant's "ongoing" violation of federal law. *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quotation marks omitted). Here, an "ongoing violation of federal law" no longer exists. *Ibid.* The same program that was purportedly unlawful before the election is now undisputedly lawful. Thus, "the alleged violation of federal law occurred entirely in the past." *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999). Although Plaintiffs contend that they will be injured by *future* actions of the Defendants that *will be* unlawful, the possibility of future injury in this context is insufficient to "establish an *ongoing* violation of federal law to qualify for relief under *Ex parte Young*." *Allen v. Cooper*, 895 F.3d 337, 355 (4th Cir. 2018). The Fourth Circuit has made abundantly clear that, unlike the mootness-exception context, the fact that a harm may reoccur in the future is not an exception to *Ex parte Young*'s "ongoing" requirement. *Ibid.*

Further, to be a proper defendant under *Ex parte Young*, an official must have both "*proximity to* and *responsibility for* the challenged state action." *McBurney v. Cucinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (quoting *South Carolina Wildlife Fed'n v. Limehouse,* 549 F.3d 324, 333 (4th Cir. 2008)). "General authority to enforce the laws of the state" is insufficient to meet this test, *Limehouse*, 549 F.3d at 333, and a "special relation" between the official and enforcement of the statute is required, *King v. Youngkin*, 122 F.4th 539, 548 (2024) (citation omitted). The Attorney General has no such role. As Defendants have repeatedly demonstrated, see*, e.g.*, Mem. in Support of Defs.' Mot. to Dismiss at 19–22 (ECF No. 122), the Attorney General has no role in Virginia regarding the identification and removal of noncitizens from the voter rolls. The challenged portion of the Virginia code directs the Virgina Department of Elections (ELECT) and the local registrars to remove noncitizens from the voter rolls, not the Attorney General. See Va. Code § 24.2-427(C). The best Plaintiffs can come up with is a handful of statutes that give the Attorney General the power to generally enforce election laws, but they fail to explain why these laws would allow the Attorney General to interject himself into the removal process and usurp the authority given to ELECT and the local registrars. For example, Plaintiffs note that the Attorney General has "full authority to do whatever is necessary or appropriate to enforce the election laws or prosecute violations thereof." Va. Code § 24.2-104(A). But the administrative task of managing the voter rolls is not "enforc[ing] the election laws" against anyone, and it would hardly be "appropriate," or even possible, for the Attorney General to usurp the role given to a different entity by statute. *Ibid*; *McBurney*, 616 F.3d at 400. The Attorney General thus does not "enforce . . . the specific law the plaintiff challenges." *Doyle v. Hogan*, 1 F.4th 249, 254–55 (4th Cir. 2021).

III.    **This Court should dismiss the claims on the merits**

   **A. This Court should dismiss the quiet period claim**

For Defendants explained in their opening brief, the Quiet Period Provision does not protect individuals who never should have been allowed to register in the first place. See Mem. 20–24. The text of the provision only refers to protections for "voters," and the structure of that section of the NVRA makes clear that only persons who were "eligible applicants" could ever become "voters." *Mi Familia Vota*, 129 F.4th at 754 (Bumatay, J., dissenting). Judges Bumatay and Nelson correctly parse the statute's text in their dissenting opinions.

Plaintiffs' opposition brief, of course, points to the panel majority opinion in *Mi Familia Vota*. Opp. 9. But the majority opinion is wholly unpersuasive. Unlike Judge Bumatay's dissent, the panel majority failed to deal with the statutory text or structure. Instead of interpreting the word "voter" or the reticulated scheme of the NVRA, the majority concentrated on the fact that the Quiet Period Provision applies to "any program" to remove ineligible voters. *Mi Familia Vota*, 129 F.4th at 715. That point is inapposite. Everyone agrees that Defendants run a "program." 52 U.S.C. § 20507(c)(2)(A).

The problem with Plaintiffs' theory is that Defendants' "program" is not for "the purpose" of removing "the names of ineligible voters" from the voter rolls. Its purpose is to remove noncitizens, who are not voters. As Defendants have explained, an ineligible voter is a person who could once vote in a jurisdiction but cannot anymore. See Mem. 22; see also *Mi Familia Vota*, 152 F.4th at 1166 (Nelson, J., dissenting from the denial of rehearing en banc). Moreover, as Defendants have previously raised, this reading of the statute is the only one that saves its constitutionality. *Clark*, 543 U.S. at 381; *Crowell*, 285 U.S. at 62; Defs.' Opp. to Pls.' Mot. for Prelim. Injunct. at 24 & 26–27 n.5 (ECF No. 92) (explaining that "it violates the Constitution" if the Quiet Period Provision applies to noncitizens); Mem. in Support of Defs.' Mot. to Dismiss at

26–27 (ECF No. 122) (arguing that an interpretation which allows noncitizens to be protected by the Quiet Period Provision would "render the" General Removal and Quiet Period "provisions unconstitutional").

If the Court concludes that the Quiet Period Provision applies to the removal of noncitizens, it must declare the provision unconstitutional and consequently dismiss the quiet period claim. The Constitution creates a carefully balanced scheme to determine how federal elections are run. For congressional elections, the Constitution grants States the power to determine who is eligible to vote. *Inter Tribal Council of Ariz.*, 570 U.S. at 17. And it places the power to decide the "Times, Places and Manner of holding Elections" in the state legislature while giving Congress the power to "make" its own regulations or "alter" the States' regulations. U.S. Const. Art. I, § 4, cl. 1. But the Constitution conspicuously does not give Congress power to override States' decisions about *who* may vote in congressional elections. *See Inter Tribal Council of Ariz.*, 570 U.S. at 17; *Carrington v. Rash*, 380 U.S. 89, 91 (1965) ("There can be no doubt either of the historic function of the States to establish . . . qualifications for the exercise of the franchise."); Robert G. Natelson, *The Original Scope of the Congressional Power to Regulate Elections*, 13 U. Pa. J. Constitutional L. 1, 10–18 (2010). And the Supreme Court has explained that not only does Congress lack the power to override States' choices about who may vote, it also cannot indirectly restrict their ability to enforce their franchise requirements. *Inter Tribal Council of Ariz.*, 570 U.S. at 17; see also *Cummings v. Missouri*, 71 U.S. 277, 278 (1867) ("[W]hat cannot be done directly cannot be done indirectly."). Indeed, the Supreme Court has concluded that it would "raise serious constitutional doubts" if Congress "precluded a State from obtaining the information necessary to enforce its voter qualifications." *Inter Tribal Council of Ariz.*, 570 U.S. at 17.

14

Exercising its powers in accordance with the Constitution, Virginia requires citizenship to vote in all elections. Va. Const. art. II, § 1; Va. Code § 24.2-404.4. Congress, of course, cannot override that decision. Nor can it prohibit Virginia from taking steps "necessary to enforce" its citizenship requirement. *Inter Tribal Council of Ariz.*, 570 U.S. at 17. If Congress has denied Virginia the ability to remove noncitizens in a systematic manner in the 90 days before a federal election, then it has practically taken away Virginia's ability to enforce its voting qualifications. See *Mi Familia Vota*, 129 F.4th at 756 (Bumatay, J., dissenting) (calling this interpretation of the Quiet Period Provision "absurd" and stating that it would "raise serious constitutional concerns"). Millions of Virginians cast a ballot in every federal election, and prohibiting Virginia from using a "mass computerized data-matching process," ECF 153 at 22, to check its rolls would make removing noncitizens impossibly burdensome. The result would be that Virginia would have little "power to enforce" its citizenship requirements within 90 days of a federal election. *Inter Tribal Counsil of Ariz.*, 570 U.S. at 17. If merely denying States the ability to obtain information about voter eligibility raises a "serious constitutional" question, *ibid.*, then outright prohibiting the removal of a noncitizen unless a sufficiently individualized inquiry was made clearly infringes on the States' authority to determine who may vote and renders the NVRA unconstitutional as applied to Defendants.

Finally, even if this Court concludes that Plaintiffs have stated a quiet period claim against the ELECT Defendants, it should dismiss the claim against the Attorney General. Plaintiffs allege that the Attorney General's role is to investigate and prosecute unlawful voting and that he is sent referrals based on removals within the quiet period. SAC ¶ 44. But the Quiet Period Provision says nothing about outlawing investigations or prosecutions of voter fraud. It solely prohibits the removal of a (disputed) class of individuals within 90 days of a federal election. Even if ELECT

15

violated the provision by removing a person, it does not follow that the Attorney General has violated the provision by investigating or prosecuting that person if he discovers fraud. See Mem. 19 n.6.

### B. The "nondiscrimination" claim fails as a matter of law

For a law to be "nondiscriminatory," it must not make a suspect classification on the face of the law or have been enacted with discriminatory intent. The Supreme Court made this point clear in the years preceding the enactment of the NVRA, using the term "nondiscriminatory" to refer to laws that have a disparate impact but do not contain an impermissible classification on their face. *Burdick v. Takushi*, 504 U.S. 428, 430 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). When Congress used the term "nondiscriminatory," it presumably used that term in the same manner as the Supreme Court's election-law cases. *Sekhar v. United States*, 570 U.S. 729, 732–33 (2013).

Plaintiffs' opposition brief fails even to address the Supreme Court's use of the term "nondiscriminatory" to refer to the facial classifications made by the statute. Instead of confronting the Supreme Court's use of "nondiscriminatory," Plaintiffs cite one district court opinion and one circuit court opinion that apply a disparate-impact standard under the NVRA. Opp. 28 (relying on *United States v. Florida*, 870 F. Supp. 2d 1346, 1350 (N.D. Fla. 2012) and *Mi Familia Vota*, 129 F.4th at 714). But neither of those opinions conducted *any* analysis of the term "nondiscriminatory." Unconsidered statements from out-of-circuit courts are far from persuasive.

### C. This Court cannot rewrite the Public Inspection Provision

The NVRA's Public Inspection Provision allows for "public inspection [of] . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i). Because Plaintiffs do not demand "public inspection" of records, but rather insist that the records must be

16

produced for them, this claim should be dismissed. *Greater Birmingham Ministries v. Secretary of State of Ala.*, 105 F.4th 1324 (11th Cir. 2024) (explaining that States have no duty to produce documents, as opposed to allowing for inspection).

Instead of engaging with the text of the Public Inspection Provision, Plaintiffs ask the Court to update the NVRA because "if Defendants' proposed reading of the NVRA were accepted, the NVRA's public records provision would be rendered useless." Opp. 29. Plaintiffs also state that Defendants have not "made the requested records available for public inspection in lieu of electronic production." *Ibid*. But it is unclear why Plaintiffs think that matters. Plaintiffs, even after being on notice about the problem with their request for over a year, have still not asked for Defendants to make the documents available for public inspection. And more importantly, even their amended complaint says nothing about seeking to "inspect" documents. See SAC at Prayer for Relief i; 52 U.S.C. § 20507(i). Once again, the fact that a State must allow inspection of "all" records says nothing about what it means to "inspect" records. No matter how broad the right to "inspect" may be, the breadth of that right does not somehow turn a right to inspect into an obligation to produce.

## CONCLUSION

For these reasons, the Court should dismiss the complaint.

Dated: November 26, 2025

Respectfully submitted,

**SUSAN BEALS**, in her official capacity as Virginia Commissioner of Elections; **JOHN O'BANNON**, in his official capacity as Chairman of the State Board of Elections; **ROSALYN R. DANCE**, in her official capacity as Vice-Chairman of the State Board of Elections; **GEORGIA ALVIS-LONG**, in her official capacity as Secretary of the State Board of Elections; **CHRISTOPHER P. STOLLE**, and **J. CHAPMAN PETERSEN**, in their official capacities as members of the State Board of Elections; and **JASON MIYARES**, in his official capacity as Virginia Attorney General

By:    */s/ Thomas J. Sanford*
        Thomas J. Sanford (VSB #95965)
        *Deputy Attorney General*

        Jason S. Miyares
          *Attorney General*
        Kevin M. Gallagher (VSB #87548)
          *Solicitor General*
        Graham K. Bryant (VSB #90592)
          *Principal Deputy Solicitor General*

        Office of the Attorney General
        202 North Ninth Street
        Richmond, Virginia 23219
        (804) 786-2071 – Telephone
        (804) 786-1991 – Facsimile
        SolicitorGeneral@oag.state.va.us

Charles J. Cooper *(Pro Hac Vice)*
Bradley L. Larson *(Pro Hac Vice)*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Defendants Susan Beals, John O'Bannon, Rosalyn R. Dance, Georgia Alvis-Long, Christopher P. Stolle, J. Chapman Petersen, and Attorney General Jason Miyares*

**CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY that on November 26, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

    */s/ Thomas J. Sanford*
Thomas J. Sanford  (VSB #95965)
*Counsel for Defendants*