**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| VIRGINIA COALITION FOR IMMIGRANT RIGHTS *et al.*,<br><br>          *Plaintiffs*,<br><br>  v.<br><br>SUSAN BEALS, in her official capacity as Virginia Commissioner of Elections, *et al.*,<br>          *Defendants*,<br><br>REPUBLICAN NATIONAL COMMITTEE,<br><br>   *Proposed Intervenor-Defendant*. | Case No: 1:24-cv-01778 |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
BY THE REPUBLICAN NATIONAL COMMITTEE**

The Republican National Committee moves to intervene as a Defendant under Federal Rule of Civil Procedure 24. Plaintiffs allege that Virginia's law requiring that noncitizens be removed from the voter rolls within 90 days of an election violates the NVRA. 2d Am. Compl. ¶¶87-94. When Arizona's similar noncitizen-removal requirement was challenged on the same statutory grounds, the RNC was granted intervention. *DNC v. Hobbs*, Doc. 18, No. 2:22-cv-1369 (D. Ariz. Aug. 23, 2022). The RNC's involvement has proven essential in that case; it has raised arguments and appealed decisions that other defendants didn't, and it secured emergency relief from the Supreme Court this past election cycle that the Arizona Secretary of State and Attorney General opposed. *See RNC v. Mi Familia Vota*, 145 S. Ct. 108 (2024).

The RNC's intervention in *Mi Familia Vota* accords with the great weight of authority which recognizes that when a State's election laws are challenged in federal court, political

1

competitors should be allowed to participate as parties to vindicate their unique interests.[1] The RNC's interests are greatly accentuated given the Virginia Governor's recent executive order directing Virginia's Commissioner of Elections to certify that the Department of Elections has ceased "any program" that "systematically remove[s] the names of ineligible voters from the voter registration system based on evidence of ineligibility—including evidence of lack of eligible residence or evidence of non-citizenship" within "90 days prior to the date of a federal primary or general election." Exec. Order 13, Va. Gov. (2026), perma.cc/BWQ2-RUKW. This Executive Order demonstrates that Virginia's Executive Branch is unlikely to adequately defend the legality of the Virginia law that Plaintiffs challenge, Va. Code §24.2-427(C), which plainly requires removing noncitizens from Virginia's voter rolls even within 90 days of an election. This Court should grant the motion for two independent reasons: First, the RNC satisfies the criteria for intervention by right under Rule 24(a)(2). Second, permissive intervention under Rule 24(b) is warranted as the RNC's defenses share common questions of law and fact with the existing parties.

---

[1] *E.g.*, *Bost v. Ill. State Bd. of Elections*, 146 S.Ct. 513 (2026); *NRSC v. FEC*, 145 S. Ct. 2843 (2025); *La Union del Pueblo Entero* [*LUPE*] *v. Abbott*, 29 F.4th 299, 309 (5th Cir. 2022); *Thomas v. Andino*, 335 F.R.D. 364, 371 (D.S.C. 2020); *N.C. Green Party v. N.C. State Bd. of Elections*, 619 F. Supp. 3d 547, 560-62 (E.D.N.C. 2022); *Middleton v. Andino*, Doc. 27, No. 3:20-cv-01730 (D.S.C. May 12, 2020); *DNC v. N.C. State Bd. of Elections*, 2023 WL 12218247, at *1-3 (M.D.N.C. Nov. 6); *Ortiz v. N.C. State Bd. of Elections*, 2024 WL 3764561, at *5-7 (E.D.N.C. Aug. 12); *League of Women Voters of Ohio v. LaRose*, Doc. 25, No. 1:23-cv-2414 (N.D. Ohio Feb. 6, 2024); *Ne. Ohio Coal. for the Homeless v. LaRose*, 2023 WL 2991932, *1 (N.D. Ohio Apr. 18); *King v. Whitmer*, 2020 WL 7053810, *1 (E.D. Mich. Dec. 2); *A. Philip Randolph Inst., of Ohio v. LaRose*, 2020 WL 5524842, *1-2 (N.D. Ohio Sept. 15); *League of Women Voters of Ohio v. LaRose*, Doc. 38, No. 2:20-cv-01638 (S.D. Ohio Apr. 2, 2020); *Priorities USA v. Nessel*, 2020 WL 2615504, at *1 (E.D. Mich. May 22); *Ohio A. Philip Randolph Inst. v. Smith*, 2018 WL 8805953, *3-5 (S.D. Ohio Aug. 16); *Int'l All. of Theater Stage Emps. Local 927 v. Lindsey*, Doc. 84, No. 1:23-cv-4929 (N.D. Ga. May 3, 2024); *Mont. Pub. Int. Rsch. Grp. v. Jacobsen*, Doc. 34, No. 6:23-cv-70 (D. Mont. Jan. 18, 2024); *Vote.Org v. Byrd*, Doc. 85, No. 4:23-cv-111 (N.D. Fla. May 26, 2023); *Harriet Tubman Freedom Fighters Corp. v. Lee*, Doc. 34, No. 4:21-cv-242 (N.D. Fla. July 6, 2021); *Fla. State Conference of Branches & Youth Units of the NAACP v. Lee*, Doc. 43, No. 4:21-cv-187 (N.D. Fla. June 8, 2021); *New Ga. Project v. Raffensperger*, Doc. 39, No. 1:21-cv-1333 (N.D. Ga. June 4, 2021); *Black Voters Matter Fund v. Raffensperger*, Doc. 42, No. 1:20-cv-4869 (N.D. Ga. Dec. 9, 2020); *VoteVets Action Fund v. Detzner*, Doc. 16, No. 4:18-cv-524 (N.D. Fla. Nov. 11, 2018).

## INTERESTS OF THE REPUBLICAN NATIONAL COMMITTEE

The RNC is a national committee as defined by 52 U.S.C. §30101 that manages the Republican Party's business at the national level. Ex. A, Ambrosini Decl. at ¶3. It supports Republican candidates for public office at all levels nationwide—including in Virginia. *Id*. at ¶¶5-7. It coordinates fundraising and election strategy and develops and promotes the national Republican platform. *Id*. at ¶3. The RNC's membership consists of the party chair, national committeeman, and committeewoman for each State and territory, including multiple representatives from Virginia who are registered Virginia voters. *Id*. at ¶2. The RNC has interests in the rules and procedures governing Virginia's elections not only because its core organizational mission involves "winning" elections, but also because its candidate members "suffer when the [electoral] process departs from the law." *Bost*, 146 S.Ct. at 519-20. These interests are heightened in this case given Virginia's upcoming elections later this year, in which numerous Republican candidates are seeking election and over 1.8 million Republicans are registered to vote. Ex. A, Ambrosini Decl. at ¶9.

## ARGUMENT

### I.    The RNC satisfies the legal prerequisites for intervention by right.

"Liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (cleaned up). Under Rule 24(a)(2), "upon the filing of a 'timely motion,'" *Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014), a district court "must permit intervention as a matter of right" if the movant can demonstrate: an "interest in the subject matter of the action;" that "the protection of this interest would be impaired because of the action;" and that "the applicant's interest is not adequately represented by existing parties to the litigation." *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013) (cleaned up). The RNC satisfies each factor.

### A.    The motion is timely.

Courts consider "three factors" to determine whether intervention is timely: "first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt*, 758 F.3d at 591.

On the first factor, this case is not "so near to its final resolution" that intervention would "arrest the momentum of the lawsuit." *Id*. Discovery has not yet concluded and summary judgment motions have not yet been filed. In fact, the case has been stayed so that the new Attorney General, who recently assumed office, can get up to speed. *See* Doc. 218. So the momentum of the lawsuit has already been arrested. *Cf. Alt*, 758 F.3d at 591. If granted intervention, the RNC would not delay the case any further; the RNC seeks no additional discovery, and it will abide by all court-imposed deadlines for briefing and trial.

Regardless, "the point to which the suit has progressed … is not solely dispositive. Time-liness is to be determined from all the circumstances." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 323 F.R.D. 553, 558 (E.D. Va. 2018) (quoting *NAACP v. New York*, 413 U.S. 345, 365-66 (1973)). "Those other circumstances are particularly important here because," the RNC's decision to inter-vene at this stage "has more to do with [Commonwealth Defendants'] tactics than the Intervenors' own actions." *Id*.

On the second factor, intervention will not prejudice any party. With its motion to inter-vene, the RNC attaches a proposed answer to Plaintiffs' complaint. This filing along with the RNC's promise to not seek additional discovery "place[s] the RNC in the same procedural posture as the [Commonwealth] Defendants." *LULAC v. EOP*, Doc. 135 at 9, No. 1:25-cv-946 (D.D.C. June 12, 2025). "Under these circumstances, the timing of the RNC's motion will not unfairly disadvantage any party." *Id.* "Any potential prejudice is minimized" or eliminated "by the [RNC's] agreement" to not "engag[e] in further discovery." *Steves & Sons*, 323 F.R.D. at 558. That the

4

RNC has "already proposed and agreed to such limiting conditions saves the Court and the parties from having to spend unnecessary time resolving that issue." *Id*. Further, that the RNC will raise similar arguments to those the previous Attorney General made also undermines any claims of prejudice. *See* Proposed Answer at 10.

"[T]he third factor—the basis for the tardy filing of the motions—weighs in favor of intervention." *Steves & Sons*, 323 F.R.D. at 560. The RNC did not move to intervene earlier because its interests were adequately represented by the Commonwealth Defendants, who vigorously defended Virginia's election procedures. Then, in a February 2026 court filing, Virginia's new Attorney General Jay Jones informed this Court that he had "reached out to counsel for Plaintiffs seeking to hold a conference" on "a possible resolution of the matter" and that in the "14 days" after assuming office on January 20, 2026, Attorney General Jones had "held multiple teleconferences to discuss possible resolution of the case" with Plaintiffs. Doc. 214 ¶¶14, 16. While Virginia's previous Attorney General had defended Virginia's election laws all the way to the Supreme Court, *see Beals v. VA Coal. for Immigrant Rts.*, 220 L. Ed. 2d 179 (Oct. 30, 2024), Attorney General Jones is poised to resolve this case in a way that could undermine Va. Code §24.2-427(C) and prevent election officials from removing noncitizens from the voter rolls. "In short, as soon as it became clear to the [RNC] that the interests of [its] members would no longer be protected" by the Commonwealth, the RNC has "promptly moved to intervene to protect those interests." *Cf. United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977). "Far from sitting by and waiting for the right moment in the litigation to intervene, the Intervenors filed their motions shortly after [the Commonwealth Defendants'] strategies implicated their individual interests for the first time. Therefore, the Intervenors' explanation for their delay in seeking to intervene is compelling, and weighs in favor of intervention." *Steves & Sons*, 323 F.R.D. at 561. "When [the RNC] discovered

[the Commonwealth] was not adequately representing them, they filed a petition to intervene post-haste. This is all they must do to reasonably comply with the timeliness requirement of Rule 24(a)(2)." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 322 (7th Cir. 1995).

### B.    The RNC has protected interests at stake in this case.

The RNC need not establish Article III standing to advance a Rule 24(a) interest. *N.C. State Conf. of NAACP v. Cooper*, 332 F.R.D. 161, 165 (M.D.N.C. 2019). Rather, it needs only "'a significantly protectable interest.'" *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). The RNC easily clears that low bar because it has an Article III stake in this case. The Fourth Circuit has already held that the RNC had standing to challenge improper registrations under the NVRA. *RNC v. N.C. State Bd. of Elections*, 120 F.4th 390, 397 (4th Cir. 2024). Moreover, as the national committee of the Republican Party who represents candidates and voters across Virginia and the nation, "[a]n unfair and inaccurate election plainly affects" the RNC "in a different way" than it does other individuals and organizations who are not political competitors. *Bost*, 146 S. Ct. at 520. The RNC has an Article III "interest" in "a fair process and an accurate result" that is at risk of impairment based on the outcome of these proceedings. *Id*. at 519.

The RNC is not a "common competitor[] in the economic marketplace." *Id*. Rather, it represents Republican candidates who seek to serve the people. So "[w]in or lose," the RNC "suffer[s] when the process" of Virginia's elections "departs from the law." *Id*. Plaintiffs seek to structure Virginia's electoral process in a way that departs from the law. Specifically, Plaintiffs seek an electoral process in which the voter registrations of noncitizens are left on the voter rolls within 90 days of a federal election in violation of Va. Code §24.2-427(C). 2d Am. Compl. ¶¶87-94. If Plaintiffs win, the RNC will thus be "deprive[d]" of "a fair process" for elections in which its candidates will participate. *Bost*, 146 S. Ct. at 520.

The RNC's interest in "a fair process" is "in no sense common to all members of the public." *Id*. (cleaned up). Rather, the RNC's interest "differs in kind." *Id*. Because the RNC "spend[s] untold time and resources seeking" to help elect Republican candidates who can "claim the right to voice the will of the people," the RNC has "an undeniably different—and more particularized—interest in knowing what that will is." *Id*. (cleaned up).

The RNC also has an interest in ensuring that Virginia's electoral process is not structured in such a way as to "undermine" a Republican election "winner's political legitimacy." *Id*. When noncitizens illegally register and vote, it "erodes public confidence that the election results reflect the people's will. And when public confidence in the election results falters, public confidence in the elected representative follows. To the representative, that loss of legitimacy—or its diminution—is a concrete harm." *Id*.; *see also Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). These reputational harms "are classic Article III injuries." *Bost*, 146 S. Ct. at 520. The RNC is thus no mere bystander when it comes to the elections of its Republican candidates. It has "an obvious personal stake in how the result is determined and regarded. Departures from the preordained rules cause [the RNC] particularized and concrete harm." *Id*.

The RNC also has a significant interest in having a "chance to compete" in an electoral process that is structured according to Virginia's election code. *Id*. at 521; *N.C. Green Party*, 619 F. Supp. 3d at 562. "[T]he RNC has Article III standing to intervene as a Defendant based on its interest in competing in fair contests for public office by registering, educating, and turning out voters." *LULAC*, Doc. 135 at 9, No. 1:25-cv-946. If Plaintiffs' suit succeeds, the Republican candidates whom the RNC represents will be deprived of the chance to compete in an election in which all noncitizens are removed from the voter rolls within 90 days of an election. The RNC and the Republican candidates it represents will thus face the "need to adjust their campaign

7

strategy" thereby "suffer[ing] harm to their legally protected interests." *Shays v. FEC*, 414 F.3d 76, 87 (D.C. Cir. 2005).

The RNC relies on Virginia's voter-registration lists to determine its electoral strategy, the number of staff it needs in a given jurisdiction, the number of volunteers needed to contact voters, and how much it will spend contacting voters. *See* Ex. A, Ambrosini Decl. at ¶¶18-34. If Virginia's voter registration lists contain ineligible non-citizen registrations, then the RNC's electoral strategy will be based on flawed data that will hinder the electoral prospects of candidates running as Republicans. *Id*. Plaintiffs' requested relief would allow the voter registrations of ineligible non-citizens to remain on Virginia's voter rolls. *See* 2d Am. Compl. 36-38. Since the RNC relies on accurate voter rolls that don't contain the registrations of ineligible non-citizens to set the campaign strategy of Republican candidates, the RNC's competitive interest in "advancing the overall electoral prospects" of Republican candidates is implicated by these proceedings. *Issa v. Newsom*, 2020 WL 3074351, at *3 (E.D. Cal. June 10). Such an interest is "routinely found" to be protectable under Rule 24. *E.g.*, *id.*; *LULAC*, Doc. 135 at 6, No. 1:25-cv-946.

The RNC also has an interest in Republican resources being spent effectively to achieve its mission. *See* Ex. A, Ambrosini Decl. at ¶¶18-23. Safeguarding the RNC's mission-critical activities from costs associated with changes to election procedures is a legitimate "interest" under Rule 24(a)(2). *See, e.g.*, *Issa*, 2020 WL 3074351, at *3; *LUPE*, 29 F.4th at 306; *Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 687 (7th Cir. 2023). These interests are not generalized. Not all Virginians have an interest in electing Republicans or managing the Republican Party's resources. In fact, Plaintiffs rely on similar diverted resource injuries to their organizational "mission" as a basis for standing. 2nd Am. Compl. ¶¶22, 24, 27, 29. If those interests are sufficient to support

Plaintiffs' standing, they are sufficient to satisfy the minimal interest requirement to justify the RNC's intervention.

### C.    The outcome of this case could impair the RNC's interests.

Proceeding without the RNC "may as a practical matter impair [the RNC's] ability to protect [its] interest." Fed. R. Civ. P. 24(a)(2). Given their inherent and intense interest in elections, usually "[n]o one disputes" that political parties "meet the impaired interest requirement for intervention as of right." *Citizens United v. Gessler*, 2014 WL 4549001, *2 (D. Col. Sept. 15). To prove potential impairment, the RNC "need only show" that if it cannot intervene, "there is a possibility" that its "interest could be impaired." *LUPE*, 29 F.4th at 307.

This case presents at least that "possibility." *Id.* Plaintiffs' request for injunctive and declaratory relief, if granted, would "change" the "election landscape for those participating." *Id*. It would "change what [the RNC] must do to prepare for upcoming elections," forcing the RNC to expend "resources to educate their members on the shifting situation in the lead-up to the 202[6] election." *Id*. Each of these potential practical impairments standing alone are enough to justify intervention. The RNC will plainly "suffer" if the Commonwealth Defendants were to "settle" this case "against [RNC] interests." *Mausolf v. Babbitt*, 85 F.3d 1295, 1302-03 (8th Cir. 1996).

Enjoining enforcement or declaring unlawful Virginia's noncitizen registration removal procedures inhibits Virginia's ability to conduct "accurate recordkeeping" by "carefully identifying all voters participating in the election process" and removing ineligible noncitizens. *Cf. Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) (op. of Stevens, J.). This impairs the RNC's interest in a fair process, undermines the political legitimacy of Republican candidates who get elected, and disrupts the RNC's ability to craft an effective campaign strategy based on accurate registration lists. *See supra*, pp. 5-8. Though Plaintiffs argue that "noncitizen registration and voting is vanishingly rare in Virginia," 2d Am. Compl. at ¶10, "in resolving a motion to intervene,"

this Court "cannot assume" that Plaintiffs "will ultimately prevail on the merits," *Pavek v. Simon*, 2020 WL 3960252, at *3 (D. Minn. July 12). This Court must accept the RNC's defenses as correct. *Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261, 265 (2d Cir. 1984).

The RNC "could be burdened if the Court accepts the Plaintiffs' arguments that some provisions" of the Virginia's noncitizen registration removal procedures "cannot lawfully be implemented." *LULAC*, Doc. 135 at 9, No. 1:25-cv-946. "For example, a decision in the Plaintiffs' favor could result in an injunction barring the implementation of provisions that the RNC argues are beneficial to its members' ability to compete in federal elections. Therefore, the RNC has shown that the disposition of these cases could impair or impede its interests." *Id*. at 10.

The RNC would also be forced to spend substantial resources to independently verify the accuracy of Virginia's voter registration rolls, to monitor and poll-watch for illegal noncitizen voting, and to educate voters and candidates concerning Virginia's changed voter registration list maintenance procedures. Those organizational costs are an independent injury. *RNC v. N.C. State Bd. of Elections*, 120 F.4th at 397. Since the RNC has "an obvious personal stake" in this case, intervention by right is warranted. *Bost*, 146 S. Ct. at 520.

### D.    Defendants may not adequately represent the RNC's interests.

The RNC "satisfies Rule 24(a)'s third requirement if it is shown that representation of its interest '*may be*' inadequate." *United Guar. Residential Ins. v. Phila. Sav. Fund Soc.*, 819 F.2d 473, 475 (4th Cir. 1987) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). "[T]he burden of making this showing should be treated as 'minimal.'" *Id*.

The RNC need not rebut a presumption of adequate representation because there is no "full overlap of interests" between the RNC and the Commonwealth Defendants. *Berger v. N.C. State Conf. NAACP*, 597 U.S. 179, 197 (2022). Even if the RNC and Commonwealth Defendants'

10

interests are "related," they "cannot be fairly presumed to bear identical ones." *Id*. (cleaned up). That's because the RNC "seeks to intervene in part" to "advance its own partisan objectives." *LULAC*, Doc. 135 at 11, No. 1:25-cv-946. The Commonwealth Defendants, by contrast, "are unlikely to be adequate representatives of these private, partisan interests." *Id*. No current party to this case adequately represents the RNC's interest in promoting Republican candidates' electoral success, supporting Republican voters, and conserving Republican Party resources. Ex. A, Ambrosini Decl. at ¶¶13-34. Defendants are Virginia executive officials, who must necessarily represent the "'public interest.'" *Cf. Trbovich*, 404 U.S. at 538-39. By contrast, the RNC's interest is inherently "partisan." *LUPE*, 29 F.4th at 309. "Neither the State nor its officials can vindicate such an interest while acting in good faith." *Id*.

The Commonwealth Defendants have no interest in the election of Republican candidates, the mobilization of Republican voters, or the costs associated with either. Instead, they must consider a range of interests likely to diverge from the RNC. Those clashing interests include the interests of Plaintiffs, "the expense of defending the current [rules] out of [state] coffers." *Clark v. Putnam Cnty.*, 168 F.3d 458, 462 (11th Cir. 1999). And "the social and political divisiveness of the election issue" to the State. *Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1478 (11th Cir. 1993). By contrast, the RNC exclusively cares about this case's effect on the Republican Party, Republican candidates, and Republican voters. Thus, the government's representation of the public interest cannot be assumed to be identical to the individual partisan interest of the RNC even if both entities occupy the same posture in the litigation. *N.C. Green Party*, 619 F. Supp. 3d at 562. The RNC "seek[s] to give voice to a different perspective… If allowed to intervene, the [RNC] will focus on defending the law vigorously on the merits without an eye to crosscutting administrative concerns." *Berger*, 597 U.S. at 198. Since there are "diverge[nt]" interests, there is inadequate

11

representation. *Morgantown Energy Assocs. v. Pub. Serv. Comm'n of W. Va.*, 2013 WL 140235, *4 (S.D. W. Va. Jan. 10). That the Commonwealth Defendants' position has changed demonstrates that the "social and political" interests of the Commonwealth diverge from, and inadequately represent, the RNC's interests. *Meek*, 985 F.2d at 1478.

Further, the Court should not presume adequate representation here because the Commonwealth Defendants have indicated that they oppose the RNC's intervention and the RNC does not seek the same ultimate objective as a party to the suit. The RNC seeks dismissal of Plaintiffs' claims. The Commonwealth Defendants appear to be attempting to settle. *See* Doc. 214 ¶¶14, 16. Indeed, the Commonwealth Defendants may now be obligated to settle this case due to the recent Executive Order signed by Virginia's Governor requiring Virginia's Commissioner of Elections to certify that the Department of Elections has ceased "any program" that "systematically remove[s] the names of ineligible voters from the voter registration system based on evidence of ineligibility—including evidence of lack of eligible residence or evidence of non-citizenship" within "90 days prior to the date of a federal primary or general election." Exec. Order 13, Va. Gov. (2026), perma.cc/BWQ2-RUKW. The Commonwealth Defendants likely cannot make this certification while also defending the legality of the Virginia law that Plaintiffs challenge, Va. Code §24.2-427(C), which plainly requires systematically removing noncitizens from Virginia's voter rolls even within 90 days of an election. Thus, even if the RNC needed to overcome a presumption of adequate representation, it could do so because "there is a significant chance that [the Commonwealth Defendants] might be less vigorous than the [Republican] Intervenors in defending" Virginia's law. *See Teague v. Bakker*, 931 F.2d 259, 262 (4th Cir. 1991); *cf. Trbovich*, 404 U.S. at 539 (even a "valid complaint" about "the performance of [the State's] lawyer" is "sufficient to warrant relief in the form of intervention under Rule 24(a)(2)."); Doc. 214 ¶¶14, 16. Since the

RNC and Commonwealth Defendants "do not share identical interests, and are likely adverse at this stage of the case," the RNC has "demonstrated a right to intervene under Rule 24(a)(2)." *N.C. Green Party*, 619 F. Supp. 3d at 562.

## II. Alternatively, the RNC is entitled to permissive intervention.

Regardless of whether the Court finds the RNC can intervene by right, permissive intervention is justified under Rule 24(b). The RNC's "claim or defense" shares with "the main action a common question of law or fact." Fed. R. Civ. P. 24(b). And the RNC's intervention will not "unduly delay or prejudice" the case. *Id*. Courts often find that permissive intervention is the simplest path for resolving a political party's request to intervene in election-integrity litigation, as the Court need not even find the RNC is inadequately represented. *E.g.*, *Black Voters Matter*, No. 1:20-cv-4869, Doc. 42 at 5. Rule 24(b)(2) also "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation," *SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940).

Rule 24(b)'s requirements are met here. The RNC will raise defenses sharing common questions of law and fact with the existing parties. Plaintiffs allege that Virginia's noncitizen voter registration removal procedures violate the NVRA. 2d Am. Compl. ¶¶87-94. The RNC denies those allegations. The RNC's defenses and those at least initially brought by the Commonwealth Defendants turn on the same legal issue: the validity of Virginia's voter-registration removal procedures for noncitizens. Those conditions justify granting the RNC permissive intervention. *E.g., Swenson v. Bostelmann*, Doc. 38 at 4, No. 20-cv-459 (W.D. Wis. June 23, 2020) ("[T]he [RNC has] a defense that shares common questions of law and fact with the main action; namely, they seek to defend the challenged election laws to protect their and their members' stated interests— among other things, interest in the integrity of Wisconsin's elections."); *Priorities USA*, 2020 WL

2615504, at *5 (recognizing that the permissive-intervention criteria were met when the RNC "demonstrate[d] that they seek to defend the constitutionality of Michigan's [election] laws, the same laws which the plaintiffs allege are unconstitutional").

Moreover, the RNC's intervention won't unduly delay or prejudice any party. "Rule 24(b) mentions only undue delay; normal delay does not require denying intervention." *Steves & Sons*, 323 F.R.D. at 561. "Whatever additional burdens adding the [RNC] to this case may pose, those burdens fall well within the bounds of everyday case management." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 200 (2022). "Adding parties to a case almost always results in some delay ... In determining whether extra time would be an undue delay, the court must balance the delay threatened by intervention against the advantages promised by it." *Ohio Valley Envtl. Coal. v. McCarthy*, 313 F.R.D. 10, 30 (S.D. W. Va. 2015); *accord Lee v. Va. Bd. of Elections*, 2015 WL 5178993, at *4 (E.D. Va. Sept. 4) (courts should consider whether "undue delay exists without a corresponding benefit to the process"). The RNC's intervention will not unduly delay the case because the RNC is filing a proposed answer to the complaint, "which can be docketed without delay." *LULAC*, Doc. 135 at 9, No. 1:25-cv-946. That filing "would place the RNC in the same procedural posture as the [Commonwealth] Defendants," so "the timing of the RNC's motion will not unfairly disadvantage any party." *Id*. Moreover, "concerns of delay and prejudice can be addressed through proper limitation and docket control such that any delay and prejudice caused" by "the RNC's… intervention will not be undue." *Priorities USA*, 2020 WL 2615504, *4. The RNC also commits to complying with whatever briefing schedule the Court imposes, "a promise" that undermines claims of undue delay. *Emerson Hall Assocs. v. Travelers Casualty Ins. Co. of Am.*, 2016 WL 223794, *2 (W.D. Wis. Jan. 19).

14

Nor can Plaintiffs be prejudiced by having to respond to the RNC's arguments. Plaintiffs "can hardly be said to be prejudiced by having to prove a lawsuit it chose to initiate." *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). And the RNC "has committed to following the same briefing schedule as defendants." *Swenson*, Doc. 38 at 5, No. 20-cv-459 (W.D. Wis.).

The RNC's intervention will aid the Court. "[I]t cannot be said with assurance that the existing parties will frame the issues so well that the proposed intervention will add nothing of value. Even good lawyers sometimes miss things." *Nielsen v. DeSantis*, 2020 WL 6589656, at *1 (N.D. Fla. May 28). And the RNC is "not" some "marginally affected" individual but a "substantial organization[] with experienced attorneys who might well bring perspective that others miss or choose not to provide." *Id*. Allowing the RNC to intervene will allow "the Court … to profit from a diversity of viewpoints as [the RNC] illuminate[s] the ultimate questions posed by the parties." *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017). "[B]ecause this case involves the integrity of [Virginia's] election laws," it is "worthwhile to receive input" from a national political party organization like the RNC to "reach the correct determination." *Priorities USA*, 2020 WL 2615504, at *4.

## CONCLUSION

For the foregoing reasons, the RNC respectfully requests that the Court grant the motion.

Dated: March 25, 2026

Respectfully submitted,

*/s/ Thomas R. McCarthy*

Thomas R. McCarthy (VSB #47154)
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com

*Counsel for Proposed Intervenor-Defendant
The Republican National Committee*

**CERTIFICATE OF CONFERRAL**

Counsel for Proposed Intervenor-Defendant certifies that on March 17, 2026, Counsel for the RNC conferred with Counsel for Plaintiffs and Counsel for Defendants concerning this Motion to Intervene. Counsel for Plaintiffs represents that Plaintiffs oppose the motion. Counsel for Defendants represents that Defendants oppose the Motion.

*/s/ Thomas R. McCarthy*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 25, 2026, I e-filed this document on ECF, which will email everyone requiring service.

*/s/ Thomas R. McCarthy*

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

VIRGINIA COALITION FOR IMMIGRANT
RIGHTS *et al.*,

                    *Plaintiffs*,

    v.

SUSAN BEALS, in her official capacity as
Virginia Commissioner of Elections, *et al.*,
                    *Defendants*,

REPUBLICAN NATIONAL COMMITTEE,

      *Proposed Intervenor-Defendant*.

Case No: 1:24-cv-01778

**EXHIBIT A
DECLARATION OF MICHAEL AMBROSINI**

I, Michael Ambrosini, declare:

1.     I am the Chief of Staff of the Republican National Committee (RNC). I am over the age of eighteen and I have personal knowledge of the following facts. If called as a witness, I could and would competently testify thereto.

2.     The RNC is the national committee of the Republican Party, with its principal place of business at 310 First Street S.E., Washington D.C., 20003. The RNC represents over 30 million registered Republicans in all 50 states, the District of Columbia, and the U.S. territories. It is comprised of 168 voting members representing state Republican Party organizations.

3.     The RNC manages the Republican Party's business at the national level, coordinates fundraising and election strategy, and develops and promotes the national Republican platform.

4.     The 2024 platform provides in relevant part that the Republican Party is committed to "implement[ing] measures to secure our Elections," including "Voter ID," "proof of Citizenship," and "not allow[ing] the Democrats to give Voting Rights to illegal Aliens."

5.     The RNC organizes and operates the Republican National Convention, which nominates a candidate for President and Vice President of the United States.

6.     The RNC works to elect Republican candidates to state and federal office. In November 2026, its candidates will appear on the ballot in every state.

7.     The RNC's candidate members include U.S. Representative Morgan Griffith, U.S. Representative John McGuire, U.S. Representative Jen Kiggans, U.S. Representative Ben Cline, and U.S. Representative Rob Wittman, all running for reelection in Virginia.

8.     The RNC engages in various activities to help elect Republicans throughout the nation. One of those activities is providing support to the various state Republican committees, including the Republican Party of Virginia, in its efforts to elect Republicans.

9.     The RNC represents over 1.8 million registered Republican voters across Virginia, including at least one registered Republican voter in each county.

10.     In preparing for the upcoming elections, the RNC has vital interests in protecting the ability of Republican voters to cast, and Republican candidates to receive, effective votes in federal and state elections.

11.     The RNC's unique interests include preventing their political opponents (namely, the Democratic Party) from gaining an unfair advantage in the election process, amassing political power to better direct the machinery of government by ensuring their candidates win their elections by as wide a margin as possible, and ensuring that election contests in which Republican candidates participate are conducted in a lawful manner in accordance with the requirements of federal and Virginia law.

12.     The RNC seeks to intervene as a defendant in this case to vindicate its own rights in this regard, and in a representational capacity to vindicate the rights of its members, affiliated voters, and candidates.

13.     The RNC previously believed its interests to be adequately represented by former Republican Attorney General Jason Miyares. But since Attorney General Miyares has left office, the RNC no longer believes its interests are adequately being represented in this case by the new Democratic Attorney General Jay Jones.

14.     The RNC is particularly concerned that Attorney General Jones will settle this case with Plaintiffs in a way that will undermine, nullify, or abrogate attempts by Virginia election officials to remove noncitizens who are registered to vote from the Commonwealth's voter rolls within 90 days of a Virginia election.

15.     The RNC is also concerned that Attorney General Jones will not vigorously defend the provisions of Virginia's election code requiring removal of noncitizen voter registrations. *See* Va. Code §24.2-427(C).

16.     The RNC is further concerned that even if Attorney General Jones were to vigorously defend the provisions of Virginia's election code requiring removal of noncitizen voter registrations in this Court, he may not do so if he or Plaintiffs were to appeal to a higher court any decision made by this Court.

17.     Ensuring the integrity and fairness of all elections in which Republican candidates and voters participate is germane to the RNC's mission.

18.     The RNC devotes substantial resources to voter-registration efforts. Virginia's voter roll maintenance directly affects the RNC's ability to provide services to candidates and voters and to accomplish its core activities of electing Republican candidates and turning out Republican voters in local, Commonwealth, and federal elections.

19.     The RNC relies on Virginia's voter-registration lists to determine its electoral strategy, the number of staff needed in a given jurisdiction, the number of volunteers needed to contact voters, and how much it will spend contacting voters.

20.     The RNC relies on Virginia's voter rolls as a baseline for obtaining the information needed to establish voter contacts. The RNC contacts voters through digital avenues. These voter-contact efforts are essential to electing Republican candidates and turning out Republican voters. The RNC uses Virginia's voter rolls to adjust the size, scope, and audience for these voter contacts. If ineligible voter registrations are left on Virginia's voter rolls, that would harm the effectiveness of the RNC's voter-contact efforts, resulting in contacts with registered voters who are not eligible to vote and resources being spent sending communications to registered voters who are not eligible to vote.

21.     The RNC utilizes the information on Virginia's voter rolls to facilitate door-to-door canvassing activities. If ineligible voter registrations remain on Virginia's voter rolls and are not removed, that would result in the RNC wasting time and resources attempting to facilitate door knocking activities for registrants who are not eligible voters.

22.     The RNC's core political activities include election fraud monitoring activities such as staffing election fraud hotlines, investigating reports of voter fraud, and supporting and training Republican poll watchers. If the registrations of persons who are not eligible to vote remain on Virginia's voter rolls and are not removed as required by Virginia and federal law, that would force the RNC to alter its political activities to divert more of its resources into monitoring, investigating, and combatting election fraud in Virginia.

4

23.    Enjoining enforcement of Virginia's election procedures that currently requiring re-moving the registrations of noncitizens within 90 days of a Virginia election would require the RNC to divert more resources toward poll-watching and voter-roll monitoring activities. *See* Va. Code §24.2-427(C). Because the RNC's resources are finite, it can expend resources on those efforts only by diverting them from the pursuit of its mission in other areas.

24.    The RNC provides consulting and reporting services to Republican candidates running for election in Virginia based on the information it collects from Virginia's voter rolls. These consulting and reporting services are among the core political activities that the RNC engages in as an organization.

25.    The RNC conducts research on Virginia's voter rolls to facilitate its political consulting and reporting services for Republican candidates in Virginia and elsewhere.

26.    The RNC performs political research to assist with developing campaign strategies for Republican candidates. An essential part of that assistance is collecting and reviewing Virginia's voter roll data.

27.    Based on that research, the RNC reports to Republican candidates what it believes to be the number of active and inactive voters and the total number of registrants in Virginia counties.

28.    The services the RNC provides as a political consultant to Republican candidates also include compiling information regarding the likely party preferences of Virginia voters and estimating Republican voter turnout in each Virginia county.

29.    Republican candidates rely on the RNC's research reports and political consulting to develop their campaign strategies and allocate campaign resources.

30.    If the registrations of persons who are not eligible to vote remain on Virginia's voter rolls and are not removed, the number of active and inactive voters and the total number of registrants in each Virginia county will not accurately reflect the number of eligible voters in those counties. Those inaccuracies would diminish the quality of the political consulting and reporting services the RNC provides to Republican candidates.

5

31.     Republican candidates rely on the RNC's political consulting and reporting services to refine their campaign strategy, mail campaign material, and conduct get-out-the-vote efforts across Virginia.

32.     If the registrations of persons who are not eligible to vote remain on Virginia's voter rolls and are not removed, the RNC will be deprived of an accurate number of eligible voters who are registered to vote in Virginia.

33.     The RNC's core organizational interests of providing effective and accurate political consulting and reporting services to Republican candidates and would be negatively affected if the registrations of persons who are not eligible to vote remain on Virginia's voter rolls and are not removed.

34.     If noncitizens are able to register to vote in Virginia elections and their registrations are not removed before an election, it would undermine the electoral confidence of RNC members. That decreased confidence would harm the RNC's registration and voter-turnout efforts, and diminish the electoral chances of Republican candidates. To counteract those injuries, the RNC would be forced to change its campaign strategy to educate voters, contact Virginia election officials, and engage in various efforts to bolster Republican voter confidence in Virginia's elections.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed: March 24, 2026

6