**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| VIRGINIA COALITION FOR IMMIGRANT RIGHTS *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> SUSAN BEALS, in her official capacity as Virginia Commissioner of Elections, *et al.*, <br> *Defendants*, <br><br> REPUBLICAN NATIONAL COMMITTEE, <br><br> *Proposed Intervenor-Defendant*. | Case No: 1:24-cv-01778 |

**REPLY IN SUPPORT OF MOTION TO INTERVENE**
**BY THE REPUBLICAN NATIONAL COMMITTEE**

Within days of a settlement conference with Plaintiffs, Defendants argue that they will adequately represent the RNC's interests. The RNC has no interest in settling this case. It is interested in dismissal because Plaintiffs' complaint fails as a matter of law. That Defendants entertain settlement demonstrates that Defendants cannot adequately represent the RNC's interests. Indeed, Defendants admit as much by acknowledging they have "adverse" interests to those of the RNC. Defs.' Opp. at 3. Defendants' suggestion that the RNC should just file an amicus brief should be seen for what it is: a calculated attempt to keep the RNC out of the room, where Defendants intend resolve this case in a manner adverse to the RNC's interests. Regardless, no party provides good reason to deny the RNC permissive intervention, which is the simplest path forward. This Court need not even determine if the RNC's interests are inadequately represented to grant permissive intervention. Most federal courts don't even reach intervention as of right and just grant the RNC permissive intervention. *See* RNC Mem. (Doc. 234-1) at 2 n.1. The parties ignore that mountain of precedent. The Court should grant the motion and add the RNC as a Defendant.

1

## ARGUMENT

### I.   The motion is timely and doesn't unduly prejudice anyone.

Even according to Plaintiffs' choice caselaw, "a movant seeking intervention" must merely "provide a plausible justification for a tardy motion to intervene." *Scott v. Bond*, 734 F. App'x 188, 192 (4th Cir. 2018); Pls' Opp. at 2 (citing *Scott* approvingly). The RNC hasn't just provided a "plausible justification" for why it didn't move to intervene earlier—it has provided admissible evidence. *See* Ambrosini Decl. (Doc. 234-1) at ¶¶13-16. The RNC didn't seek intervention before now because Virginia's former Attorney General was defending the law. *Id*. Plaintiffs are correct that the RNC previously considered intervening after Plaintiffs filed their motion for preliminary injunction in October 2024. That the RNC determined intervention was unnecessary due to the Attorney General's defense only underscores that circumstances have changed. *See generally* Doc. 92. Attorney General Miyares opposed Plaintiffs' motion for a preliminary injunction and ultimately prevailed in the Supreme Court. *Beals v. VA Coal. for Immigrant Rts.*, 220 L. Ed. 2d 179 (Oct. 30, 2024).

Contrary to Defendants' speculation, Defs.' Opp. at 7, it was not immediately "foreseeable" that Virginia's new Attorney General would quickly enter into settlement negotiations with Plaintiffs. The Commonwealth had previously spent vast resources litigating this case all the way up to the Supreme Court. No party presents any evidence that Attorney General Jones campaigned on settling this litigation or previously stated that he wouldn't attempt to defend the law. Only "since Attorney General Miyares has left office" has it become clear that the RNC's interests are not adequately represented by the new Attorney General. Ambrosini Decl. (Doc. 234-1) at ¶¶13-16. At the earliest, it became clear when in a February court filing, the Attorney General's office stated that it had "reached out to counsel for Plaintiffs" and "held multiple teleconferences to discuss possible resolution of the case" with Plaintiffs. Doc. 214 ¶¶14, 16. The RNC then began

2

preparing to intervene. The Court, however, stayed this case on February 11, continuing all deadlines for 45 days. *See* Doc. 218. So the RNC moved to intervene before the stay was lifted on March 25. Plaintiffs and Defendants were informed of the RNC's intention to intervene on March 17. *See* RNC Mem. (Doc. 234-1) at 16. No party disputes that the RNC moved to intervene before the deadline for discovery and before the Court resolved Defendants' motion to dismiss. By submitting a proposed answer with its motion and waiving the opportunity for discovery, the RNC puts itself in the same position as Defendants. It now stands ready to move for summary judgment on Plaintiffs' claims based on whatever briefing schedule the Court chooses. The RNC has promised to "abide by all court imposed deadlines for briefing and trial." *Id*. at 4. That promise undermines Defendants' baseless assertion that the RNC is "purposely dilatory." Defs.' Opp. at 2.

Moreover, settlement negotiations can qualify as "a substantial 'change of circumstances' in the case" sufficient to justify "a tardy motion to intervene," even under Plaintiffs' preferred cases. *Scott*, 734 F. App'x at 192; Pls' Opp. at 2 (citing *Scott* approvingly). The Ninth Circuit has likewise reversed a district court for measuring "the length" of a proposed intervenor's "delay by reference to events pre-dating the time at which Proposed Intervenors were reasonably on notice that their interests were not being adequately represented." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 859 (9th Cir. 2016) (cited approvingly in *Scott*, 734 F. App'x at 192). Yet the parties argue that the clock should start when Plaintiffs first filed their complaint instead of when the RNC was "reasonably on notice that their interests were not being adequately represented." *Id*. No precedent supports that claim. Even a post-judgment motion to intervene purely "for the purpose of appeal" can still be timely. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395 n.16 (1977). Indeed, in *Smith*, the motion was filed "approximately twenty years after [the case's] commencement, and seventeen years after the adoption of the first Consent Decree." *Id*. at 854. The mere

3

lapse of time alone was "'not determinative.'" *Id*. Instead, "[w]here a change of circumstances occurs, and that change is the 'major reason' for the motion to intervene, the stage of proceedings factor should be analyzed by reference to the change in circumstances, and not the commencement of the litigation." *Id*.

The parties' cases don't support their argument that this case is at too advanced a stage. For example, in *Alt v. EPA*, "summary judgment briefing and related proceedings had commenced and were ongoing" when the motion to intervene was filed. 758 F.3d 588, 591 (4th Cir. 2014). And in *NAACP v. New York*, summary judgment briefing had already started and the parties had already consented to entry of declaratory judgment before the motion to intervene. 413 U.S. 345, 360 (1973). Here, discovery was over a month away from concluding when the RNC filed.

Plaintiffs' preferred unpublished case, *Scott*, is likewise distinguishable. *Scott* concerned a competing class action that the intervenor was already receiving docket notice filings for because it had been marked as a related case. 734 F. App'x at 194. But where, as here, the proposed inter-venors claim a "failure of a governmental agency to represent" their interests because of the gov-ernment's "substantial departure from the position that the government had maintained throughout the litigation," no settlement in principle renders a motion to intervene untimely. *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002). The RNC "acted as soon as [it] had notice" that there might be a "proposed settlement" that "was contrary to [RNC] interests." *Id*. "[U]ntil parties have notice that the government may not be representing their interests, parties are entitled to rely on the presumption that the government is representing their interests." *Id*.

Intervention thus becomes warranted at "the point at which" it becomes "clear" that a party's "interests [a]re not being adequately represented by the existing defendants." *Cf. Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989). Even when a motion to intervene is filed nine days

after a settlement agreement has been affirmed by a district court, it can be timely where a party's interest "was not represented at all" in the settlement discussions. *Fleming v. Citizens for Albemarle, Inc.*, 577 F.2d 236, 238-39 (4th Cir. 1978). Only when the RNC "learned that the settlement constituted a substantial departure from the position that the government had maintained throughout the litigation that [it] sought to intervene." *Carpenter*, 298 F.3d at 1125. In such a case, courts should not be "reluctant" to allow intervention even if "lengthy settlement efforts might be disrupted and the applicants for intervention had notice of the existence of the suit." *Id*.

Plaintiffs and Defendants argue they will be prejudiced by adding the RNC because the RNC "will raise arguments and advocate different positions than those adopted by the existing defendants." Defs.' Opp. at 5. But Plaintiffs "can hardly be said to be prejudiced by having to prove a lawsuit [they] chose to initiate." *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995); *Smith*, 830 F.3d at 857.

Further, Defendants can't manufacture prejudice by refusing to take the RNC at its word when the RNC promised it wasn't going to seek discovery. *Contra* Defs.' Opp. at 5. The RNC has represented that it would not do so, and Defendants offer no support for their speculation otherwise. To the extent Defendants suggest they need discovery to "discover[] the basis of [the] RNC's claims," *id*., they misread the RNC's proposed answer. The RNC isn't bringing counterclaims. The RNC is presenting purely legal defenses. No discovery is necessary to determine if Plaintiffs' complaint states a claim upon which relief may be granted. Regardless, neither Defendants nor Plaintiffs "point[] to any evidence whatsoever of additional costs or other prejudice suffered between" February 6, 2026 when the RNC "knew, or reasonably should have known, that [its] interests were not being adequately represented" and March 25, 2026, when the RNC moved to intervene. *Smith*, 830 F.3d at 857. There is no possible prejudice or delay that could be attributable to

5

the RNC during that period because this case was stayed by the Court during most of that time. *See* Doc. 218.

Contrary to the parties' assertions, *Steves & Sons* likewise supports intervention. Defendants argue that *Steves & Sons* "rested on a specific and extraordinary factual background that bears no resemblance to the circumstances here." Defs.' Opp. at 6. But this Court determined the motion to intervene was timely despite "noting that the parties had engaged in extensive fact discovery, with the close of expert discovery and summary judgment soon approaching." *Steves & Sons v. JELD-WEN*, 323 F.R.D. 553, 557 (E.D. Va. 2018). Here, by contrast, fact discovery was a month away from concluding when the RNC intervened, and summary judgment isn't yet underway. In *Steves & Sons*, this Court found no prejudice from adding "two groups" of intervenors because the intervenors agreed to not engage in further discovery—just as the RNC has agreed here. *Id*. at 558. When the parties, contended that they "would need additional discovery to fully litigate [their] claims against" intervenors, this Court concluded those arguments "ring hollow" because the existing parties did "not specify" any of the discovery requests they would serve on the intervenors. *Id*. Neither do Defendants. Further, the proposed intervenors' promise "to be bound by the existing schedule" weighed in "favor" of granting the motion. *Id*. at 560. The RNC has made that same promise here.

Defendants final attempt to distinguish *Steves & Sons* is that the parties "engaged in a series of deliberate litigation maneuvers that unexpectedly created the need for intervention – for the first time." Defs.' Opp. at 6. But that's exactly what Defendants have done here. Their desire to settle has "implicated" the RNC's "interests for the first time." *Steves & Sons*, 323 F.R.D. at 561. Whereas the previous Attorney General vigorously defended Virginia's law for over two years, it took less than two weeks for Defendants to begin settlement negotiations with Plaintiffs. Doc. 214

6

¶¶14, 16. "Far from sitting by and waiting for the right moment in the litigation to intervene," the RNC moved to intervene "shortly after [Defendants'] strategies implicated their individual interests for the first time. Therefore, the [RNC's] explanation for their delay in seeking to intervene is compelling, and weighs in favor of intervention." *Steves & Sons*, 323 F.R.D. at 561.

II.    **The RNC has substantial interests in this case that are at risk of impairment and that the State Defendants do not adequately represent.**

As the national committee of the Republican Party who represents candidates and voters vying for votes across Virginia and the nation, the RNC has a concrete and particularized "interest in a fair process." *Bost v. Ill. State Bd. of Elections*, 146 S. Ct. 513, 519 (2026). Defendants argue this interest is too "abstract" and "generalized." Defs.' Opp. 10. *Bost* forecloses that argument. The RNC has "an obvious personal stake in how the result is determined and regarded. Departures from the preordained rules cause [the RNC] particularized and concrete harm." *Bost*, 146 S. Ct. at 520. "Those who spend untold time and resources seeking to claim the right to voice the will of the people have an undeniably different—and more particularized—interest in knowing what that will is." *Id*. (cleaned up). That harm is "in no sense common to all members of the public." *Id*.

The two cases Defendants rely on were decided before *Bost*. *See* Defs. Opp. at 11. And those cases concerned voters or legislators, not political parties. Their analysis "finds no support" in current precedent. *Bost*, 146 S. Ct. at 521. Defendants attempt to distinguish *Bost* by arguing that it "addressed Article III standing," not "Rule 24 intervention." Defs. Opp. at 11. But that just means intervention is an easier call. "[B]ecause the Article III standing requirements are more stringent than those for intervention under rule 24(a)," if a party has "standing under Article III," then that "compels the conclusion that they have an adequate interest under the rule." *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991).

Defendants quibble with the RNC's competitive interest by again arguing that it is too generalized. Defs. Opp. at 11. But not every citizen shares the RNC's interests as "'a political competitor.'" *Shays v. FEC*, 414 F.3d 76, 87 (D.C. Cir. 2005); *LULAC v. EOP*, Doc. 135 at 9, No. 1:25-cv-946 (D.D.C. June 12, 2025). Those interests are different than "every other registered voter in the state." *Contra* Defs. Opp. at 11. Voters aren't competitors. But the RNC, unlike voters, must compete on the "playing field[]" in election contests against "genuine rival[s]" for political office. *Cf. Shays*, 414 F.3d at 87. It therefore "suffer[s]" in a concrete and personal way if deprived of "the opportunity to compete for election under the Constitution and laws of the United States." *Bost*, 146 S. Ct. at 520-21.

Defendants also argue that the RNC's interest in allocating resources to achieve its mission is too generalized. But the Fourth Circuit has already held that the RNC has standing to challenge a State's failure to remove ineligible registrations from its voter rolls based on allegations of a frustrated mission and diversion of resources. *RNC v. N.C. State Bd. of Elections*, 120 F.4th 390, 397 (4th Cir. 2024). Other courts agree that the RNC's potential expenditure of "significant resources in the recruiting and training of volunteers and poll watchers" to "maintain the integrity of the election process" is enough to "satisf[y] the interest requirement of Rule 24(a)." *E.g.*, *La Union del Pueblo Entero* [*LUPE*] *v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022). Defendants ignore those precedents. If Defendants are truly right that this interest is too generalized because "[e]very political party and advocacy organization devotes resources to elections," Defs. Opp. at 11, then that should result in dismissal of this case because Plaintiffs' sole basis for standing is this very same interest, 2nd Am. Compl. ¶¶22, 24, 27, 29. That Defendants don't attack Plaintiffs' standing on the same ground further undermines the supposed "adequacy" of their representation.

The parties also ignore that if Plaintiffs win and systematic removals of noncitizen registrations no longer occur within 90 days of a federal election in Virginia, the "voting power" of Republican voters could be diluted by illegal noncitizen votes. *Hall v. D.C. Bd. of Elections*, 141 F.4th 200, 206-07 (D.C. Cir. 2025). And Republican voters' confidence could be discouraged as well. *Jud. Watch, Inc. v. Griswold*, 554 F. Supp. 3d 1091, 1104 (D. Colo. 2021). These independent interests satisfy Article III, and thus easily meet Rule 24(a)'s less stringent requirements.

The parties argue that potential impairment to the RNC's concrete interests rests on a chain of inferences. But Rule 24 "promises intervention" "to those who bear an interest that *may* be practically impaired." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195 (2022) (emphasis added). Plaintiffs admit that the purpose of their lawsuit is "ending systematic voter removal programs based on alleged noncitizenship in the 90 days prior to federal elections." Pls.' Opp. at 6. That result may practically impair the RNC's interests in at least two significant ways.

*First*, "a decision in the Plaintiffs' favor could result in an injunction barring the implementation of provisions that the RNC argues are beneficial to its members' ability to compete in federal elections." *LULAC*, No. 1:25-cv-946, Doc. 135 at 10. That relief alone shows that "the disposition" of this case "could impair or impede [the RNC's] interests." *Id*. Plaintiffs winning would require the RNC "to adjust" its "campaign strategy" and political reporting activities in response to systematic removals of noncitizen registrations from Virginia's voter rolls no longer occurring. *Shays*, 414 F.3d at 87. Plaintiffs also don't dispute that the injunction they demand would alter the "election landscape" for the RNC's "members." *Cf. LUPE*, 29 F.4th at 307. That injunction would require the RNC to change its competitive "strategy and conduct." *Vote Choice, Inc. v. DiStefano*, 4 F.3d 26, 37 (1st Cir. 1993). That's because the RNC relies on the accuracy of Virginia's voter-registration lists to determine its electoral strategy and fulfill its organizational

reporting duties to its candidate members. Ambrosini Decl. (Doc. 234-1) at ¶¶18-34. If Virginia's voter rolls are inaccurate due to illegal noncitizen registrations, then the RNC will be conducting numerous organizational and campaign related activities based on faulty data, which affects how Republicans will "run" their "campaigns." *Shays*, 414 F.3d at 87; *Am. Canoe Ass'n v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 544 (6th Cir. 2004).

*Second*, if "the relief sought by the plaintiffs here" is "either partially or fully grant[ed]," the RNC "will have to expend resources to educate [its] members on the shifting situation in the lead-up to the 202[6] election." *LUPE*, 29 F.4th at 307; Ambrosini Decl. (Doc. 234-1) at ¶23. That expense "satisf[ies] the impairment requirement under Rule 24(a)(2)." *LUPE*, 29 F.4th at 307. Defendants argue that the RNC isn't at risk of potential impairment because it "is not a regulated party, not a voter whose registration is at stake, and not a state official charged with enforcing the challenged statute." Defs. Opp. at 12. But those are all Article III issues. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382-83 (2024). And Rule 24 impairment is easier than Article III standing. *Yniguez*, 939 F.2d at 735. Here, "expend[ing] resources to educate [RNC] members on the shifting situation" satisfies the "impairment requirement." *LUPE*, 29 F.4th at 307.

Nor is the impending settlement speculative. *Contra* Defs.' Opp. at 13. Plaintiffs admit the parties have a settlement in principle. Pls.' Opp. at 3. A settlement conference is set for April 17. Defendants argue that the RNC has not identified any "statement" indicating that it won't vigorously defend the Virginia law that Plaintiffs challenge. Defs.' Opp. at 13. But the RNC identified the Governor's executive order from March 24 directing Virginia's Commissioner of Elections to certify that the Department of Elections has ceased "any program" that "systematically remove[s] the names of ineligible voters from the voter registration system based on evidence of ineligibility—including evidence of lack of eligible residence or evidence of non-citizenship" within "90

days prior to the date of a federal primary or general election." RNC Mem. (Doc. 234-1) at 2 (citing Exec. Order 13, Va. Gov. (2026)). The "change in the Administration" combined with the "'shift' in policy" of the executive order combined with Defendants' participation in a settlement conference is enough to show "the possibility of divergence of interest." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1169 (10th Cir. 2017) (cleaned up). "[T]he first significant docket activity after the new administration came into office was a motion [to] stay the case to allow settlement discussions to resolve the remaining issues. Though settlement negotiations, standing alone, are not dispositive, the circumstances here suffice to satisfy the minimal burden to show inadequate representation." *Kane Cnty. v. United States*, 928 F.3d 877, 895-96 (10th Cir. 2019) (cleaned up).

Defendants' concern of a "'deluge'" of intervenors if the RNC is allowed to intervene is entirely speculative. Defs.' Opp. at 13. "In some other case, a proliferation of motions to intervene may be a cause for caution. At some point, too, it may be that the interests of existing parties will come to overlap fully with the interests of any remaining proposed intervenor. But that case is not this case." *Berger*, 597 U.S. at 199. "In matters ranging from civil-rights actions to suits testing the constitutionality of state or federal legislation, federal courts routinely handle cases involving multiple officials sometimes represented by different attorneys taking different positions." *Id*. Regardless, where a private party's interests are "'related'" but "not 'identical,'" there is no "presumption of adequacy" and the private party's "burden" to show inadequate representation "'should be treated as minimal.'" *Id*. 195-96. The RNC has made at least a minimal showing of inadequacy here. Defendants and the RNC no longer share the same objective. Defendants seek to settle. The RNC seeks dismissal. So Defendants don't adequately represent the RNC.

**III.   Granting permissive intervention is the easiest way to resolve this motion.**

If this Court has any doubt about whether Defendants adequately represent the RNC, it should grant the RNC permissive intervention. This Court need not make any finding concerning

11

adequate representation or a legally protectible interest to permit the RNC to intervene under Rule 24(b). *See Planned Parenthood of Wis. v. Kaul*, 942 F.3d 793, 801 n.4 (7th Cir. 2019). That makes granting the RNC permissive intervention the most prudent and efficient course to resolving this motion. Neither Plaintiffs nor Defendants dispute that the RNC has "a claim or defense that shares" a "common question" with this lawsuit. Fed. R. Civ. P. 24(b). And their fears of delay, complication, or prejudice are unfounded for at least five reasons.

*First*, the RNC has promised that it would not seek discovery, comply with whatever deadlines set by the Court, and reduce duplicative briefing where possible. Those concessions hollow out claims of undue delay under Rule 24(b). *Emerson Hall Assocs. v. Travelers Cas. Ins. Co. of Am.*, 2016 WL 223794, *2 (W.D. Wis. Jan. 19). And past litigation practice shows that the RNC often joins other parties' filings where possible. *See, e.g.*, *VoteAmerica v. Raffensperger*, Doc. 151, 1:21-cv-1390 (N.D. Ga. Dec. 13, 2022) ("Consistent with their pledge to 'work to prevent duplicative briefing,' Intervenor-Defendants join the State's filings [on summary judgment]."). Plaintiffs and Defendants' speculation that intervention will complicate the case ignores the RNC's representations and established litigation record.

*Second*, by filing a proposed answer, the RNC would join the litigation "in the same procedural posture as the [State] Defendants." *LULAC*, No. 1:25-cv-946, Doc. 135 at 9. "Under these circumstances, the timing of the RNC's motion will not unfairly disadvantage any party." *Id*. The RNC can pick up right where Defendants apparently are by "preparing for dispositive motions," which the RNC will submit to the Court based on the same schedule the Court decides for the existing parties. *Contra* Defs.' Opp. at 16.

*Third*, even if the parties could establish delay, they haven't shown that the RNC will "unduly delay" the case. Fed. R. Civ. P. 24(b)(3) (emphasis added). "'Undue' means not normal or

12

appropriate." *Appleton v. Comm'r*, 430 F. App'x 135, 138 (3d Cir. 2011) (quoting Webster's II New Riverside University Dictionary 1259 (1988)). Although "any introduction of an [intervenor] … will inevitably cause some 'delay,'" that kind of ordinary delay is irrelevant. *Id*. Neither Plaintiffs nor Defendants have provided any reason why any potential delay would be "undu[e]." Fed. R. Civ. P. 24(b)(3). Indeed, Defendants themselves delayed this case by forty-five days by moving to stay the case due to the change in Attorneys General. Defendants can't credibly claim that everything is now moving so fast in the litigation that the RNC's intervention will cause undue delay.

*Fourth*, Plaintiffs and Defendants' concerns about having to respond to briefing by the RNC describes the routine practice of litigation. "Whatever additional burdens" adding the RNC as a defendant to this case may pose, "those burdens fall well within the bounds of everyday case management." *Berger*, 597 U.S. at 200. And any "partisan" perspective the RNC provides cuts in favor of granting permissive intervention, not denying it. *A. Philip Randolph Inst., of Ohio v. LaRose*, 2020 WL 5524842, at \*2 (N.D. Ohio Sept. 15). Further, the RNC's arguments are hardly unknown to Plaintiffs. Plaintiffs defended against similar arguments made by the former Attorney General—and ultimately lost at the Supreme Court.

*Fifth*, Defendants advance an interpretation of Virginia law that demonstrates the necessity of the RNC's participation. Defendants argue that Virginia Code §24.2-427(C) does not require "systematic" review of the registrations of noncitizens "during the 90-day" period "before a general election." *Id*. at 15 & n.2. But that provision is not time limited in any way. Instead, it plainly commands that "[t]he general registrar shall cancel the registrations of [noncitizens] who do not respond within 14 days to the notice that they have been reported not to be United States citizens." Va. Code §24.2-427(C). Further, the provision requires systematic removals because removals are based on "a report from the Department of Motor Vehicles" or "from the Department of Elections

13

based on information received from the Systematic Alien Verification for Entitlements Program (SAVE Program)" and not individualized information. *Id*. This Court has already held as much in this case. 803 F. Supp. 3d 454, 473 (E.D. Va. 2025). That Defendants argue otherwise demonstrates how inadequate their representation of the RNC would be.

Defendants admit that the RNC "is a sophisticated, national organization that routinely monitors and intervenes in election-law litigation across the country—including in a virtually identical NVRA challenge in Arizona, *DNC v. Hobbs*, No. 2:22-cv-01369 (D. Ariz.)." Defs.' Opp. at 7. Those factors favor permissive intervention. That the RNC was granted intervention in "a virtually identical NVRA challenge in Arizona" shows that the great weight of authority is on the RNC's side. *Id*. The RNC cited over a dozen cases granting the RNC or other political parties intervention in election cases. RNC Mem. (Doc. 234-1) at 2 n.1. Following that precedent is straightforward. Deviating from it, however, should raise at least some doubt that denying intervention would be improper. And "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors." *Fed. Sav. & Loan Ins. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993).

## CONCLUSION

For the foregoing reasons, the RNC respectfully requests that the Court grant the motion. The RNC submits its motion to intervene on the papers and does not request oral argument. The RNC respectfully asks that the Court rule on the RNC's motion before approving any potential settlement between the parties or entering final judgment so that the RNC is able to present its position concerning the merits of Plaintiffs' complaint before either of those decisions are made.

14

Dated: April 14, 2026

Respectfully submitted,

/s/ Thomas R. McCarthy
Thomas R. McCarthy (VSB #47154)
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com

*Counsel for Proposed Intervenor-Defendant
The Republican National Committee*

15

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 14, 2026, I e-filed this document on ECF, which will

email everyone requiring service.

*/s/ Thomas R. McCarthy*